IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | Case Nos. 01-1849(WSS) through |
| OLYMPUS HEALTHCARE GROUP, INC. *et al.*, | ) | 01-1858(WSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| CRAIG JALBERT, Liquidating Supervisor for | ) | |
| OLYMPUS HEALTHCARE GROUP, INC., | ) | Adversary Proceeding No. 03-53411 |
| | ) | (PBL) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **[Re A.D.I. 60]** |
| | ) | |
| CAHCF Assistance Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT OBJECTION OF THE LIQUIDATING SUPERVISOR AND US NURSING CORP. TO MOTION OF KATHARINE B. SACKS FOR STAY PENDING APPEAL

Craig R. Jalbert, the Liquidating Supervisor (the "Liquidating Supervisor") of the above captioned debtors' (the "Debtors") bankruptcy estates, and U.S. Nursing Corporation ("USNC") hereby join in objecting to the Motion of Katharine Sacks, Esq. ("Ms. Sacks" or the "Receiver") For Stay (A.D.I. 60) (the "Stay Motion"). In support of this Objection, the Liquidating Supervisor and USNC respectfully represent as follows:

### Background

1. On or about May 23, 2003, the Liquidating Supervisor filed a complaint against CAHCF Assistance Corporation ("CAHCF"), thereby seeking to recover $234,000 (the "Interpleader Funds") held by CAHCF and initiating the captioned adversary proceeding (the "Adversary Proceeding").

2.  On or about April 14, 2004, CAHCF filed its Answer & Interpleader disclaiming any and all interest in the Interpleader Funds. In the Answer and Interpleader, CAHCF alleged that the Liquidating Supervisor (on behalf of the Debtors), Pegasus Management Company, Inc., and USNC each may claim an interest in the Interpleader Funds. CAHCF served the Answer and Interpleader on the Receiver addressed as follows: "ATTN: Katharine Sacks/ Receiver, Pegasus Management Company, Inc./ Attorney at Law, LLC/ 165 Bishop Street, New Haven, Connecticut 06511" (the "Receiver's New Haven Address").

3.  On September 13, 2004, the Bankruptcy Court entered an Order (I) Directing Defendant to Deposit Funds with the Clerk of the Court, (II) Directing the Clerk of the Court to Establish an Escrow Account, and (III) Providing for Dismissal of Defendant Upon Deposit of Funds (A.D.I. 24) (the "Escrow Order"). On September 13, 2004, the Bankruptcy Court also entered an Order Directing Service of Complaint and Joining New Defendants (A.D.I. 25) (the "Service Order"), whereby the Court ordered the Liquidating Supervisor to serve the complaint and summons (together, the "Complaint") on USNC and Pegasus. The Service Order further provided that USNC and Pegasus had thirty (30) days from the date of such service to respond to the Complaint and to make claims to the Interpleader Funds.

4.  On September 16, 2004, CAHCF caused the Interpleader Funds to be deposited with the Clerk of the Bankruptcy Court in compliance with the Escrow Order. On September 20, 2004, pursuant to the Escrow Order, the Bankruptcy Court dismissed CAHCF from the Adversary Proceeding. On October 12, 2004, the Liquidating Supervisor served the Complaint on USNC and Pegasus pursuant to the Service Order. Counsel for the Liquidating Supervisor served USNC's counsel, who accepted service on behalf of USNC. The Service Order provided that counsel for the Liquidating Supervisor was to provide "formal service" upon Pegasus. The

Liquidating Supervisor accomplished this by serving the Complaint by first class mail to the attention of "Katharine Sacks, Receiver of Pegasus Management Company, Inc." at the Receiver's New Haven Address.

5. On or about November 12, 2004, USNC timely filed its Answer and Interpleader which raised cross claims (the "Cross-Claim"). In its Cross-Claim, USNC asserted rights to the Interpleader Funds and alleged that the Liquidating Supervisor and Pegasus, respectively, do not have rights to the Interpleader Funds. On November 12, 2004, USNC served the Answer and Interpleader, including the Cross-Claim, on Pegasus (by U.S. Mail addressed to Ms. Sacks as the Receiver of Pegasus at her New Haven Address).

