# Unpublished Opinions

100HXG

Print Request:  LEXSEE

Time of Request: July 22, 2005   05:07 PM EDT

Number of Lines: 103
Job Number:   1862:53935426

Client ID/Project Name: U0597-00001-03350

Research Information:

Lexsee 2002 U.S. Dist. LEXIS 24851

Send to:  WINTER, CHRISTOPHER
          DUANE MORRIS LLP
          1100 NORTH MARKET ST STE 1200
          WILMINGTON, DE 19801-1163

LEXSEE 2002 U.S. DIST. LEXIS 24851

**In re: KMART CORPORATION, et al., Debtors.**

**Case No. 02 C 9257**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2002 U.S. Dist. LEXIS 24851*

**December 23, 2002, Decided**
**December 30, 2002, Docketed**

**DISPOSITION:** [*1] Ramco-Gershenson, Inc.'s Emergency Motion for Stay Pending Appeal denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For RAMCO-GERSHENSON, INC., plaintiff: Synde B. Keywell, Synde B. Keywell & Associates, Chicago, IL.

For KMART CORPORATION: Christina M. Tchen, Charles F. Smith, Jr., Victoria Aisen Birov, Christopher P. Connors, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL.

**JUDGES:** MARVIN E. ASPEN, United States District Judge.

**OPINIONBY:** MARVIN E. ASPEN

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us is the Emergency Motion of Ramco-Gershenson, Inc. ("Ramco") for Stay Pending Appeal. We previously have granted a preliminary stay until our ruling on the motion presently before us. For the reasons set forth below, we deny Ramco's motion.

**I. BACKGROUND**

The matter before this Court concerns a dispute over the Debtors' decision, pursuant to *Section 365 of the Bankruptcy Code*, to assume and assign the Lease for the Conyers, Georgia Kmart store to a subsidiary of Burlington Coat Factory (the "Assignee"). On December 11, 2002, the bankruptcy court approved the assignment of the Lease (the "Assignment Order") holding that the

Debtors had satisfied all the requirements necessary [*2] for such an assignment, including the heightened adequate assurance requirements applicable to shopping center leases under Section 365(b)(3). Furthermore, at the December 11 hearing, the bankruptcy court reaffirmed its November 6, 2002 Order granting summary judgment (the "Summary Judgment Order") in favor of the Debtors, prohibiting enforcement of a provision in the Lease that allowed Ramco to terminate the Lease if Kmart ceased operations in the store for any reason.

On December 13, 2002, Ramco filed a motion for stay pending appeal of the above two decisions of the bankruptcy court. The bankruptcy court denied Ramco's motion on December 19, 2002. Ramco filed the instant emergency motion for stay pending appeal with this Court on December 20, 2002. This Court held a hearing on the motion on December 23, 2002 at which time arguments of counsel, as well as the bankruptcy court's rulings, were considered.

**II. ANALYSIS**

We review the bankruptcy court's denial of Ramco's motion for abuse of discretion. *In re 203 North LaSalle St. P'ship. 190 B.R. 595, 596 (N.D. Ill. 1995).* In considering whether to grant a motion for stay pending appeal, a court must [*3] examine the following four factors: "1) whether the [movant] is likely to succeed on the merits of the appeal; 2) whether the [movant] will suffer irreparable injury absent a stay; 3) whether a stay would substantially harm other parties in the litigation; and 4) whether a stay is in the public interest." *In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997).* The movant has a "threshold burden[] to demonstrate the first two factors." *Id.* "If the movant does not make the requisite showings on either of these two factors, the court's inquiry into the balance of harms is unnecessary, and the stay should be denied without further analysis." *Id. at 1301.*

The bankruptcy court considered the second factor

2002 U.S. Dist. LEXIS 24851, *3

first. n1 The court concluded that Ramco failed to show that it would suffer irreparable injury absent a stay. We agree. Ramco argues that without a stay, the Lease will be assigned and Ramco's appeals will be rendered moot. However, as the bankruptcy court explained, mootness by itself is not enough to constitute an irreparable harm. *See 203 North LaSalle. 190 B.R. at 597-58* ("It is well-settled that an appeal [*4] being rendered moot does not itself constitute irreparable harm."); *see also In re Shenandoah Realty Partners, 248 B.R. 505, 510 (W.D. Va. 2000)* (same); *In re Charter Co., 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987)* (denying stay because mootness of appeal is insufficient to establish irreparable injury).

> n1 Ramco also argues that the Bankruptcy Court erred in not fully – or not properly – considering the first factor. We disagree with Ramco and agree with the Bankruptcy Court that Ramco's failure to meet the requisites of the second factor is determinative.

Ramco further asserts that without a stay, it will lose goodwill with its tenants because of its inability to enforce all of its lease provisions. Ramco first raised this issue during oral argument on its motion to stay before the bankruptcy court. As a result, the court found that Ramco's assertion was not developed enough to constitute an irreparable harm. Ramco continues to fail to identify how its goodwill with its tenants [*5] will be irreparably harmed in the absence of a stay. In *Gateway Easter Railway Co. v. Terminal R.R. Assoc., 35 F.3d 1134, 1140 (7th Cir. 1994),* the case to which Ramco cites in its pleadings before this Court, the movant faced a loss of goodwill because in the absence of a preliminary injunction, the movant would go out business, or transfer its losses to its customers. In this case, Ramco does not allege that it is on the verge of going out of business or will have to pass its losses on to its customers in order to avert such an outcome. Instead, Ramco states that if the Lease is assigned, Ramco will be bound by the terms of the Lease, in particular the 1978 rental rates included therein. However, economic loss will generally not sustain a stay. *See Gateway Easter Railway Co., 35 F.3d at 1140* (referring to a preliminary injunction).

We hold that the bankruptcy court did not abuse its discretion in denying Ramco's motion for a stay pending appeal. The bankruptcy court correctly concluded that Ramco failed to show that it would suffer irreparable harm absent a stay. Accordingly, we concur with the bankruptcy court's decision to deny Ramco's motion [*6] without further analysis of the remaining facts. *See Forty-Eight Insulations. 115 F.3d at 1301.* Thus, we deny Ramco's motion presently before us without analyzing the remaining factors.

## III. CONCLUSION

For the foregoing reasons, this Court denies Ramco's motion n2. It is so ordered. n3

> n2 Because we have now denied the motion to stay pending appeal, we also vacate our previous stay pending ruling.
>
> n3 Ramco has also moved that in the event this Court denies its motion to stay that such ruling be stayed pending appeal to the Circuit Court of the denial of its motion to stay. *Federal Rule of Appellate Procedure 8(a).* We deny this motion as well.

MARVIN E. ASPEN

United States District Judge

Dated 12/23/02

### JUDGMENT IN A CIVIL CASE

IT IS HEREBY ORDERED AND ADJUDGED that We hold that the bankruptcy court did not abuse its discretion in denying Ramco's motion for a stay pending appeal. The bankruptcy court correctly concluded that Ramco failed to show that it would [*7] suffer irreparable harm absent a stay. Accordingly, we concur with the Bankruptcy Court's decision to deny Ramco's motion without further analysis of the remaining facts. Thus, we deny Ramco's motion presently before us (1–1) (1–2) without analyzing the remaining factors.

Date: 12/23/2002

100HXG

********** Print Completed **********

Time of Request:  July 22, 2005  05:07 PM EDT

Print Number:  1862:53935426
Number of Lines:  103
Number of Pages:  2

Send To:  WINTER, CHRISTOPHER
          DUANE MORRIS LLP
          1100 NORTH MARKET ST STE 1200
          WILMINGTON, DE 19801-1163

100HXG

Print Request:  Current Document: 1

Time of Request: July 22, 2005  05:11 PM EDT

Number of Lines: 187
Job Number:  1862:53935863

Client ID/Project Name: U0597-00001-03350

Research Information:

 2nd Circuit-US Court of Appeals, District & Bankruptcy Cases, Combined
Daly AND St. Germain

 Send to:  WINTER, CHRISTOPHER
           DUANE MORRIS LLP
           1100 NORTH MARKET ST STE 1200
           WILMINGTON, DE 19801-1163

1 of 1 DOCUMENT

**IN RE NORWICH HISTORIC PRESERVATION TRUST, LLC, Debtor, Michael J. Daly, Trustee, Plaintiff–Appellee v. Edwin C. St. Germain, Defendant–Appellant.**

NO. 3:05CV12 (MRK)

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2005 U.S. Dist. LEXIS 7171*

**April 21, 2005 , Decided**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Norwich Historic Preservation Trust, LLC: Carol A. Felicetta, Reid and Riege, P.C., New Haven, CT; Michael J. Daly, Law office of Michael J. Daly LLC, Hamden, CT.

Edwin C. St. Germain, Appellant, Pro se, Norwich, CT.

US Trustee, Trustee, New Haven, CT.

For Michael J. Daly, Trustee: Carol A. Felicetta, Reid and Riege, P.C., New Haven, CT; Michael J. Daly, Law office of Michael J. Daly LLC, Hamden, CT.

**JUDGES:** Mark R. Kravitz, United States District Judge.

**OPINIONBY:** Mark R. Kravitz

**OPINION:**

**RULING ON MOTION FOR STAY PENDING APPEAL**

In this case, *pro se* appellant Edwin C. St. Germain appeals a December 15, 2004 order of Chief Judge Albert S. Dabrowski of the United States Bankruptcy Court, approving the Trustee's motion to sell real property located at 75 McClellan Avenue in Norwich, Connecticut (the "McClellan Property"). Approximately two months after filing his appeal, Mr. St. Germain moved this Court to enter a stay of the sale pending the appeal. *See* Motion to Stay [doc. # 9]. For the reasons stated below, the Court DENIES Mr. St. Germain's Motion to Stay [doc. # 9]

I.

In April 2003, the Debtor, Norwich Historic Preservation Turst, LLC, filed a [*2] voluntary petition under Chapter 11 of the United States Bankruptcy Code. However, in July 2004, the Bankruptcy Court converted the case to Chapter 7 and appointed Michael J. Daly as Chapter 7 Trustee. The Debtor's schedules listed a number of properties, including the McClellan Property, which was shown as having a fair market value of $100,000 and secured claims of $105,000. *See* Memorandum in Support of Objection to Motion for Stay of Order Pending Appeal ("Trustee's Mem.") [doc. # 19] at 2. In or about October 2004, and pursuant to order of the Bankruptcy Court, an auction was held regarding the McClellan Property, and George Mattern was the successful bidder in the amount of $90,000. *See id.* Mr. St. Germain, who is apparently the equity holder of the Debtor, objected to the sale to Mr. Mattern. *See id.* After hearing argument on the objection, the Bankruptcy Court overruled Mr. St. Germain's objections. *See* Order dated Nov. 4, 2004 [Bankr. D. Conn. Pet. # 03–31954, doc. # 168].