6. Pursuant to the Service Order, Pegasus had until November 12, 2004, to file a response. To date, Pegasus has failed to file an answer or to assert a claim to the Interpleader Funds as directed by the Bankruptcy Court. Pursuant to applicable rules, Pegasus had to answer or otherwise respond to USNC's Cross-Claim on or about December 12, 2004. No answer or other response to USNC's Cross-Claim appears on the docket in this case, and neither USNC nor the Liquidating Supervisor has received any answer or response from Pegasus.

7. On January 13, 2005, Plaintiff filed with the Court the Request for Entry of Default Against Pegasus (the "Request for Default") and served it on the Receiver at the New Haven Address. On January 14, 2005, the Clerk docketed the Clerk's Entry of Default against Pegasus (the "Default").

8. On February 8, 2005, the Liquidating Supervisor filed its Motion for Default Judgment Against Pegasus Management Company, Inc. (A.D.I. 33) (the "Motion for Judgment"). On the same date, the Motion for Judgment was served upon the Receiver, addressed to "Katharine Sacks/ Receiver, Pegasus Management Company, Inc." at the

Receiver's New Haven Address. On February 15, 2005, the Court entered by default a judgment stating that Pegasus had no right to the Interpleader Funds (A.D.I. 34) (the "Default Judgment").

9.  USNC and the Liquidating Supervisor entered into an agreement resolving the Adversary Action (the "Settlement") on or about February 16, 2005. On June 30, 2005, the Court entered an order (A.D.I. 53) (the "Settlement Order") approving the Settlement.

10. On February 22, 2005, the Receiver filed a motion and supporting memorandum of law (A.D.I. 39) seeking to vacate the Default Judgment. The Receiver argued, *inter alia*, that she was an officer of the state and that, therefore, the Liquidating Supervisor was required to serve her, pursuant to Fed. R. Bankr. P. 7004(b)(6) and Connecticut statute, by way of the Attorney General of Connecticut.

11. On June 24, 2005, after full briefing on the issue, the Court entered its Memorandum and Order Denying Motion of Defendant for an Order Setting Aside the Default and Default Judgment (A.D.I. 51) (the "Memorandum and Order") denying the motion to vacate. The Court declined to find that the Receiver was an officer of the state of Connecticut and held that, even if she was, Connecticut state law provided that service of process on the Connecticut Attorney General was optional, not mandatory, and that service directly on the Receiver at the New Haven Address was sufficient.

12. On July 1, 2005, counsel for the Liquidating Supervisor filed a certification of counsel with the Court requesting the entry of an order directing the Clerk of the Court to release the Interpleader Funds to USNC and the Liquidating Supervisor pursuant to the Settlement.

13. On July 5, 2005, the Receiver filed Notices of Appeal with respect to the Memorandum and Order and the Settlement Order. One week later, on July 12, 2005, the Receiver filed the Stay Motion.

WLM\209840.4

<u>Argument</u>

I. **The Receiver Is Not Entitled To a Stay Pending Appeal Because She Has failed to Meet The Applicable Legal Standard**

14.    Ms. Sacks correctly recites in paragraph 20 of her Motion the elements that she must prove in order to obtain a stay pending her appeals.

> The court may grant such a stay when the party seeking the stay can demonstrate that:
> (1) it has a likelihood of success on the merits of the appeal;
> (2) it will be subject to irreparable harm if the stay is not granted;
> (3) the granting of the stay will not substantially harm other interested parties; and
> (4) the granting of the stay would serve the public interest.

(Stay Motion, paragraph 20) (quoting The Hertz Corp. v. ANC Rental Corp. (In re ANC Rental Corp.), 2002 WL 1058196 at *2 (D. Del. 2002)). Ms. Sacks also correctly cited for the same proposition VF LLC v. The Money's Trust (In re VF Brands, Inc.), 282 BR 137 (Bankr. D. Del. 2002) and Morgan v. Polaroid Corp. (In re Polaroid Corp.), 2004 WL 253477 at *1 (D. Del. 2004). These standards are the same as those required for issuance of an injunction. See, e.g., Pitt News v. Fisher, 215 F. 3d 354, 365-66 (3d. Cir. 2000); Duraco Prods., Inc. v. Joy Plastic Enters., Ltd., 40 F. 3d 1431, 1438 (3d Cir. 1994); Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co., 963 F.2d 628, 632 (3d. Cir. 1992); Opticians Ass'n. of Am. v. Indep. Opticians of Am., 920 F.2d 187, 191-92 (3d. Cir. 1990).