On October 27, 2004, the Trustee filed a Motion to Sell the McClellan Property Free and Clear of Liens ("Motion to Sell") to Mr. Mattern under *§ 363(f) of the Bankruptcy Code* [*3]  . *See* Motion to Sell [Bankr. D. Conn. Pet. # 03–31954, doc. # 164]; *see also* Trustee's Mem. [doc. # 19] at 3. In view of Mr. St. Germain's claims that the property was worth more than $90,000, the Trustee also sought an opportunity to obtain higher and better offers. *See id.* Mr. Mattern once again made the highest offer of $90,000. *See id.*

Mr. St. Germain objected to the Trustee's Motion to Sell, claiming that the service and content of the Trustee's motions were defective and that the McClellan Property was worth substantially more than $90,000. *See* Objection [Bankr. D. Conn. Pet. # 03–31954, doc. # 208]; *see also* Trustee's Mem. [doc. # 19] at 3. Chief Judge Dabrowski held a hearing on the objections on December 8, 2005 and overruled all of Mr. St. Germain's objections. He entered an order ("Sale Order") granting the Motion to Sell on December 15, 2004. *See* Order Granting Motion to Sell Free and Clear [Bankr. D. Conn. Pet. # 03–31954, doc. # 215]; *see also* Trustee's Mem. [doc. # 19] at 3. Mr. St. Germain then filed this appeal from the Sale Order, and at the same time sought to stay the sale pending appeal. *See*

2005 U.S. Dist. LEXIS 7171, *3

Motion to Stay [Bankr. [*4] D. Conn. Pet. # 03-31954, doc. # 221]; Notice of Appeal [Bankr. D. Conn. Pet. # 03-31954, doc. # 224] Chief Judge Dabrowski held a hearing on Mr. St. Germain's stay request on December 22, 2004, and, at the close of the hearing, Chief Judge Dabrowski orally denied the requested stay. *See* Transcript of Oral Ruling on December 22, 2004 ("Tr."), at 73-82, attached to Trustee's Mem. [doc. # 19] n1

> n1 A signed order denying Mr. St. Germain's motion to stay apparently issued on the same day. *See* Order Denying Motion to Stay [Bankr. D. Conn. Pet. # 03-31954, doc. # 226].

Considering Mr. St. Germain's request as a motion for a stay pending appeal under *Rule 8005 of the Federal Rules of Bankruptcy Procedure*, n2 the Bankruptcy Court denied the stay for the following reasons. First, as to the likelihood of Mr. St. Germain prevailing on appeal, Chief Judge Dabrowksi stated that having presided over the auction processes, he was satisfied that the "auctions were properly [*5] noticed, were procedurally correct, and were not deficient in any way." Tr. at 77, attached to Trustee's Mem. [doc. # 19] In particular, Chief Judge Dabrowksi observed that there was nothing in the record to support Mr. St. Germain's assertion that the auction was improperly noticed or conducted, and that his claims regarding the value of the property were "speculative" and "hypothetical." *Id.* at 77-78. n3 Accordingly, Chief Judge Dabrowski held that Mr. St. Germain had not shown a likelihood of success on appeal or even a substantial possibility of prevailing on appeal. *See id.*

> n2 *Rule 8005 of the Federal Rules of Bankruptcy Procedure* provides, in pertinent part, as follows:
>
> > subject to the power of the district court . . . the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.
>
> *Fed. R. Bankr. Pro. 8005.* Bankruptcy *Rule 8005* is similar to *Rule 62(c) of the Federal Rules of Civil Procedure* and Rule 8A of the *Federal Rules of Appellate Procedure*, both of which govern stays pending appeal.

[*6]

n3 The Bankruptcy Court noted in response to Mr. St. Germain's claims that the McClellan Property was worth more than $90,000:

> [You have failed] to even suggest that there would be someone out there willing to pay enough money, if ultimately this process were permitted to proceed along the lines or proceed in a way you want it, that would ultimately generate enough money so that the estate's taken care of and that you, from a personal perspective, ultimately a beneficiary. That's just whistling in the wind, that's — that's not likely to happen.

Tr. at 59, attached to Trustee's Mem. [doc. # 19].

Second, Chief Judge Dabrowksi stated that while there was at least a theoretical possibility that Mr. St. Germain, who was at best an unsecured creditor, could be injured by the sale, he "considered it highly unlikely that that kind of prejudice would be visited upon him in the final analysis." *Id.* at 79. In particular, the United States Trustee argued that given the amount of secured debt and the number of properties, "I don't think there is a universe where these properties [*7] could be sold so that we could generate enough to pay all the secured debt, the unsecured creditors, and to have money go back to Mr. St. Germain as the owner of the equity on the Debtor." *Id.* at 56. Chief Judge Dabrowski agreed with the United States Trustee's assessment. *See id.* at 79-80.

Third, by contrast, the Court found that issuance of a stay would "substantially injure other parties interested in the proceedings," including both the secured and unsecured creditors. *Id.* at 78. This was also the position of the United States Trustee, who opposed a stay. *See id.* at 38-39.

Fourth and finally, Chief Judge Dabrowski held that the public interest favored denial of a stay. *See id.* at 80. While he explained that in this case the public interest was not a significant factor, he also explained that the public would be best served by prompt resolution of the proceeding, and that a stay would only delay matters that he was satisfied had been handled properly. *See id.*

## II.

The Second Circuit has established a four-part test for determining whether to grant a stay pending a bankruptcy appeal, which focuses on the following factors:

> (1) whether the [*8] movant will suffer ir-

reparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a "substantial possibility, although less than a likelihood, of success" on appeal, and (4) the public interests that may be affected.

*In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. BAP 1996) (quoting *Hirschfeld v. Bd. of Elections*. 984 F.2d 35, 39 (2d Cir. 1993)); see also *In re Klinger, 2002 U.S. Dist. LEXIS 10367, No CIV.A 3:01CV2311 (CFD)*, 2002 WL 1204958, at *1 (D. Conn. May 9, 2002). n4 Failure to satisfy any one of these four elements is sufficient grounds for denying a stay. *See In re Turner, 207 B.R. 373, 374 (2d Cir. BAP 1997)*; *In re Bijan-Sara Corp., 203 B.R. 358, 360 (2d Cir. BAP 1996)*

n4 The Court is aware that some have expressed concern about whether the Second Circuit's statement of the likelihood of success test – phrased in terms of a "substantial possibility" – is consistent with the Supreme Court's articulation of the same standard, which is phrased in terms of a "strong showing that he is likely to succeed on appeal." *Hilton v. Braunskill, 481 U.S. 770, 777, 95 L. Ed. 2d 724, 107 S. Ct. 2113 (1987)*. *See. e.g., In re Cacioli. 302 B.R. 429, 431 (Bankr. D. Conn. 2003)*; *In re Koper, 286 B.R. 492, 493–94 n.3 (Bankr. D. Conn. 2002)*. However, there is no need to resolve that dispute in order to rule on the pending motion because, as noted below, Mr. St. Germain has satisfied neither standard.

[*9]

Mr. St. Germain's motion for stay is principally, if not exclusively, founded on his assertion that a denial of a stay will moot his appeal and therefore he will suffer irreparable harm if a stay is not granted. *See Motion for Stay [doc. # 9] at 2.* It is not entirely clear that a sale of the McClellan Property will moot this appeal. *See In re Gucci, 105 F.3d 837, 839–40 n.1 (2d Cir. 1997)* ("It is not entirely clear why an appellate court, considering an appeal from an unstayed but unwarranted order of sale . . . could not order some other form of relief other than invalidation of the sale."); *Mission Iowa Wind Co. v. Enron Corp., 291 B.R. 39, 42 (S.D.N.Y. 2003)* (discussing mootness in the context of an unstayed allocation order). However, for purposes of the present motion, the Court will assume that a denial of a stay will moot Mr. St. Germain's appeal.

Some courts have held that in certain circumstances the mooting of an appeal can constitute irreparable harm.

*See In re County Squire. 203 B.R. at 183* (mooting of an appeal is the "quintessential form of prejudice") (internal quotations omitted); *In re Permian Producers Drilling. Inc., 263 B.R. 510, 522 (Bankr. W.D. Tex. 2000)* [*10] (mooting of appeal can constitute irreparable injury); *but see In re Turner, 207 B.R. at 375* (in denying stay pending appeal, court held that appellants would not be irreparably injured if foreclosure sale proceeded during appeal). Other courts have held that the fact that an appeal may be mooted does not in and of itself satisfy the requirement for a showing of irreparable harm. *See. e.g., In re Fullmer, 2005 Bankr. LEXIS 658, Nos. BKS–03–23102BAM, 04–1228BAM, B.R. , 2005 WL 891542. at *14 (Bankr. D. Nev. April 5, 2005)* ("The majority of cases that have considered the issue have held that the risk that an appeal may become moot does not by itself constitute irreparable injury.") (collecting cases); *In re Convenience USA, Inc., 290 B.R. 558, 559–60 (Bankr. M.D. Ala. 2003)* (same).

Here, the Trustee makes a persuasive argument, also articulated by Chief Judge Dabrowski, that Mr. St. Germain, at most an unsecured creditor, will not suffer any injury by proceeding with the sale. Nevertheless, the Court will assume for present purposes that Mr. St. Germain has satisfied the irreparable harm prong of the four-part stay test because of [*11] his concern that the lack of a stay will moot his appeal. Satisfying one element of the four-part test is not enough, however. Instead, Mr. St. German has the burden of proving that he satisfies each of the other three elements as well, and he has not even remotely come close to satisfying these other elements.

Even construing his *pro se* pleadings liberally, the Court concludes that Mr. St. Germain has not shown that he has a substantial possibility of prevailing on his appeal. His brief merely repeats his assertion, previously pressed in the Bankruptcy Court, that there were procedural defects in the motions and notices and that the McClellan Property is worth more than $90,000. But beyond his conclusory assertions, Mr. St. Germain has not provided the Court with any citations to the record or any case law that would support his position. Merely claiming error, as Mr. St. Germain has done in this case, is not sufficient to satisfy the standard for obtaining a stay. *See In re Klinger, 2002 U.S. Dist. LEXIS 10367, 2002 WL 1204958. at *1* (denying stay where movant "has not provided the Court with a sufficient record on which to base a determination in his favor"). For if it were, a stay would [*12] be granted in every case. Yet, in fact, stays pending appeal are the exception, not the rule. *See In re Gucci. 105 F.3d at 840* ("We do not mean to imply that district courts should routinely grant stays pending appeal, or even routinely grant brief stays to permit this Court to consider granting such stays. There may well be substantial reasons for closing a sale promptly and assuring a good faith buyer that the

2005 U.S. Dist. LEXIS 7171, *12

sale cannot be undone.").

Mr. St. Germain also has not rebutted Chief Judge Dabrowski's finding that other persons, secured and unsecured creditors, would suffer substantial injury if a stay were granted and the sale of the McClellan Property were further delayed. In particular, there is nothing binding Mr. Mattern, the only person who has ever expressed any interest in buying the McClellan Property, to wait indefinitely. Finally, Mr. St. Germain has not even attempted to show that the public interest would favor granting of a stay. As the Trustee states in his brief opposing a stay, he and the other creditors have been patiently waiting while the Bankruptcy Court allowed Mr. St. Germain to press his objections on numerous occasions. *See In re Fullmer, 2005 Bankr. LEXIS 658, 2005 WL 891542,* [*13] *at *15* (public interest is best served by prompt resolution of bankruptcy proceedings).