15.    While Ms. Sack's articulation of the four requirements for a stay pending appeal is correct, her self-serving and "lenient" interpretation of the first requirement – that movant show a likelihood of success on the merits – is not. Ms. Sacks argues in the Stay Motion that the Court should only require a showing that she has a "substantial case" or a "strong case on appeal" as opposed to an actual "likelihood of success on the merits." (Stay Motion ¶¶23-27). This interpretation is misplaced and inconsistent with case law in this District.

16. As discussed more fully below, this case involves a factual determination. Review of factual issues is subject to the "clearly erroneous" standard of review. Fed. R. Bank. P. 8013. See Green v. O'Neill, 308 B.R. 677, 679 (D. Del. 2004). There is generally little likelihood an appellant will prevail on such review, particularly where, as here, Ms. Sacks introduced no admissible evidence concerning the allegation, essential to her position, that she is an agent of the State of Connecticut. Memorandum and Order at 5.

17. In addition, the "more lenient" standard that Ms. Sacks wants to borrow from In re Public Service Company of New Hampshire, 116 B.R. 347 (Bankr. D.N.H. 1990), has not generally been adopted by courts in the Third Circuit. Instead, as set forth in the Delaware cases cited by Ms. Sacks in the Stay Motion (Stay Motion ¶20), Delaware courts have repeatedly endorsed the "likelihood of success on the merits" requirement. See Hertz Corp., 2002 WL 1058196 at *2; VF LLC, 282 BR at 137; Polaroid Corp., 2004 WL 253477 at *1.

18. Ms. Sacks suggests that language in the unpublished 1992 opinion In re The Columbia Gas System, Inc., 1992 U.S. Dist. LEXIS 3253 *4 (D. Del. 1992), which borrows the Public Service Co. standard of "a substantial case, or a strong case on appeal," indicates that this District has adopted that more lenient standard. It is not clear that Columbia Gas System rejected the "likelihood of success on the merits" standard, but in any event, Columbia Gas System has not stood the test of time and is generally not followed. Instead, the Delaware Bankruptcy Court has stayed with the more demanding "likelihood of success on the merits" test.[1] See Hertz Corp., 2002 WL 1058196 at *2; VF LLC, 282 BR at 137; Polaroid Corp., 2004 WL 253477 at *1.

---

[1] Even assuming *arguendo* that the "substantial case on appeal" standard correctly applied to Ms. Sacks's appeal, the Liquidating Supervisor and USNC respectfully assert that, for the same reasons set forth below, Ms. Sacks cannot satisfy such standard on appeal.

A.  The Receiver Has Not and Can Not Show a Likelihood of Success on the Merits

19. Ms. Sacks claims to have a "substantial case" on appeal. She frames this argument as resting upon two alleged "errors of law" on behalf of the Bankruptcy Court, both of which concern the method by which the Liquidating Supervisor served process upon Ms. Sacks. Upon closer examination, the first error identified is actually a finding of fact; the second, a question of law rendered moot by the factual finding. Ms. Sacks is unable to show that the Court's ruling was clearly erroneous, which is the applicable standard. Therefore, she cannot show a likelihood of success on the merits (or even that she has a substantial case) on appeal. Accordingly, the Court should deny the Stay Motion.

   1. **The Court's Finding of Fact that Ms. Sacks is Not an Agent of the State of Connecticut Was a Finding of Fact, Not Law.**

20. In the Stay Motion, Ms. Sacks identifies two alleged errors of law as the basis for her appeal, and consequently, as justification for a stay pending appeal. Specifically, Ms. Sacks asserts that:

   1. "[T]his Court erred as a matter of law in its conclusion that Ms. Sacks is not an agent of the State of Connecticut"; and

   2. "[T]his Court erred as a matter of law in its interpretation of Conn. Gen. Stat. § 52-64 as permissive rather than mandatory."

(Stay Motion at ¶ 27). These arguments are disingenuous and ephemeral attempts to further delay consummation of USNC and the Liquidating Supervisor's Settlement, distribution of assets of the estates and closure of the bankruptcy cases.