At most, therefore, Mr. St. Germain has shown that he meets one of the four requirements necessary for issuance of a stay. Unfortunately for Mr. St. Germain, that is three requirements short of what he needs to show that he is entitled to a stay. *See In re Permian Producers, 263 B.R. at 523* (denying stay pending appeal where movant had shown irreparable harm and the public interest favored a stay but had failed to show likelihood of success on appeal).

**III.**

For the reasons stated, the Motion to Stay [doc. # 9] is DENIED.

IT IS SO ORDERED.

/s/ Mark R. Kravitz

United States District Judge

**Dated at New Haven, Connecticut: April 21, 2005.**

100HXG

********** Print Completed **********

Time of Request:  July 22, 2005  05:11 PM EDT

Print Number:  1862:53935863
Number of Lines:  187
Number of Pages:  4

Send To:  WINTER, CHRISTOPHER
          DUANE MORRIS LLP
          1100 NORTH MARKET ST STE 1200
          WILMINGTON, DE 19801-1163

100HXG

Print Request: LEXSEE

Time of Request: July 22, 2005  05:12 PM EDT

Number of Lines: 109
Job Number:  1862:53935958

Client ID/Project Name: U0597-00001-03350

Research Information:

Lexsee 2005 U.S. Dist. LEXIS 3161

Send to:  WINTER, CHRISTOPHER
          DUANE MORRIS LLP
          1100 NORTH MARKET ST STE 1200
          WILMINGTON, DE 19801-1163

LEXSEE 2005 U.S. DIST. LEXIS 3161

In re SAVAGE & ASSOCIATES, P.C., Petitioner.

05 Civ. 2072 (SAS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2005 U.S. Dist. LEXIS 3161*

February 28, 2005, Decided
February 28, 2005, Filed

**SUBSEQUENT HISTORY:** Petition denied by *In re Savage & Assocs., P.C., 2005 U.S. Dist. LEXIS 3820 (S.D.N.Y., Mar. 9, 2005)*

**PRIOR HISTORY:** *In re Teligent, Inc., 2005 Bankr. LEXIS 125 (Bankr. S.D.N.Y., Feb. 3, 2005)*

**DISPOSITION:** Petitioner's petition for writ of mandamus and motion for temporary stay denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Petitioner: Denise L. Savage, Esq., Savage & Associates, P.C., White Plains, NY.

**JUDGES:** Shira A. Scheindlin, U.S.D.J.

**OPINIONBY:** SHIRA A. SCHEINDLIN

**OPINION:**

### MEMORANDUM OPINION AND ORDER

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

This matter arises from a bankruptcy action before the Honorable Stuart M. Bernstein, *In re Teligent Servs., Inc.*, in which the petitioner Savage & Associates, P.C. ("Savage"), is the Unsecured Claims Estate Representative. In the proceedings below, Savage moved to disqualify Judge Bernstein for bias. In a Memorandum Decision and Order dated February 3, 2005, Judge Bernstein denied that motion. Savage has now petitioned this Court for a writ of mandamus directing Judge Bernstein to cease issuing orders, conducting hearings, or otherwise taking any action with respect to certain avoidance actions and claims in the Chapter 11 proceedings pending the determination of Savage's appeal to this Court of the February 3 decision. In the alternative, Savage has moved this Court for the same relief pursuant to *Federal Rule of Bankruptcy Procedure 8005* as well as *Federal Rule of Civil Procedure 65* [*2] and *Federal Rule of Appellate Procedure 8*. For the reasons stated below, Savage's petition and motion are hereby denied.

Because Savage's right to the relief sought is not "'clear and indisputable,'" the writ of mandamus cannot issue. n1 Savage believes that *28 U.S.C. § 144* requires a stay of certain proceedings in the bankruptcy action pending the determination of Savage's disqualification motion. The Second Circuit has held, however, that *section 144* does not apply to bankruptcy judges. n2 Moreover, it is unclear why, even if it did apply, *section 144* would continue to require a stay when Judge Bernstein has already denied Savage's motion to disqualify. Consequently, Savage cannot meet the very heavy burden required for the issuance of a writ of mandamus.

> n1 *In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001)* (quoting '*[Moses H. Cone MemHosp v. Mercury Constr. Corp., 460 U.S. 1, 18, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983))*

> n2 See *Dubnoff v. Goldstein, 385 F.2d 717, 720 (2d Cir. 1967)*; see also *In re Smith, 317 F.3d 918, 932 (9th Cir. 2002)*

[*3]

Savage's alternative grounds for relief also fail. As an initial matter, *Federal Rule of Bankruptcy Procedure 8005* sets forth the procedure by which a party to a bankruptcy action may seek a stay pending an appeal to the district court of a bankruptcy judge's order. n3 The Rule does not articulate, however, the standard that governs such motions. The Second Circuit has not spoken directly on this issue, and courts in this district have formulated various tests, drawing on the standard for preliminary injunction motions n4 or, alternatively, on the standard governing stays of district court orders pending appeals to the circuit courts. n5 The latter borrowing is more logical be-

2005 U.S. Dist. LEXIS 3161, *3

cause the district court stands in the same relation to the bankruptcy court in this situation as does the circuit court to the district court when a party seeks a stay of a district court order under Appellate *Rule 8.* By contrast, the preliminary injunction standard does not assume a prior judicial ruling. n6 Accordingly, in deciding whether to grant a stay of bankruptcy proceedings pending appeal, a district court considers the following factors: (1) whether there is a substantial [*4] possibility of success on appeal, (2) the risk of irreparable injury to the movant absent a stay, (3) the lack of substantial harm to another party if a stay is granted, and (4) the public interests that may be affected. n7

> n3 *See, e.g., In re Chateaugay Corp., 988 F.2d 322, 326 (2d Cir. 1993).* Savage's motion to stay the bankruptcy proceedings under *Federal Rule of Civil Procedure 65,* which by its terms applies to applications for preliminary injunctions, has no legal basis. While it is true, as discussed below, that some courts have analogized the test under Bankruptcy *Rule 8005* to the criteria for issuing a preliminary injunction, no case law suggests that *Rule 65* applies directly to a motion to stay bankruptcy proceedings pending appeal. *Cf. Sandra Cotton, Inc. v. Bank of N.Y., 64 B.R. 262, 263 (W.D.N.Y. 1986)* ("The applicable criteria [for obtaining a stay under Bankruptcy *Rule 8005*] are similar to those pertaining to the issuance of a preliminary injunction."). Similarly, *Federal Rule of Appellate Procedure 8* also does not apply directly to a motion to stay bankruptcy proceedings. By its own terms, Appellate *Rule 8* governs motions to stay *district* court orders and judgments. *See Fed. R. App. P. 8(a)(1)(A). See also Fed. R. App. P. 1* ("These rules govern procedure in the United States courts of appeals.").

[*5]

> n4 *See, e.g., In re Turner Spares, Ltd., 210 B.R. 235, 236 (S.D.N.Y. 1997).*

> n5 *See, e.g., In re General Credit Corp., 283 B.R. 658, 659-60 (S.D.N.Y. 2002).*

> n6 *See id. at 659.*

> n7 *See Hirschfeld v. Board of Elections, 984 F.2d 35, 39 (2d Cir. 1993)* (stating factors to be considered by a circuit court before staying actions of a lower court); *Silverman v. Nat'l Union Fire Ins. Co. (In re Suprema Specialties, Inc.), 2005 U.S. Dist. LEXIS 799, No. M-47, 2005 WL 120352, at *1 (S.D.N.Y. Jan. 20, 2005)* (applying same standard to a motion to stay a bankruptcy court).

All four factors weigh against granting a stay in this instance. After reviewing Savage's papers, it does not appear that Judge Bernstein's conduct could possibly warrant recusal; at most, Savage alleges trial errors, for which the proper remedy is an appeal seeking reversal. Therefore, Savage has little, if any, chance of success on the merits. Nor will Savage suffer irreparable harm in the absence of a stay. Even assuming that Judge Bernstein is biased against Savage and, in the absence of a stay, continues [*6] issuing orders influenced by that bias, Savage could repair the harm by means of appeal. On the other hand, other parties will be harmed if a stay is granted because the proceedings below would effectively grind to a halt, despite Savage's insistence to the contrary. Finally, the public interest favors the expedient administration of the bankruptcy proceedings, which appear to be nearing conclusion over two years after the confirmation of the debtor's plan of reorganization. Consequently, Savage is not entitled to a stay of the proceedings below under Bankruptcy *Rule 8005.*

In sum, Savage's petition for a writ mandamus enjoining Judge Bernstein from proceeding with the bankruptcy action is DENIED. In addition, Savage's motion for a temporary stay is also DENIED. The Clerk of the Court is directed to close this motion (docket # 3).

SO ORDERED:

Shira A. Scheindlin

U.S.D.J.

Dated: New York, New York

February 28, 2005

100HXG

********** Print Completed **********

Time of Request:  July 22, 2005  05:12 PM EDT

Print Number:  1862:53935958
Number of Lines:  109
Number of Pages:  2

Send To:  WINTER, CHRISTOPHER
          DUANE MORRIS LLP
          1100 NORTH MARKET ST STE 1200
          WILMINGTON, DE 19801-1163

Westlaw Attached Printing Summary Report for WINTER,CHRISTOPH 5021223

Date/Time of Request:              Friday, July 22, 2005 16:15:00 Central
Client Identifier:                 U059700001
Database:                          DCT
Citation Text:                     Not Reported in F.Supp 2d
Lines:                             176
Documents:                         1
Images:                            0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates

Westlaw.