21. Ms. Sacks argues that the Bankruptcy Court erred *as a matter of law* in failing to find that she was an agent of the State of Connecticut.[2] However, the Court's opinion makes it

---

[2] If Ms. Sacks was found to be an agent of the State of Connecticut, Ms. Sacks argues that the Liquidating Supervisor would have been required to serve her pursuant to Fed. R. Bankr. P. 7004(b)(6) and Conn. Gen. Stat. § 52-64.

clear that this finding was one of fact, not law. Specifically, the Court stated that Ms. Sacks failed to present "*sufficient evidence* to persuade this Court that [she], in capacity as Receiver of the Facilities of Pegasus Management, Inc., is an agent of the state [of Connecticut] . . ." Memorandum and Order at 5 (emphasis added). As such, this finding is not reviewable as an error of law under the more lenient plenary standard of review. To the extent Ms. Sacks wishes to disturb this factual finding on appeal, she must establish that it was clearly erroneous. See Fed. R. Bankr. P. 8013; see also Green, 308 B.R. at 679 (reviewing court applies a clearly erroneous standard to the bankruptcy court's finding of fact); In re Pransky, 318 F.3d 536, 542 (3d Cir. 2003)(court of appeals stands in the shoes of the district court and reviews bankruptcy court's finding of fact for clear error).

22.     The clearly erroneous standard is difficult for an appellant to meet; appellate courts give great deference to the Bankruptcy Court's factual findings. See Berger v. Trans World Airlines (In re Trans World Airlines, Inc.), 182 B.R. 102, 106 (D. Del. 1995)( "[A] reviewing court will affirm the bankruptcy court's findings unless 'on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed.' "); In re Robbins Int'l, Inc., 275 B.R. 456, 464-65 (S.D.N.Y. 2002)("The clearly erroneous standard 'does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced it would have decided the case differently.' [citations omitted]. Factual findings must be upheld if 'plausible in light of the record in its entirety'"); Pearl-Phil GMT LTD v. Caldor Corp., 266 B.R. 575, 580 (S.D.N.Y. 2001)("The Bankruptcy Court's choice between two permissible views of fact cannot be held to be clearly erroneous."). This is because appellate courts typically are not in a position to examine the credibility of the parties and the evidence they present. See, e.g., Haught v. United States., 242 B.R. 522, 525 (M.D. Fla. 1999)("[T]he

-8-

bankruptcy court must be afforded deference in its ability to judge the witness' credibility."). In this case, the Bankruptcy Court had an opportunity to examine not only the evidence – or the lack of evidence – offered by Ms. Sacks with respect to her alleged status as an agent of the State of Connecticut, but it also had an opportunity to examine numerous other specious arguments from Ms. Sacks which were summarily rejected. See Memorandum and Order at 7-8.

23.     Further, Court's routinely deny motions for stay when it is unlikely that the appellant can overturn a finding of fact on appeal. See, e.g., In re Allen, 300 B.R. 127, 129-32 (Bankr. D.C. 2003); In re Dakota Rail, Inc., 111 B.R. 818, 820-23 (Bankr. D. Minn. 1990). Presumably, this is the real reason why Ms. Sacks has attempted to frame the Court's finding that she is not an agent of the State of Connecticut as one of law, rather than fact. One thing is clear, however, given the considerable deference appellate courts give to a lower court's finding of fact, Ms. Sacks does not have a likelihood of success on appeal of overturning the Court's factual finding. For this reason, the Court should deny the Stay Motion.

        2.      **Absent a Reversal of the Court's Finding of Fact, the Bankruptcy Court's Interpretation of Conn. Gen. Stat. § 52-64 is Moot for the Purposes of Ms. Sacks's Appeal.**

24.     Because the Court made a factual finding that Ms. Sacks was not an agent of the State of Connecticut entitled to service under Fed. R. Bankr. P. 7004(b)(6), service upon Ms. Sacks by first class mail was proper under Fed. R. Bankr. P. 7004. See Memorandum and Order at 5-7. As such, the Court did not need to address Ms. Sacks's second alleged basis for appeal – that service upon the Connecticut Attorney General pursuant to Conn. Gen. Stat. § 52-64 is mandatory rather than permissive. In other words, because the Court made a factual finding that

Ms. Sacks was not an agent for the State of Connecticut, it was unnecessary for the Court to determine whether service of process upon the Connecticut Attorney General was required.[3]

25. While the Court did go on to find that service upon the Connecticut Attorney General under Conn. Gen. Stat. § 52-64 was permissive rather than mandatory, it had no bearing on the Court's ruling that service upon Ms. Sacks was proper. As such, for the purposes of Ms. Sacks's appeal, the Court's interpretation of Conn. Gen. Stat. § 52-64 is moot.