Not Reported in F Supp 2d

2002 WL 1058196 (D Del )

**(Cite as: 2002 WL 1058196 (D.Del.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court, D  Delaware.
In re: ANC RENTAL CORP , et al  Debtors
THE HERTZ CORPORATION, et al  Appellants,
v
ANC RENTAL CORP , et al  Appellees
**Nos. 01-11220(MFW), Civ.A. 02-154, Civ.A.
02-175, Civ.A. 02-288, Civ.A. 02-299,
Civ.A. 02-360, 02-364-GMS.**

May 22, 2002

*AMENDED MEMORANDUM AND ORDER*

SLEET, J

**\*1** On February 27, 2002, the Hertz Corporation ("Hertz") and Avis Rent a Car System Inc  ("Avis") filed the first of several expedited appeals from the orders of the Honorable Mary F  Walrath of the United States Bankruptcy Court for the District of Delaware  Several subsequent appeals were filed (Case Nos  02-175 and 02-288 though and including 02-299)  In particular, the appellants sought review of the January 28, 2002 and March 20, 2002 orders of the bankruptcy court that permitted the debtor to reject certain of their concession contracts and subsequently negotiate more favorable contracts at seven national airports  On March 25, 2002, Hertz filed a motion for a stay pending the appeals (D I 18--02-154), and Avis joined in that motion  (D I 20-- 02-154)  On May 3, 2002, the bankruptcy court entered another order that permitted the debtor to reject contracts at four more airports  An appeal of this order was filed on May 10, 2002  (D I 1--02-360)  Hertz filed an emergency motion for a stay pending this appeal on

May 13, 2002  (D I 2--02-360 )  Avis also joined in this motion  (D I 1--02-364 )  The court finds that Hertz and Avis have failed to demonstrate the necessary irreparable harm  Moreover, the court finds that a stay will be harmful to the debtor  Therefore, both of the motions to stay will be denied

The briefly stated facts of this case are as follows: The debtor, ANC Rental Corp ("ANC"), is the parent company of the Alamo Rent-A-Car and National Car Rental System companies  As the name makes obvious, Alamo and National are car rental companies  Hertz and Avis are also engaged in the car rental business

The rental car industry is particularly active in the nation's airports  According to the parties, the normal procedure for operating at an airport requires that the rental car company first bid for a contract with the local airport authority  If the bid is acceptable, the airport authority will issue a contract to the winning bidder that will permit it to operate a rental car booth, or concession, at the local airport  The parties assert that the terms of such concession contracts usually include terms stating that the concessionaire must earn a certain profit each year  This is called the minimum annual guarantee ("MAG")  Additionally, the appellants contend that the contracts generally prohibit the practice of two concessionaires operating at the same concession booth  This practice is commonly known as "dual branding "  The parties do not dispute that the contracts at issue contain MAG requirements, but the debtor disputes that the contracts contain prohibitions on dual branding  [FN1]

> FN1  To the extent that the debtor disputes this contention, for the purposes of this motion only, the court will accept that the contracts contain terms and conditions that prohibit dual branding

© 2005 Thomson/West  No Claim to Orig  U S Govt  Works

Not Reported in F Supp 2d

2002 WL 1058196 (D Del )

(Cite as: 2002 WL 1058196 (D.Del.))

Page 2

ANC, National, and Alamo filed for Chapter 11 bankruptcy on November 13, 2001 As part of their reorganization plan, National and Alamo sought to reject the concession contracts and have ANC, as the debtor-in-possession, assume the contracts pursuant to § 365 of the bankruptcy code The bankruptcy court permitted this rejection and assumption in each of its three orders The appellants assert that the effect of the orders is to permit Alamo and National to operate at the same concession, which effectively permits the dual branding that the appellants contend is prohibited by the concession contracts The appellees further argue that when the contracts with the airport authorities were renegotiated with ANC, the MAG was also effectively reduced because only one of the companies at the concession would be subject to the MAG requirement The orders of the bankruptcy court currently affect concession contracts at eleven airports nationwide

*2 Federal Rule of Bankruptcy Procedure 8005 permits a party to seek a stay pending appeal of an order of the bankruptcy court *See* Fed R Bankr P 8005 The court may grant such a stay when the party seeking the stay can demonstrate that: (1) it has a likelihood of success on the merits of the appeal; (2) it will be subject to irreparable harm if the stay is not granted; (3) the granting of the stay will not substantially harm other interested parties; and (4) the granting of the stay would serve the public interest *See In re Edwards,* 228 B R 573, 575 (Bankr E D Pa 1999) If the movant fails to make a showing on any one of these four factors, the court may deny the stay *See In re Blackwell,* 162 B R 117, 120 (E D Pa 1993)

Hertz and Avis both assert that they will suffer irreparable harm if the bankruptcy court's orders are not stayed and the debtor's reorganization plan is permitted to continue The only argument the appellants present in support of this contention is that ANC, National, and Alamo will gain a "competitive advantage" if the reorganization scheme is permitted to continue because they will be able to operate at a lower cost than Hertz and Avis The court is not persuaded by this argument First, the amount of money the debtors will save

during the consolidation process has been quantified The fact that the savings can be quantified weighs against a finding of irreparable harm *See In re Shelly's. Inc ,* 87 B R 931, 935 (Bankr S D Ohio 1988) (indicating that even where there might be some intangible loss to reputation, if injury is "at bottom, financial" and could be calculated, there was no irreparable injury)

Second, where a business is threatened with serious financial harm (i e going out of business) as a result of a competitor's actions, irreparable harm may be present *See Sprint Corp v Deangelo,* 12 F Supp 2d 1188, 1194 (D Kan 1998) (collecting cases) However, where the sole injury is loss of a competitive advantage, the argument for irreparable harm is less compelling because "revenues and customers lost to competition which can be regained through competition are not irreparable " *Central & Southern Motor Freight Tariff Ass'n v Household Goods Carrier's Bureau.* 757 F.2d 301, 309 (D C Cir.1985) In other words, the marketplace should eventually be able to correct any harm suffered by Hertz and Avis.

Third, although Hertz and Avis claim that they will be irreparably harmed in the absence of a stay, they have failed to adduce evidence of the putative injury on the record before the court "To constitute irreparable harm, however, an injury cannot be speculative, it must be certain, great, and actual " *Sprint.* 12 F Supp 2d at 1194 (citations and internal quotations omitted) Although the appellants have provided some evidence of the alleged advantage the ANC companies will receive, they have failed to make even a prima facie showing which demonstrates a tangible financial or other loss to Hertz or Avis In the absence of such evidence, any loss to Hertz or Avis is merely speculative

*3 Finally, the bankruptcy court orders thus far will only affect ANC operations at eleven airports nationwide In contrast, there are eighty-seven international airports and over 700 other commercial airports in this country [FN2] Moreover, the majority of the eleven affected airports are relatively small Given the small number of airports that are affected at this time

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F.Supp.2d

2002 WL 1058196 (D.Del.)

**(Cite as: 2002 WL 1058196 (D.Del.))**

versus the large number of airports in this nation, the court is not persuaded that allowing the ANC companies to consolidate operations threatens irreparable harm at present. Additionally, although there is a possibility that the plan may be implemented at many more airports, the court also notes that both the appellants and the appellees have access to markets outside of the nation's airports. For all of the above reasons, the court finds that the appellants have failed to demonstrate irreparable harm.

> FN2 This information was obtained through telephone and electronic-mail communication with the Federal Aviation Administration ("FAA") *See* E-mail from Ben Castalano, FAA, to Althea Brown, Judicial Administrator to the Honorable Gregory M. Sleet (May 21, 2002) (on file with chambers)

Turning to harm to other interested parties, it is clear that granting a stay would have a substantial and detrimental effect on the debtor's plan of reorganization According to the debtors, once the plan is fully implemented, savings of $136,000,000 will be achieved. The appellants argue that any savings at present, prior to the national implementation of the plan, will only amount to $6,000,000 The court finds that even a savings of $6,000,000 is important to a bankrupt estate Moreover, a one year delay in implementing the plan might well seriously jeopardize the plan [FN3] Thus, the court concludes that the granting of the stay would produce substantial harm to other parties

> FN3 One year is the time the parties estimate for the appeal in the absence of a stay

Since the appellants have failed to demonstrate irreparable harm or lack of substantial harm to other interested parties, the court will deny their motions for a stay of these proceedings Therefore, none of the pending cases will be stayed on appeal [FN4]

> FN4 Although the motions to stay were only filed in case numbers 02- 154,

02-360, and 02-364, it is clear that the motions are intended to affect all of the pending cases Therefore, the denial of the stay means that none of the pending cases will be stayed The parties should therefore not attempt, absent a showing of good cause, to file additional motions to stay in the remaining cases

For the aforementioned reasons, IT IS HEREBY ORDERED THAT:
1  The appellants' Motion for a Stay Pending Appeal (D.I.18--02-154) is DENIED
2  Hertz's Emergency Motion for a Stay Pending Appeal (D.I.1--02-360) is DENIED
3  Avis' Emergency Motion for a Stay Pending Appeal (D.I.1--02-364) is DENIED.
4  None of the cases in this litigation [Case Nos 02-154, 02-175, 02-288 through and including 02-299, 02-360, and 02-364] will be stayed pending this appeal

2002 WL 1058196 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV00364  (Docket)
                              (May 10, 2002)

• 1:02CV00360  (Docket)
                              (May 10, 2002)

END OF DOCUMENT

© 2005 Thomson/West No Claim to Orig U.S. Govt Works

**Westlaw Attached Printing Summary Report for WINTER,CHRISTOPH 5021223**

| | |
|---|---|
| Date/Time of Request: | Friday, July 22, 2005 16:38:00 Central |
| Client Identifier: | U059700001 |
| Database: | DCT |
| Citation Text: | Not Reported in F Supp 2d |
| Lines: | 101 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates

Westlaw.

Not Reported in F Supp 2d

2004 WL 253477 (D Del )

**(Cite as: 2004 WL 253477 (D.Del.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court,
D Delaware
In re: POLAROID CORPORATION, et al , Debtors
Stephen J MORGAN, Appellant,
v
POLAROID CORPORATION, et al , Appellees
**No. Civ.A. 02-1353 JJF, 01-10864 PJW.**

Feb 9, 2004
Stephen J Morgan, Appellant, pro se

Gregg M Galardi, Mark L. Desgrosseilliers, of
Skadden, Arps, Slate, Meagher & Flom LLP,
Wilmington, Delaware, Eric W Kaup, of Skadden,
Arps, Slate, Meagher & Flom LLP, Chicago,
Illinois, for Debtors and Debtors-in-Possession,
Appellees, of counsel

Joseph Malfitano, of Young Conaway Stargatt &
Taylor LLP, Wilmington, Delaware, Nava Hazan,
of Akin Gump Strauss Hauer & Feld, LLP, New
York, New York, Co-Counsel to the Plan
Administrator, of counsel

*MEMORANDUM OPINION*

FARNAN, J

**\*1** Presently before the Court is the "Emergency"
Motion For Stay Pending Appeal filed by Appellant
Stephen J Morgan (D I 31 ) For the reasons
discussed below, the Court will deny Appellant's
request for a stay pending appeal

BACKGROUND
The instant action is a bankruptcy appeal arising

from the voluntary bankruptcy filing by Polaroid
Corporation and certain of its subsidiaries and
affiliates (collectively the "Debtors") in October of
2001 By his Motion, the Appellant requests the
Court to stay the implementation of the Debtors'
plan for reorganization The Bankruptcy Court
denied an identical request for a stay by Appellant
on December 16, 2003

I Parties' Contentions

The Appellant contends that the Court should stay
the implementation of the reorganization plan
because it is not in the best interest of Polaroid
shareholders The Appellant alleges that the auction
of Polaroid's assets was fraudulent and that the
value of Polaroid's assets far exceeded their sale
price. Further, the Appellant contends that his
appeal is likely to be successful because there
remain unanswered questions about value and
damaged shareholder and bondholder interests The
Appellant contends that if the Court denies his
request for stay, he and other shareholders will be
deprived of their right to appeal and their financial
stakes in Polaroid The Appellant also contends that
a stay is in the public interest, because in light of
recent corporate scandals, a resolution of the instant
appeal is required