B   The Receiver Has Not and Can Not Show That She Will Suffer Irreparable Harm If a Stay Does Not Issue

26. Simply arguing that an appeal will be mooted without a stay is insufficient to establish irreparable injury that would warrant the need for a stay. In re TWA, 2001 Bankr. LEXIS 723, *28 (Bankr. D. Del. 2001); In re Kmart Corp., 2002 U.S. Dist. LEXIS 24851, *3-4 (N.D. Ill. 2005); In re Public Serv. Co., 116 B.R. at 349; In re Dakota Rail, Inc., 111 Bankr. at 820-21. The Receiver has failed to make a sufficient showing under this element. The Stay Motion should be denied.

C   A Balancing of the Equities Favors Denial of the Stay Motion

27. The equities of this case strongly favor denial of stay. A stay in the case would prevent the distribution of the Interpleader Funds, thereby delaying the conclusion of the captioned bankruptcy cases and distributions to creditors. Prejudice to Debtors and creditors would be significant.

28. This proceeding is the final active adversary action in front of the Court in these bankruptcy cases and one of very few matters preventing the Liquidating Trustee from seeking a final decree and closing the bankruptcy cases. A stay would delay distribution of the

---

[3] Of course, USNC and the Liquidating Supervisor agree with the Court's analysis and conclusion that service upon the Connecticut Attorney General under Conn. Gen Stat. § 52-64 is permissive, rather than mandatory

Interpleader Funds to creditors, which is a significant harm in itself justifying the denial of a stay. See In re Public Serv. Co., 116 B.R. at 351

29. Further, the Court should consider that any harm that the Receiver may claim would be the result of her own dilatory conduct. She was served with CAHCF's Answer and Interpleader, the Complaint, USNC's Answer and Counter-Claim, the Request for Entry of Default and the Motion for Default Judgment. Yet she did not respond until after a default judgment was entered against her.

D    The Public Interest Is Served by a Denial of the Stay Motion

30. The public interest is best served by the prompt closing of bankruptcy proceedings. Daly v. St. Germain (In re Norway Hist. Pres. Trust), 2005 U.S. Dist. LEXIS 7171, *13 (D. Conn. 2005); In re Savage & Assocs., 2005 U.S. Dist. LEXIS 3161, *6 (S.D.N.Y. 2005) ("[T]he public interest favors the expedient administration of the bankruptcy proceedings, which appear to be nearing conclusion over two years after the confirmation of the debtor's plan of reorganization."). As stated, the Liquidating Supervisor is prevented from moving forward to conclude the bankruptcy cases until he receives and distributes the Interpleader Funds. A stay will delay the administration of the cases as well as the distribution of the estates' share of the Interpleader Funds to creditors.

## Conclusion

31. The Receiver has failed to show a likelihood of success on the merits of the appeal or that she would suffer irreparable harm absent a stay. Further, the balance of the harms and the public interest favor denial of a stay.

WHEREFORE, for the foregoing reasons, the Liquidating Supervisor and USNC respectfully request that the Court deny the Stay Motion and grant such other and further relief as the Court deems just.

WLM\209840.4

Dated: July 22, 2005
      Wilmington, Delaware

          Respectfully submitted,
          CRAIG JALBERT,
          LIQUIDATING SUPERVISOR,

          By his attorneys,

          */s/ Christopher M. Winter*
          Michael Lastowski (DE No. 3892)
          Christopher M. Winter (DE No. 4163)
          Matthew M. Carucci (DE No. 4529)
          DUANE MORRIS LLP
          1100 North Market Street
          Wilmington, Delaware 19801
          (302) 657-4900

          John F. Ventola (BBO#567972)
          Joseph M. Downes III (BBO#655853)
          CHOATE, HALL & STEWART
          Exchange Place
          53 State Street
          Boston, MA 02109
          (617) 248-5000

          -AND-

          U.S. NURSING CORP.,
          By its attorneys,
          Ricardo Palacio (DE No. 3765)
          Ashby & Geddes, P.A.
          222 Delaware Avenue, 17th Floor
          P.O. Box 1150
          Wilmington, DE 19899

          Peter A. Cal, Esq.
          Mark Fulford, Esq.
          Sherman & Howard L.L.C.
          633 Seventeenth Street, Suite 3000
          Denver, CO 80202
          Telephone: (303) 299-8244

WLM\209840.4