In response, the Appellee contends that the Court
should deny Appellant's request for an emergency
stay because he has not satisfied the standards for
entitlement to a stay pending appeal Further, the
Appellee contends that the Appellant's request is
equitably moot The Appellee also contends that
Appellant failed to properly serve it and its counsel
as required by the Federal Rules of Civil Procedure

DISCUSSION
Federal Bankruptcy Rule 8005 enables a reviewing
court to issue a stay pending appeal from a
judgment, order, or decree of a bankruptcy judge
Courts interpreting Federal Bankruptcy Rule 8005

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F Supp 2d

2004 WL 253477 (D Del )

**(Cite as: 2004 WL 253477 (D.Del.))**

have established a four prong test for an appellant to obtain a stay: 1) a strong likelihood of success on the merits of the appeal; 2) the movant will suffer irreparable harm if the stay is denied; 3) substantial harm will not be suffered to non-moving parties if the stay is granted; and 4) issuance of the stay will not harm the public interest *In re 421 Willow Corp ,* 2003 WL 22318022 at *3 (E D Pa Oct 9, 2003) If a party fails to establish one of the four prongs, a court may deny the requested stay *In re ANC Rental Corp ,* 2002 WL 1058196 at *2 (D Del May 22, 2002) (citing *In re Blackwell,* 162 B R 117, 120 (E D Pa 1993)) Because the Court concludes that Appellant has not established a likelihood of success on the merits, the Court will deny the request for stay pending appeal

Likelihood of success on the merits means that a movant has a " 'substantial case,' or a strong case on appeal " *In re The Columbia Gas Sys , Inc .* 1992 U S Dist LEXIS 3253 at *4 (D Del March 10, 1992) (quoting *In re Public Serv Co of N H ,* 116 BR 347, 349 (Bankr D N H 1990) Appellant contends that "unanswered questions about value once answered will favor the appeal " (D I 31 at 3 ) However, in the instant motion the Appellant does not identify for the Court any order, decree, or judgment by the Bankruptcy Court that was erroneous, and thus, potentially reversible on appeal Moreover, Appellant has not identified any potentially incorrect factual finding or legal conclusion reached by the Bankruptcy Court

*2 Absent specific challenges to actions taken by the Bankruptcy Court, the Court must conclude that Appellant has not demonstrated a strong likelihood of success on the merits The Court will not speculate as to what errors, if any, were committed by the Bankruptcy Court Therefore, because the Court concludes that Appellant has failed to establish the first prong of the test for entitlement to a stay, the Court will deny Appellant's Motion [FN1]

> FN1 Based on this conclusion, the Court will not address Appellee's remaining bases for denial

An appropriate Order will be entered

### ORDER

At Wilmington, this 9th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J Morgan (D I 31) is *DENIED*

2004 WL 253477 (D Del )

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV01353 (Docket)

(Aug 02, 2002)

END OF DOCUMENT

© 2005 Thomson/West No Claim to Orig U S Govt Works

100HXG

Print Request:  LEXSEE

Time of Request: July 22, 2005  05:05 PM EDT

Number of Lines: 93
Job Number:   1862:53935143

Client ID/Project Name: U0597-00001-03350

Research Information:

Lexsee 1992 U.S. Dist. LEXIS 3253

Send to:  WINTER, CHRISTOPHER
          DUANE MORRIS LLP
          1100 NORTH MARKET ST STE 1200
          WILMINGTON, DE 19801-1163

LEXSEE 1992 U S DIST LEXIS 3253

IN RE: THE COLUMBIA GAS SYSTEM, INC. and COLUMBIA GAS TRANSMISSION CORPORATION, Debtors. THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COLUMBIA GAS TRANSMISSION CORPORATION, Appellant, THE COLUMBIA GAS SYSTEM, INC. and COLUMBIA GAS TRANSMISSION CORPORATION, Appellees.

Civil Action No. 92–127–SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*1992 U.S. Dist. LEXIS 3253*

March 10, 1992, Decided

**PRIOR HISTORY:** [*1] Chapter 11, Case Nos 91–803, 91–804

**LexisNexis(R) Headnotes**

**COUNSEL:** James L. Patton, Jr, Esquire, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, attorney for Debtors and for Appellees The Columbia Gas System, Inc. and Columbia Gas Transmission Corporation.

Kevin Gross, Esquire, of Rosenthal, Monhait & Gross, Wilmington, Delaware, attorney for Appellant The Official Committee of Unsecured Creditors for the Columbia Gas Transmission Corporation.

**JUDGES:** ROBINSON

**OPINIONBY:** SUE L. ROBINSON

**OPINION:**

**MEMORANDUM OPINION**

ROBINSON, U S. District Judge

**INTRODUCTION**

Pending before the Court is the emergency motion of the Official Unsecured Creditors Committee of the Columbia Gas Transmission Corporation ("the Committee") for stay pending appeal ("the motion") The Committee has filed an appeal of the February 13, 1992 order of the Bankruptcy Court approving, inter alia, payment of "category one refunds and prepetition GRI surcharges on a pro-rata basis . to the extent of $3 3 million." Said order is based upon the Bankruptcy Court's conclusion that the "category one refunds and prepeti-

tion GRI surcharges" are not property of the Debtor's bankruptcy estate, rather, that said refunds and surcharges when received [*2] are held by the Debtor "in trust" for the benefit of its customers

The Committee bases its motion on two arguments First, the Committee contends that, pursuant to Bankruptcy Rule 7062, which incorporates *Fed R Civ.P. 62(d)*, it is entitled to a stay as a matter of right so long as suitable means are implemented to protect non-appealing parties from any loss occasioned by a stay In this case, the Committee argues that the Debtor's retention of customer refund monies in an interest bearing escrow account insures that neither the Debtor nor its customers will be harmed by a stay Alternatively, the Committee argues that a stay is warranted pursuant to Bankruptcy Rule 8005 because the Committee has satisfied all the requirements for such discretionary relief

Responses in opposition to the motion have been filed by Columbia Gas Transmission Corporation (the "Debtor"); West Ohio Gas Company, Virginia Natural Gas, Inc. and the Peoples Natural Gas Company; the Columbia Gas Distribution Companies; The Official Committee of Customers; and the Pennsylvania Public Utility Commission. For the reasons that follow, a stay will be granted pending an expedited appeal

**DISCUSSION** [*3]

This Court has jurisdiction pursuant to *28 U S C § 1334*(b). I conclude that the issues at bar are primarily legal in nature and, therefore, subject to de novo review. *In Re Public Service Co of New Hampshire, 116 Bankr. 347. 349 n 2 (Bankr. D N H 1990)*

With respect to the Committee's first argument for relief, I decline to hold that the Committee is entitled to a stay as a matter of right. The Committee has not posted a

1992 U.S. Dist. LEXIS 3253, *3

bond, as required by *Fed. R. Civ. P. 62(d)*. I find no support for the proposition that the Debtor, the prevailing party below, be required to place into escrow funds judicially determined to belong to its customers, in order to afford the Debtor and its customers protection against any loss as a result of the Committee's appeal.

The Committee submits that it is nevertheless entitled to a stay pending appeal pursuant to Bankruptcy Rule 8005. In order to obtain a discretionary stay, the Committee must demonstrate that: 1) it is likely to prevail on the merits of its appeal; 2) it will suffer irreparable injury absent a stay; 3) a stay will not cause substantial harm to other interested parties; and 4) a stay will not harm the public interest. [*4] See, e.g., In the *Matter of Delaware & Hudson Ry. Co.*, *90 Bankr. 90, 91 (Bankr. D. Del. 1988)*. The Court will examine each of these four factors seriatim.

### Probable Success on the Merits

The Court concludes that the Committee has carried its burden of demonstrating the first factor, probable success on the merits. Probable success on the merits means that "the movant has a 'substantial case,' or a strong case on appeal." *In Re Public Service Co. of New Hampshire*, *116 Bankr. at 349*. There is no dispute that the issues presented are novel and complex. I have concluded that the issues are entitled to de novo review. I, therefore, embrace the observations of the Court in *In Re Mader*, *100 Bankr. 989, 991 (N.D. Ill. 1989)*, as follows:

> This Court does not intend to go so far as to actually determine the merits of the legal issues which will be presented on appeal. Suffice it to say, however, that we have not found, nor been cited to, any controlling authority on this precise question, and the novel legal issue presented is not one in which the debtor has no likelihood of success. This case will [*5] likely present an issue of first impression and, on balance, the likelihood of success on the merits does not appear to weigh too heavily in favor of, or against, any of the parties to this proceeding.

See also *In Re Gleasman*, *111 Bankr. 595, 601-02 (Bankr. W.D. Texas 1990)*.

### Irreparable Harm

The Court finds that the Committee has carried its burden as well as to the irreparable harm factor. It is apparent that, absent a stay, the funds subject to the Bankruptcy Court's February 13, 1992 order will be disbursed to the Debtor's customers. In dispute is the question whether there is a mechanism in place to recover such funds in the event the Bankruptcy Court's order is reversed. I decline to resolve that question on the record before me. Given the complexity of the question, however, I conclude that the irreparable injury factor weighs more heavily in favor of granting the stay pending an expedited appeal.

### Harm to Other Parties

The parties filing in opposition to this stay argue that a stay exposes the Debtor "to the unnecessary risk of diminution of the estate due to interest payments and substantial tax liability that could be easily [*6] avoided if [the Debtor] timely flows through the refunds." (D.I. 6 at 19) Accepting such representations as accurate, I nevertheless conclude that the interests of the Debtor and the bankruptcy estate can be accommodated by an expedited appeal.

### Public Interest

Although the Court acknowledges that the refund of overcharges to individual customers represents a significant public interest, as does the public interest in enforcing the laws promulgated by Congress, I conclude that the public interest will not be adversely affected if the stay is granted pending an expedited appeal.

### CONCLUSION

For the reasons stated, the Court will granted the Committee's emergency motion for stay pending appeal.

An appropriate order will be entered.

SUE L. ROBINSON

100HXG

********** Print Completed **********

Time of Request:  July 22, 2005  05:05 PM EDT

Print Number:  1862:53935143
Number of Lines:  93
Number of Pages:  2

Send To:  WINTER, CHRISTOPHER
         DUANE MORRIS LLP
         1100 NORTH MARKET ST STE 1200
         WILMINGTON, DE 19801-1163

100HXG

Print Request: LEXSEE

Time of Request: July 22, 2005   05:06 PM EDT

Number of Lines: 388
Job Number:   1862:53935310

Client ID/Project Name: U0597-00001-03350

Research Information:

Lexsee 2001 Bankr. LEXIS 723

Send to:  WINTER, CHRISTOPHER
          DUANE MORRIS LLP
          1100 NORTH MARKET ST STE 1200
          WILMINGTON, DE 19801-1163

LEXSEE 2001 BANKR. LEXIS 723

Re: Trans World Airlines, Inc.

Case No. 01–0056 (PJW)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

*2001 Bankr. LEXIS 723*

March 27, 2001, Decided

**DISPOSITION:** [*1] EEOC's motion for stay pending appeal denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** Gwendolyn Young Reams, James N. Finney, Gerald D. Letwin, Equal Employment Opportunity Commission, Washington, D.C., for Equal Employment Opportunity Commission.

Stuart Schiffer, Carl Schnee, Ellen W. Slights, United States Attorneys Office, Wilmington, DE, for United States of America.

J. Christopher Kohn, Tracy J. Whitaker, Ruth A. Harvey, Margaret Newell, Lacey R. Harwell, Jr, United States Attorneys Office, Washington, D.C., for United States of America.

Laura Davis Jones, Bruce Grohsgal, Pachulski, Stang, Ziehl, Young & Jones, Wilmington, DE, for Trans World Airlines, Inc., Debtors.

Alexander Dimitrief, P.C., James H.M. Sprayregen, Kirkland & Ellis, Chicago, Illinois, for Trans World Airlines, Inc., Debtors

Mark D. Collins, Michael Merchant, Richards, Layton & Finger, Wilmington, DE, for AMR Corp., AMR Finance, Inc. and American Airlines, Inc.

Alan B. Miller, Richard A. Rothman, Greg A. Danilow, Weil, Gotshal & Manges LLP, New York, New York, for AMR Corp., AMR Finance, Inc. and American Airlines, Inc.

**JUDGES:** Peter J. Walsh, United States Bankruptcy Judge.

**OPINIONBY:** Peter J. Walsh

**OPINION:** Dear Counsel: [*2]

This is my ruling on the Emergency Motion of the United States of America and Equal Employment Opportunity Commission for Stay Pending Appeal (Doc. # 971) and brief in support (Doc. # 972) ("Stay Brief") of the Court's March 12, 2001 order granting the motion of Transworld Airlines, Inc. ("TWA" or "Debtor") for sale of substantially all of its assets to AMR Corporation ("American"). The Debtor and American have filed a joint response (Doc. # 1024)("Response"). For the reasons set forth below, I will deny the stay motion.

TWA filed its chapter 11 case on January 10, 2001. This is TWA's third chapter 11 filing in ten years. Before filing, TWA and American entered into an asset purchase agreement under which TWA agreed to sell substantially all of its assets to American. On January 10, 2001, TWA filed a § 363 n1 motion for an order authorizing the sale of substantially all of its assets ("Sale Motion") to American outside the ordinary course of business and prior to filing a plan of reorganization. Even without the asset purchase agreement with American, TWA intended to file its bankruptcy petition in early January, 2001. Transcript n2 (vol. I) at 380

n1 Unless otherwise indicated, all references to "§ " are to a section of the Bankruptcy Code, *11 U S C § 101* et. seq.

[*3]

n2 "Transcript" refers to the transcripts of the March 9, 10 and 12, 2001 hearings.

On March 9, 10 and 12, 2001, I held an evidentiary hearing on the Sale Motion ("Sale Hearing")and a related contract rejection motion. The Equal Employment Opportunity Commission and United States (together the "EEOC") objected to the sale to the extent it permitted TWA to transfer its assets "free and clear" of the EEOC claims

2001 Bankr. LEXIS 723, *3

The EEOC asserts two categories of what it characterizes as "successor liability" claims: (1) those arising from a settlement ("Settlement Agreement") of an EEOC lawsuit and a private class action against TWA based on alleged sexual discrimination; and (2) those based on pending prepetition charges filed with the EEOC against TWA. n3 (For convenience of reference I will use the EEOC label of "successor liability" claims). The Settlement Agreement requires TWA to provide ten travel vouchers for covered individuals and provides that the class member or his or her family member may use the vouchers for his or her lifetime ("Travel Voucher Program"). Stay Brief at p. 3. TWA has issued [*4] trip vouchers since the program was initiated in the latter half of 1995. Id.

n3 According to the EEOC, as of March 2, 2001, there were 29 charges of employment discrimination against TWA alleging various violations of federal employment discrimination statutes, including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, and the Age Discrimination in Employment Act of 1967. Stay Brief at pp. 3-4.

After considering closing arguments on March 12, 2001, I overruled the EEOC's objection based on successor liability and entered an order (Doc. # 887)("Sale Order") authorizing the Sale Motion pursuant to §§ 363(f), 105(a) and 106(a).

Section § 363(f) permits a debtor-in-possession to sell property of the estate outside the ordinary course of business

...free and clear of any interest in such property of an entity other than the estate, only if —

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity [*5] consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Section 105(a) provides that

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The Sale Order states in relevant part:

The sale of the Transferred Assets to Purchaser shall be free and clear of Liens and other claims (other than Liens created by Purchaser) pursuant to *section 363(f) of the Bankruptcy Code* whatsoever known or unknown including, but not limited to, [*6] Liens and claims of any of the Sellers' ... employees ... and Purchaser shall not be liable in any way (as a successor to the Debtors or otherwise) for any claims that any of the foregoing or any third party may have against any of the Sellers; provided that, with regard to employees' claims, the free and clear delivery of the Assets shall include, but not be limited to, all asserted or unasserted, known or unknown, employment related claims and successorship liability accrued up to the date of closing of such sale.

Sale Order at p. 6, P 4.

The Sale Order also contains the following injunctive provision:

Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, all Persons are enjoined from taking any action against Purchaser or Purchaser's Affiliates including, without limitation, TWA Airlines LLC, to recover any claim which such Person had solely against Sellers or Sellers' Affiliates.

Sale Order at p. 8, P 11.

2001 Bankr. LEXIS 723, *6

On March 12, 2001 the EEOC filed a notice of appeal of the Sale Order (Doc. # 890) and on March 15, 2001, it filed the present motion requesting a stay pending appeal. Bankruptcy Rule 8005 governs the issue and provides in relevant [*7] part:

> notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. n4

> n4 *Fed R Bank P. 7062* incorporates *Rule 62 of the Federal Rules of Civil Procedure* and lists several specific matters in which the court may issue a stay pending appeal.

The granting of a motion for stay pending appeal is discretionary with the court. The movant must show that: (1) it will likely succeed on the merits of the appeal; (2) it will suffer irreparable injury if the stay is not granted; (3) a stay would not substantially harm other parties in the litigation; and (4) a stay is in the public interest. *Family Kingdom, Inc. v. EMIF New Jersey Ltd P'Ship (In re family Kingdom, Inc.), 225 B.R. 65, 69 (D. N.J. 1998),* [*8] *In re Roth American, Inc. 90 B.R. 94, 95 (Bankr. M.D. Pa. 1988)* No factor alone is outcome determinative. *In re Roth, 90 B.R. at 95.* Proper judgment under Rule 8005 "entails a 'delicate balancing of all elements.'" *In re Roth, 90 B.R at 95* quoting *In re Hotel Assocs. Inc., 7 B.R. 130, 132 (Bankr. E.D. Pa. 1980)*

I find that a balance of the Rule 8005 factors does not favor issuing a stay pending appeal and accordingly, I will deny the stay motion. I review each of the Rule 8005 elements in turn.

### I. Likelihood of Success on the Merits.

The EEOC argues it will likely prevail on appeal because neither § 363(f) nor § 105(a) permits the sale by TWA to American of substantially all of TWA's assets free and clear of the EEOC successor liability claims. It also raises the doctrine of sovereign immunity as a bar to the enforceability of the Sale Order. Finally, the EEOC argues that the Sale Order is procedurally defective in that it impermissibly imposes injunctive relief outside the confines of an adversary proceeding.

I am not persuaded by these arguments. I previously

concluded, and I reaffirm, that "under [*9] § 363(f), [TWA's] assets can be transferred free and clear of [successor liability] claims . . . . And I find no basis in the statute for requiring that the purchaser assume those liabilities." Transcript (vol. III) at p. 816.

Section 363(f) authorizes sales free and clear of interests in the property being sold. *11 U.S.C. § 363(f); Volvo White Truck Corp v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987)* citing H.REP. NO. 595, 95TH CONG., 1ST SESS. 345 (1977), U.S.C.C.A.N. 1978, P. 5787. Even before the enactment of the Bankruptcy Code in 1978, a court sitting in bankruptcy had the authority to authorize the sale of estate assets free and clear based on its general equitable powers and its duty to distribute the debtor's assets and determine controversies relating thereto. *White Motor Credit. 75 B.R. at 948* citing *Van Huffel v. Harkelrode. 284 U.S. 225, 52 S. Ct. 115, 76 L. Ed. 256 (1931)* In other words, bankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of § 363(f). *Id.* [*10]

The authority to sell free and clear is broad. It reflects a compelling policy to encourage bankruptcy sales subject only to claims of a specific and recognized nature in the subject property. E.g., *Rubinstein v. Alaska Pac Consortium (In re New England Fish Co). 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982)*

In this regard, I find the facts and reasoning of New England Fish Co. persuasive. In that case, the debtor, a major fish processing company with extensive facilities in Alaska, faced a management and financial crisis which forced it to cease operations. *New England Fish Co. 19 B.R. at 325.* It filed a chapter 11 petition which converted to a chapter 7 liquidation less than a month later. *Id.* The trustee for the debtor's estate entered into an asset purchase agreement with a buyer under which the trustee agreed to sell the debtor's assets. *Id.* With a new fishing season rapidly approaching, the Governor for the State of Alaska testified that operation of the debtor's facilities for the season was critical for the economy and that a sale of the debtor's assets was urgent. *Id.*

Prior to filing bankruptcy, the debtor was subject to [*11] two class action civil rights suits brought by its employees. *New England Fish Co. 19 B.R. at 324.* In one suit, the district court found that the debtor had discriminated based on race in the allocation of jobs and in housing its employees. *Id.* The asset purchase agreement obligated the trustee to sell the debtor's assets free and clear of the $15,156,371 civil rights claims. *New England Fish Co., 19 B.R. at 325*

The claimants objected to the sale based on the suc-

cessor liability of the buyer, claiming that the court could not authorize the sale of the debtor's assets free and clear of their civil rights claims. The claimants contended they were entitled to go to trial on the merits of a successor liability theory based on the buyer's substantial continuity of the debtor's business enterprise and continuity in the identity of the work force. *Id. at 324.*

In overruling these objections to the sale, the New England Fish Co. court reasoned as follows:

> The trustee ... concluded that the operation of the business was not practical. He sold it to Ocean Beauty. The latter would not and will not take the business burdened with [*12] civil rights litigation. No purchaser would. Such a prospect would chill or render impossible any sale. Those who would suffer from the uncertainty and delay would be creditors, including the ... claimants themselves ....

> The apprehension that bankruptcy will become a convenient expedient for avoiding the successorship doctrine is not well founded. The adverse consequences of bankruptcies involving displacement of management, creditor control and liquidation hardly support the argument that employers will use bankruptcy to avoid their responsibilities under the civil rights acts.

> Congress has stated relative priorities for various elements of the debtor's creditor constituency in the Code. It is contended there are now two court-created exceptions: NLRA and Title VII claimants. Assuming this is so, if both were present, which of these would be prior to the other? Where is this to end? It is only a question of time before such a priority could and would be extended to other aggregations of claimants. To allow exceptions to be created by extrapolation from one case to another would eventually subvert the specific priorities which define Congressional purpose for bankruptcy distribution [*13] to creditors.

> We conclude that the assets of the [debtor's] estate being transferred pursuant to the Purchase Agreement may be transferred free and clear of the claims of the [civil rights claimants] ....

*New England Fish Co., 19 B.R. at 328-29* (citations omitted).

I find this reasoning and outcome a *propos*. As in New England Fish Co., many factors weigh in favor of granting the injunction against the EEOC successor liability claims. TWA filed a good faith bankruptcy petition. Pursuant to a court approved bidding procedure, TWA determined that American's offer is the highest and best, and in fact, the only available offer for the purchase of substantially all of TWA's assets. TWA is unable to consummate the sale if the EEOC's claims are not extinguished. No other prospective purchaser exists. If the sale does not go forward, it is highly likely that TWA will be liquidated with the resultant material harm to various creditor constituencies, including its 20,000 employees and a likely significant adverse economic impact on the St. Louis, Missouri region, the location of TWA's hub airport.

Authorizing the sale of TWA to American free and clear of [*14] the EEOC's successor liability claims achieves the purpose of § 363 intended by Congress. "The purpose behind the 'free-and-clear' language is to maximize the value of the asset, and thus enhance the payout made to creditors. Without the 'free-and-clear' language, prospective buyers would be unwilling to pay a fair price for the property subject to sale; instead, the price would have to be discounted, perhaps quite substantially, to account for the liabilities that the buyer would face simply as a result of acquiring the asset." *WBQ P'ship v. Virginia Dep't of Med. Assistance Serv. (In re WBQ P'ship), 189 B.R. 97, 108 (Bankr. E.D. Va. 1995)*.

I also agree with TWA and American that (1) the prospect of successor liability would deter bidders and could create a serious impediment to the ability of debtors to effect going-concern sales under § 363, see, e.g., *In re Leckie Smokeless Coal Co., 99 F.3d 573, 586-87 (4th Cir. 1996), In re WBO P'ship, 189 B.R. at 108-09, New England Fish Co., 19 B.R. at 329*, and that (2) bidders faced with prospective successor liability claims would lower their offered purchase price thereby [*15] indirectly subverting the priority scheme of the Bankruptcy Code. See, e.g., *White Motor Credit, 75 B.R. at 951, New England Fish Co., 19 B.R. at 328*.

The EEOC argues that the "Settlement Agreement prohibits TWA from reducing or limiting the benefits provided by the Travel Voucher Program. Id., Section VII, P A.3, at 8. As such TWA may not dispose of its assets, by sale or otherwise, without making appropriate arrangements for continuation of the voucher program." Stay Brief at p. 3. I find this statement a classic non sequitur.

The EEOC's conclusion would clearly not pertain in a TWA liquidation scenario. TWA leases 97% of its fleet of approximately 180 airplanes. Transcript (vol. I) at 21. Absent the American transaction it is highly likely that TWA will not be able to satisfy its aircraft lease obliga-

tions on an ongoing basis. Pursuant to § 1110 the lessors will simply repossess their planes. In that situation, how can TWA make "appropriate arrangements" as the EEOC suggests TWA is required to do? TWA will have no planes and accordingly, no ability to continue the Travel Voucher Program.

For similar reasons, I also reject the EEOC's argument [*16] that the Travel Voucher Program and the EEOC charges cannot be reduced to a monetary satisfaction. Stay Brief at p. 11. The EEOC characterizes the Travel Voucher Program as injunctive relief for which it cannot be required to accept a monetary settlement. From this it concludes that the claims are not subject to § 363(f)(5)and that the sale to TWA therefore cannot be free and clear of the EEOC successor liability claims. The EEOC fails to recognize, however, that if TWA were to liquidate, the "injunctive" award made to the flight attendants in the form of travel vouchers would be converted to a dollar claim and it would be treated like any other unsecured claim in this bankruptcy case. In fact, it appears the Settlement Agreement itself establishes a method for valuing the travel vouchers. Thus, I find no basis in the statute for requiring the purchaser to assume these liabilities.

The EEOC next argues that its successor liability claims are not "interests in property" within the meaning of § 363(f). I disagree. TWA and American cite extensive case law which undermines the cases on which the EEOC relies. The EEOC does not attempt to refute this contrary precedent. Compare Stay [*17] Brief citing *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994); *Schwinn Cycling & Fitness, Inc. v. Benonis (In re Schwinn Bicycle, Co.)*, 210 B.R. 747 (Bankr. N.D. Ill. 1997) aff'd 217 B.R. 790 (N.D. Ill. 1997) with Response citing *Leckie Smokeless*, 99 F.3d at 582, 585 (section 363(f) authorizes bankruptcy court to extinguish statutory successor liability for employee benefit claims); *P.K.R. Convalescent Ctr. v. Virginia Dep't of Med. Assistance Serv. (In re P.K.R. Convalescent Ctrs., Inc.)*, 189 B.R. 90, 96 (Bankr. E.D. Va. 1995) (section 363(f) prevents state's statutory tax interest on property from passing to purchaser); *In re WBO P'ship*, 189 B.R. at 107 (same); *White Motor Credit*, 75 B.R. at 949 (section 363 sale was free and clear of prepetition tort claim against asset purchaser); *Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 190-91 (Bankr. N.D. Ga. 1986)(same).

I note that the leading cases which the EEOC cites in support of successor liability are from the Seventh Circuit. E.g., *Zerand-Bernal Group*, 23 F.3d at 163 [*18] (bankruptcy court lacks authority to enjoin all possible future lawsuits against a buyer at a bankruptcy sale); *Schwinn Bicycle*, 210 B.R. at 755. As such they are not

controlling precedent for this court. Equally important, these cases are factually distinguishable because they involve product liability claims against the debtors' alleged successor-in-interest that arose after the sale transaction or plan confirmation. Thus, these cases hold that a sale free and clear of claims cannot divest a product liability suit that arises after a sale of assets or plan confirmation, not that § 363(f) does not authorize a sale free and clear of successor liability based on prepetition claims against the debtor.

I am also not persuaded by the EEOC's attempt to distinguish the precedent cited by TWA. For example, the EEOC alleges that *Forde v. Kee-Lox Mfg. Co.*, 437 F. Supp. 631 (W.D.N.Y. 1977) is no longer good law because it was decided under the Bankruptcy Act which did not have a provision authorizing asset sales free and clear of interests in property. Stay Brief at p. 12. As noted *supra*, it has long been established that bankruptcy courts have the equitable [*19] authority to authorize the sale of estate assets free and clear of interests even without § 363. The fact that Forde was decided under the Act therefore does not compromise its reasoning. And as TWA and American point out, Forde continues to be cited as good law by courts interpreting the Bankruptcy Code. E.g., *Ninth Ave. Remedial Group v. Allis-Chalmers Corp.*, 195 B.R. 716, 731 (N.D. Ind. 1996). *All American*, 56 B.R. at 189.

I disagree with the EEOC that New England Fish Co. "defies" *Folger Adam Security, Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252 (3d Cir. 2000). Stay Brief at p. 12. As noted above, I find the facts and analysis in New England Fish Co. highly relevant to the situation here. Furthermore, the EEOC's conclusion that Folger Adam makes a "pronouncement that general unsecured claims not arising from the ownership of property are not within section 363(f)'s ambit" is incorrect. Stay Brief at p. 12.

In Folger Adam, the Court of Appeals for the Third Circuit had to "decide whether the affirmative defenses of setoff, recoupment, and other contract defenses, which arose as a consequence of alleged [*20] defaults under certain contracts with the debtors, constitute an 'interest' under *section 363(f) of the Bankruptcy Code* such that a sale of the debtors' assets in a consolidated Bankruptcy Court auction free and clear, extinguished such affirmative defenses and effectively transformed such contract rights into unimpeachable accounts receivable in the hands of the purchaser." 209 F.3d at 253-54. The Third Circuit concluded that "affirmative defenses do not constitute an 'interest' for purposes of section 363(f) and, therefore, were not extinguished by the Bankruptcy sale." Id. at 254. The Court did not, however, otherwise define the

scope of an "interest" for purposes of § 363(f).

In reaching its conclusion, the Court noted that "any interest" is not defined anywhere in the Bankruptcy Code. *Folger Adam, 209 F.3d at 257*. After reviewing existing case law, the Third Circuit concluded that right of recoupment is a defense and not an interest and is thus not extinguished by a § 363(f) sale. *Id. at 261*. The Court, however, did not otherwise define or surmise what comprises an 'interest' under § 363(f).

Likewise, the Court [*21] of Appeals for the Fourth Circuit in Leckie Smokeless also refused to provide a full definition of interest, a case which the EEOC incorrectly cites for the proposition that the term "interests in property" is interchangeable with "lien" and that both mean a "charge against or interest in property to secure payment of a debt or performance of an obligation." Stay Brief at p. 7.

In Leckie Smokeless, two employer-sponsored benefit plans objected to the extinguishment of their right to payment of plan liabilities from a successor–in–interest by operation of § 363(f). In determining whether the plans had "any interest in property" within the meaning of § 363(f) the Fourth Circuit rejected what it called the District Court's "unduly broad interpretation" of the phrase. The District Court had found that simply the right to demand money from the debtor gave rise to an "interest" in the debtor's property under § 363(f). *Leckie Smokeless, 99 F.3d at 581*.

Rejecting this definition, the Fourth Circuit noted that

... while the plain meaning of the phrase "interest in such property" suggests that not all general rights to payment are encompassed by the statute, [*22] Congress did not expressly indicate that, by employing such language, it intended to limit the scope of section 363(f) to *in rem* interests, strictly defined, and we decline to adopt such a restricted reading of the statute here.

*Leckie Smokeless, 99 F.3d at 582*.

The EEOC maintains that § 105(a) does not support the sale "free and clear" of its successor liability claims. A predicate of this argument is that § 363(f) does not authorize the requested relief. However, because my order authorizing the sale of TWA to American is based on the "free and clear" language of § 363(f) as discussed above, the injunctive relief in the Sale Order is appropriate under § 105(a) because it is necessary to carry out the effect and purpose of § 363(f). *11 U.S.C. § 105(a)*. It therefore follows that I am not using § 105(a) to create substantive

rights or to contravene the Bankruptcy Code as the EEOC suggests.

The EEOC raises two additional arguments in support of its stay request. First, it invokes the doctrine of sovereign immunity because "in this matter, the effect of the Sale Order is tantamount to a suit by American against the United States [*23] and EEOC for a declaratory judgment that it has no successor liability as a result of its purchase of substantially all of TWA's assets." Stay Brief at 14. This argument mischaracterizes the facts. TWA is the debtor and moving party. The Sale Order is pursuant to TWA's motion for authority to sell substantially all of its assets in TWA's chapter 11 bankruptcy. I fail to see how the Sale Order can be characterized as a declaratory judgment by American against the EEOC. It clearly is not a suit against the EEOC. Accordingly, I conclude that the Sale Order does not implicate the sovereignty of the EEOC as a government entity.

Furthermore, § 106(a) expressly abrogates the EEOC's sovereign immunity under § 363 to the extent the EEOC could invoke the doctrine against TWA. The EEOC is a federal entity charged with enforcing federal statutes. "Congress has given no indication that bankruptcy courts cannot order property sold free and clear of interests that Congress has itself created by statute." *Leckie Smokeless. 99 F.3d at 586*.

Although the cases the EEOC cites in support of sovereign immunity do establish that a waiver of sovereign immunity generally must be clear [*24] and is narrowly construed, the cases are otherwise inapposite. None of the cases concern a sale under § 363(f), and indeed most do not involve a bankruptcy proceeding. See Stay Brief at 14 citing *F.D.I.C. v. Meyer, 510 U.S. 471, 483, 114 S. Ct. 996, 1003, 127 L. Ed. 2d 308 (1994)*(sue-and-be-sued clause of FDIC's statutory predecessor waived FDIC's sovereign immunity from suit by discharged employee of failed savings and loan association); *United States v. Nordic Village, Inc., 503 U.S. 30, 38, 112 S. Ct. 1011, 1017, 117 L. Ed. 2d 181 (1992)* (§ 106(c) does not waive the sovereign immunity of the United States from chapter 7 trustee's action seeking monetary recovery) superseded by statute as stated in, e.g., *Field v. Montgomery County (In re Anton Motors, Inc.), 177 B.R. 58, 62 (Bankr. D. Md. 1995)*(in § 106(a) Congress has stated unequivocally its intention to abrogate sovereign immunity from bankruptcy causes of action for both the United States and the states, as to both nonmonetary and monetary judgments, except punitive damages); *United States v. Testan, 424 U.S. 392, 96 S. Ct. 948, 47 L. Ed. 2d 114 (1976)*(nonbankruptcy [*25] suit for reclassification of federal civil service positions and for back pay involving issues regarding jurisdiction of Court of Claims and relief

available in that tribunal) criticized by *United States v. Mitchell*, 463 U.S. 206, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983).

Second, the EEOC argues that the Sale Order may not impose injunctive relief outside the scope of an adversary proceeding. I disagree. An adversary proceeding is not required for an order under § 363(f), even if the order includes injunctive relief necessary to effectuate the sale "free and clear." If what the EEOC argues were true, all § 363(f) sales would have to proceed via an adversary proceeding — a procedure finding no support in the Bankruptcy Code or twenty plus years of reported decisions interpreting that Code.

Section 363(f) does not contain any "notice and hearing" requirement beyond that set forth in § 363(b). Thus, courts have held that "the Code contemplates that hearings will be held on sales of estate property, including sales of property free and clear of liens, 'only when there is an objection.'" *In re Stogsdill*, 102 B.R. 587, 589 (Bankr. W.D. Tex. 1989) [*26] quoting H.R.REP. No. 595, 95TH CONG., 1ST SESS. 315 (1977) U.S.C.C.A.N. 1978, pp. 5787, 6272. This does not relieve the debtor–in-possession from complying with due process to interest holders. Nor may the court execute an order approving the allocation or distribution of sale proceeds in the absence an adversary proceeding. *Fed.R.Bank.P. 7001(2)*; e.g., *In re Collins*. 180 B.R. 447. 449 (Bankr. E.D. Va. 1995)(propriety and validity of liens on property were not properly before the court on a motion to sell free and clear).

Current *Fed.R.Bank.P. 7001* does not include a provision requiring an adversary proceeding to sell property of the estate free and clear of liens. See *In re J.B. Winchells, Inc.* 106 B.R. 384. 394 (Bankr. E.D. Pa 1989) discussing former Bankr.R. 701(3), which required an adversary proceeding to "sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction." *Fed.R.Bankr.P. 7001(3)* includes as an adversary proceeding a request for approval of a sale under § 363(h), but no longer includes approval of a sale free and clear under § 363(f)

The cases on which the EEOC relies [*27] are not to the contrary. These cases involve proceedings specified in *Fed.R.Bank.P. 7001*, not § 363(f) sales. See Stay Brief at p. 16 citing *Feld v. Zale Corp. (In re Zale Corp.)*. 62 F.3d 746. 763 (5th Cir. 1995)(injunctive relief issued as component of settlement agreement between the debtor, three of its former directors and their D&O liability insurer required adversary proceeding); *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*. 12 F.3d 426. 437 (5th Cir. 1994)(noting that claim seeking equitable interest in property such as constructive trust required an adversary proceeding because it is proceeding to recover money or property or determine interest in property); *Lyons v. Lyons (In re Lyons)*. 995 F.2d 923, 924 (9th Cir. 1993)(sale under § 363(h) required adversary proceeding); *In re McKay*. 732 F.2d 44. 45, 48 (3d Cir. 1984)(holding that chapter 13 debtor was required to initiate adversary proceeding for lien avoidance action under § 522(f)). Not surprisingly, these cases confirm that an adversary proceeding is required for those actions listed in *Fed.R.Bank.P. 7001*. But a "free and clear" sale under § [*28] 363(f) is simply not such an action

In sum, for the reasons discussed above, I conclude that the EEOC is not likely to succeed on the merits of its appeal.

## II. Irreparable Injury to EEOC.

The EEOC argues it faces irreparable injury because § 363(m) threatens the loss of its appellate rights if the American transaction is consummated. Stay Brief at pp. 17–18. It maintains that "this prospect itself suffices to meet the standard of irreparable harm." Id. at p. 17.

The EEOC does not provide any basis for concluding that § 363(m) will render its appeal moot. Although the EEOC is appealing the Sale Order *in toto*, its objection is based on an isolated provision of the Sale Order that authorizes the sale free and clear of the EEOC's successor liability claims. If the EEOC is successful on appeal, presumably it may then proceed against American on the merits of its claim.

Even if § 363(m) adversely impacts the EEOC's objection, "it is well settled that an appeal being rendered moot does not itself constitute irreparable harm." *In re 203 North LaSalle Street P'ship*. 190 B.R. 595, 598 (N.D. Ill. 1995); see also *Virginia Dep't of Med. Assist. Svs. v. Shenandoah Realty Partners, LLP (In re Shenandoah Realty Partners)*. 248 B.R. 505. 510 (W.D. Va. 2000). [*29] *In re Kent*. 145 B.R. 843. 844 (Bankr. E.D. Va. 1991), *In re Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987)

More fundamentally, however, the EEOC fails to establish irreparable injury for the simple reason that the EEOC may have no recoverable claims against TWA in the absence of a sale of substantially all of TWA's assets to American. In the likely event that a stay pending appeal aborts the American transaction, the EEOC will be relegated to holding an unsecured claim in what will very likely be a piece–meal liquidation of TWA. In that context, such claims are likely to have little if any value. Issuing a stay pending appeal therefore cannot be said to result in any greater recovery for the EEOC or its constituencies. Consequently, there is no irreparable injury to the EEOC in the absence of a stay.

### III. Substantial Harm to TWA and Other Litigants.

The EEOC argues that a stay will not substantially harm either TWA or American. The EEOC claims there is no substantial harm because (1) enforcing the Travel Voucher Program is not a burden on American as successor to TWA because travelers under the program would only use seats that would [*30] otherwise be empty; and (2) the value of the EEOC's successor liability claims is not material relative to the value of the entire sale transaction. Stay Brief at p. 19.

The EEOC's argument misses the point. The substantial harm to other litigants inquiry focuses on the harm caused by issuing a stay of the Sale Order pending appeal, not on the harm caused by preserving or enforcing the EEOC's successor liability claims against American. The evidence is overwhelming that TWA cannot be sustained as a viable business enterprise in the face of a material delay in closing the American transaction.

Specifically, the uncontroverted testimony at the Sale Hearing was that TWA has a cash burn rate of $3,000,000 per day. If the sale to American is unduly delayed there is a very serious risk of losing a sale transaction which materially benefits substantial and diverse creditor constituencies. At the conclusion of the Sale Hearing, I found that there would be an immediate and precipitous decline in the financial affairs of TWA followed by a very high probability, if not certainty, of liquidation if I were to deny or reject the Sale Motion. Transcript (vol. III) at 810. A stay of the Sale Order [*31] poses the same threat.

### IV. The Public Interest.

The EEOC argues that I should stay the Sale Order because it is contrary to the strong public interest in the enforcement of the federal statutes prohibiting discrimination in the workplace. Recognizing the compelling objectives of saving financially troubled businesses under the Bankruptcy Code, the EEOC nevertheless maintains that these salutary objectives do not justify the suspension of usual rules of fair employment practices. Stay Brief at p. 20.

I am somewhat puzzled by the EEOC's position in this regard. The testimony at the Sale Hearing established that if the sale of TWA's assets to American does not go forward, TWA will likely liquidate. Given TWA's financial condition, a liquidation would result in severe harm to all TWA's past and current employees because they would lose their jobs and retirement benefits.

Although I concur with the EEOC that there is a strong public interest in the enforcement of federal statutes prohibiting discrimination in the workplace, I do not agree that the public interest favors jeopardizing the job security of 20,000 TWA employees, including those EEOC claimants still employed at [*32] TWA, at the expense of preserving successor liability claims which will be rendered unenforceable absent a sale of substantially all of TWA's assets as a going concern. Stay Brief at 19.

Finally, I disagree that the Sale Order prevents the EEOC from enforcing federal statutes prohibiting discrimination in the workplace. It is TWA's failure as a viable standalone airline that prevents the EEOC from enforcing claims against TWA. The Sale Order is simply not the cause of any "suspension of usual rules of fair employment practice" at TWA, as the EEOC alleges. Stay Brief at 20. There is absolutely no evidence to suggest that TWA is availing itself of the provisions of the Bankruptcy Code to circumvent fair employment statutes. The simple fact is that TWA is a failing enterprise whose likely end, in my opinion, will either be a partial survival as a part of American or a liquidation resulting in no enterprise value and a consequent material loss to all non–priority general unsecured creditor classes.

### CONCLUSION

The EEOC has not advanced any law or facts which I have not already considered. For the reasons set forth above, I deny the EEOC's motion for stay pending appeal.

SO ORDERED. [*33]

Very truly yours,

Peter J. Walsh

United States Bankruptcy Judge

100HXG

********** Print Completed **********

Time of Request:  July 22, 2005  05:06 PM EDT

Print Number:  1862:53935310
Number of Lines:  388
Number of Pages:  8

Send To:  WINTER, CHRISTOPHER
          DUANE MORRIS LLP
          1100 NORTH MARKET ST STE 1200
          WILMINGTON, DE 19801-1163