# EXHIBIT A

-14956 v1-LALANKFO

WILLIB-14956.1-LALANKFO 7/29/05 3:56 PM

Westlaw.

Not Reported in F.Supp.2d
2004 WL 253477 (D.Del.)
(Cite as: 2004 WL 253477 (D.Del.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: POLAROID CORPORATION, et al., Debtors.
Stephen J. MORGAN, Appellant,
v.
POLAROID CORPORATION, et al., Appellees.
No. Civ.A. 02-1353 JJF, 01-10864 PJW.

Feb. 9, 2004.

Stephen J. Morgan, Appellant, pro se.

Gregg M. Galardi, Mark L. Desgrosseilliers, of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, Eric W. Kaup, of Skadden, Arps, Slate, Meagher & Flom LLP, Chicago, Illinois, for Debtors and Debtors-in-Possession, Appellees, of counsel.

Joseph Malfitano, of Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, Nava Hazan, of Akin Gump Strauss Hauer & Feld, LLP, New York, New York, Co-Counsel to the Plan Administrator, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan. (D.I.31.) For the reasons discussed below, the Court will deny Appellant's request for a stay pending appeal.

BACKGROUND

The instant action is a bankruptcy appeal arising from the voluntary bankruptcy filing by Polaroid Corporation and certain of its subsidiaries and affiliates (collectively the "Debtors") in October of 2001. By his Motion, the Appellant requests the Court to stay the implementation of the Debtors' plan for reorganization. The Bankruptcy Court denied an identical request for a stay by Appellant on December 16, 2003.

I. Parties' Contentions

The Appellant contends that the Court should stay the implementation of the reorganization plan because it is not in the best interest of Polaroid shareholders. The Appellant alleges that the auction of Polaroid's assets was fraudulent and that the value of Polaroid's assets far exceeded their sale price. Further, the Appellant contends that his appeal is likely to be successful because there remain unanswered questions about value and damaged shareholder and bondholder interests. The Appellant contends that if the Court denies his request for stay, he and other shareholders will be deprived of their right to appeal and their financial stakes in Polaroid. The Appellant also contends that a stay is in the public interest, because in light of recent corporate scandals, a resolution of the instant appeal is required.

In response, the Appellee contends that the Court should deny Appellant's request for an emergency stay because he has not satisfied the standards for entitlement to a stay pending appeal. Further, the Appellee contends that the Appellant's request is equitably moot. The Appellee also contends that Appellant failed to properly serve it and its counsel as required by the Federal Rules of Civil Procedure.

DISCUSSION

Federal Bankruptcy Rule 8005 enables a reviewing court to issue a stay pending appeal from a judgment, order, or decree of a bankruptcy judge. Courts interpreting Federal Bankruptcy Rule 8005 have established a four prong test for an appellant to obtain a stay: 1) a strong likelihood of success on the merits of the appeal; 2) the movant will suffer irreparable harm if the stay is denied; 3) substantial harm will not be suffered to non-moving parties if the stay is granted; and 4) issuance of the stay will not harm the public interest. *In re 421 Willow Corp.,* 2003 WL 22318022 at *3 (E.D.Pa. Oct. 9, 2003). If a party fails to establish one of the four prongs, a court may deny the requested stay. *In re ANC Rental Corp.,* 2002 WL 1058196 at *2 (D.Del. May 22, 2002) (citing *In re Blackwell,* 162 B.R. 117, 120 (E.D.Pa.1993)). Because the Court concludes that Appellant has not established a likelihood of success on the merits, the Court will deny the request for stay pending appeal.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 253477 (D.Del.)
(Cite as: 2004 WL 253477 (D.Del.))

Page 2

Likelihood of success on the merits means that a movant has a " 'substantial case,' or a strong case on appeal." *In re The Columbia Gas Sys., Inc.,* 1992 U.S. Dist. LEXIS 3253 at *4 (D.Del. March 10, 1992) (quoting *In re Public Serv. Co. of N.H.,* 116 BR 347, 349 (Bankr.D.N.H.1990). Appellant contends that "unanswered questions about value ... once answered will favor the appeal." (D.I. 31 at 3.) However, in the instant motion the Appellant does not identify for the Court any order, decree, or judgment by the Bankruptcy Court that was erroneous, and thus, potentially reversible on appeal. Moreover, Appellant has not identified any potentially incorrect factual finding or legal conclusion reached by the Bankruptcy Court.

*2 Absent specific challenges to actions taken by the Bankruptcy Court, the Court must conclude that Appellant has not demonstrated a strong likelihood of success on the merits. The Court will not speculate as to what errors, if any, were committed by the Bankruptcy Court. Therefore, because the Court concludes that Appellant has failed to establish the first prong of the test for entitlement to a stay, the Court will deny Appellant's Motion. [FN1]

> FN1. Based on this conclusion, the Court will not address Appellee's remaining bases for denial.

An appropriate Order will be entered.

## ORDER

At Wilmington, this 9th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan (D.I.31) is *DENIED.*

2004 WL 253477 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV01353                    (Docket) (Aug. 02, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 1992 U.S. DIST. LEXIS 3253

IN RE: THE COLUMBIA GAS SYSTEM, INC. and COLUMBIA GAS TRANSMISSION CORPORATION, Debtors. THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COLUMBIA GAS TRANSMISSION CORPORATION, Appellant, THE COLUMBIA GAS SYSTEM, INC. and COLUMBIA GAS TRANSMISSION CORPORATION, Appellees.

Civil Action No. 92-127-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1992 U.S. Dist. LEXIS 3253

March 10, 1992, Decided

**PRIOR HISTORY:** [*1] Chapter 11, Case Nos. 91-803, 91-804

**LexisNexis(R) Headnotes**

**COUNSEL:** James L. Patton, Jr, Esquire, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, attorney for Debtors and for Appellees The Columbia Gas System, Inc. and Columbia Gas Transmission Corporation.

Kevin Gross, Esquire, of Rosenthal, Monhait & Gross, Wilmington, Delaware, attorney for Appellant The Official Committee of Unsecured Creditors for the Columbia Gas Transmission Corporation.

**JUDGES:** ROBINSON

**OPINIONBY:** SUE L. ROBINSON

**OPINION:**

   **MEMORANDUM OPINION**

ROBINSON, U.S. District Judge

**INTRODUCTION**

   Pending before the Court is the emergency motion of the Official Unsecured Creditors Committee of the Columbia Gas Transmission Corporation ("the Committee") for stay pending appeal ("the motion"). The Committee has filed an appeal of the February 13, 1992 order of the Bankruptcy Court approving, inter alia, payment of "category one refunds and prepetition GRI surcharges on a pro-rata basis . . . to the extent of $ 3.3 million." Said order is based upon the Bankruptcy Court's conclusion that the "category one refunds and prepetition GRI surcharges" are not property of the Debtor's bankruptcy estate, rather, that said refunds and surcharges when received [*2] are held by the Debtor "in trust" for the benefit of its customers.

   The Committee bases its motion on two arguments. First, the Committee contends that, pursuant to Bankruptcy Rule 7062, which incorporates *Fed.R.Civ.P. 62(d)*, it is entitled to a stay as a matter of right so long as suitable means are implemented to protect non-appealing parties from any loss occasioned by a stay. In this case, the Committee argues that the Debtor's retention of customer refund monies in an interest bearing escrow account insures that neither the Debtor nor its customers will be harmed by a stay. Alternatively, the Committee argues that a stay is warranted pursuant to Bankruptcy Rule 8005 because the Committee has satisfied all the requirements for such discretionary relief.

   Responses in opposition to the motion have been filed by Columbia Gas Transmission Corporation (the "Debtor"); West Ohio Gas Company, Virginia Natural Gas, Inc. and the Peoples Natural Gas Company; the Columbia Gas Distribution Companies; The Official Committee of Customers; and the Pennsylvania Public Utility Commission. For the reasons that follow, a stay will be granted pending an expedited appeal.

**DISCUSSION** [*3]

Case 1:05-cv-00582-KAJ    Document 6-2    Filed 08/10/2005    Page 5 of 12

Page 2
1992 U.S. Dist. LEXIS 3253, *

This Court has jurisdiction pursuant to *28 U.S.C. § 1334*(b). I conclude that the issues at bar are primarily legal in nature and, therefore, subject to de novo review. *In Re Public Service Co. of New Hampshire, 116 Bankr. 347, 349 n.2 (Bankr. D.N.H. 1990).*

With respect to the Committee's first argument for relief, I decline to hold that the Committee is entitled to a stay as a matter of right. The Committee has not posted a bond, as required by *Fed.R.Civ.P. 62(d)*. I find no support for the proposition that the Debtor, the prevailing party below, be required to place into escrow funds judicially determined to belong to its customers, in order to afford the Debtor and its customers protection against any loss as a result of the Committee's appeal.

The Committee submits that it is nevertheless entitled to a stay pending appeal pursuant to Bankruptcy Rule 8005. In order to obtain a discretionary stay, the Committee must demonstrate that: 1) it is likely to prevail on the merits of its appeal; 2) it will suffer irreparable injury absent a stay; 3) a stay will not cause substantial harm to other interested parties; and 4) a stay will not harm the public interest. [*4] See, e.g., In the Matter of *Delaware & Hudson Rv. Co., 90 Bankr. 90, 91 (Bankr. D.Del. 1988)*. The Court will examine each of these four factors seriatim.

### Probable Success on the Merits

The Court concludes that the Committee has carried its burden of demonstrating the first factor, probable success on the merits. Probable success on the merits means that "the movant has a 'substantial case,' or a strong case on appeal." *In Re Public Service Co. of New Hampshire, 116 Bankr. at 349.* There is no dispute that the issues presented are novel and complex. I have concluded that the issues are entitled to de novo review. I, therefore, embrace the observations of the Court in *In Re Mader, 100 Bankr, 989, 991 (N.D.Ill. 1989),* as follows:

> This Court does not intend to go so far as to actually determine the merits of the legal issues which will be presented on appeal. Suffice it to say, however, that we have not found, nor been cited to, any controlling authority on this precise question, and the novel legal issue presented is not one in which the debtor has no likelihood of success. This case will [*5] likely present an issue of first impression and, on balance, the likelihood of success on the merits does not appear to weigh too heavily in favor of, or against, any of the parties to this proceeding.

See also *In Re Gleasman, 111 Bankr. 595, 601-02 (Bankr. W.D.Texas 1990).*

### Irreparable Harm

The Court finds that the Committee has carried its burden as well as to the irreparable harm factor. It is apparent that, absent a stay, the funds subject to the Bankruptcy Court's February 13, 1992 order will be disbursed to the Debtor's customers. In dispute is the question whether there is a mechanism in place to recover such funds in the event the Bankruptcy Court's order is reversed. I decline to resolve that question on the record before me. Given the complexity of the question, however, I conclude that the irreparable injury factor weighs more heavily in favor of granting the stay pending an expedited appeal.

### Harm to Other Parties

The parties filing in opposition to this stay argue that a stay exposes the Debtor "to the unnecessary risk of diminution of the estate due to interest payments and substantial tax liability that could be easily [*6] avoided if [the Debtor] timely flows through the refunds." (D.I. 6 at 19) Accepting such representations as accurate, I nevertheless conclude that the interests of the Debtor and the bankruptcy estate can be accommodated by an expedited appeal.

### Public Interest

Although the Court acknowledges that the refund of overcharges to individual customers represents a significant public interest, as does the public interest in enforcing the laws promulgated by Congress, I conclude that the public interest will not be adversely affected if the stay is granted pending an expedited appeal.

## CONCLUSION

For the reasons stated, the Court will granted the Committee's emergency motion for stay pending appeal.

An appropriate order will be entered.

SUE L. ROBINSON

Westlaw.

Not Reported in F.Supp.2d  
2002 WL 1058196 (D.Del.)  
(Cite as: 2002 WL 1058196 (D.Del.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.  
In re: ANC RENTAL CORP., et al. Debtors.  
THE HERTZ CORPORATION, et al. Appellants,  
v.  
ANC RENTAL CORP., et al. Appellees.  
Nos. 01-11220(MFW), Civ.A. 02-154, Civ.A. 02-175, Civ.A. 02-288, Civ.A. 02-299, Civ.A. 02-360, 02-364-GMS.

May 22, 2002.

*AMENDED MEMORANDUM AND ORDER*

SLEET, J.

*1 On February 27, 2002, the Hertz Corporation ("Hertz") and Avis Rent a Car System Inc. ("Avis") filed the first of several expedited appeals from the orders of the Honorable Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware. Several subsequent appeals were filed. (Case Nos. 02-175 and 02-288 though and including 02-299). In particular, the appellants sought review of the January 28, 2002 and March 20, 2002 orders of the bankruptcy court that permitted the debtor to reject certain of their concession contracts and subsequently negotiate more favorable contracts at seven national airports. On March 25, 2002, Hertz filed a motion for a stay pending the appeals (D.I.18--02-154), and Avis joined in that motion. (D.I.20-- 02-154). On May 3, 2002, the bankruptcy court entered another order that permitted the debtor to reject contracts at four more airports. An appeal of this order was filed on May 10, 2002. (D.I.1--02-360.) Hertz filed an emergency motion for a stay pending this appeal on May 13, 2002. (D.I.2--02-360.) Avis also joined in this motion. (D.I.1--02-364.) The court finds that Hertz and Avis have failed to demonstrate the necessary irreparable harm. Moreover, the court finds that a stay will be harmful to the debtor. Therefore, both of the motions to stay will be denied.

The briefly stated facts of this case are as follows: The debtor, ANC Rental Corp ("ANC"), is the parent company of the Alamo Rent-A-Car and National Car Rental System companies. As the name makes obvious, Alamo and National are car rental companies. Hertz and Avis are also engaged in the car rental business.

The rental car industry is particularly active in the nation's airports. According to the parties, the normal procedure for operating at an airport requires that the rental car company first bid for a contract with the local airport authority. If the bid is acceptable, the airport authority will issue a contract to the winning bidder that will permit it to operate a rental car booth, or concession, at the local airport. The parties assert that the terms of such concession contracts usually include terms stating that the concessionaire must earn a certain profit each year. This is called the minimum annual guarantee ("MAG"). Additionally, the appellants contend that the contracts generally prohibit the practice of two concessionaires operating at the same concession booth. This practice is commonly known as "dual branding." The parties do not dispute that the contracts at issue contain MAG requirements, but the debtor disputes that the contracts contain prohibitions on dual branding. [FN1]

> FN1. To the extent that the debtor disputes this contention, for the purposes of this motion only, the court will accept that the contracts contain terms and conditions that prohibit dual branding.

ANC, National, and Alamo filed for Chapter 11 bankruptcy on November 13, 2001. As part of their reorganization plan, National and Alamo sought to reject the concession contracts and have ANC, as the debtor-in-possession, assume the contracts pursuant to § 365 of the bankruptcy code. The bankruptcy court permitted this rejection and assumption in each of its three orders. The appellants assert that the effect of the orders is to permit Alamo and National to operate at the same concession, which effectively permits the dual branding that the appellants contend is prohibited by the concession contracts. The appellees further argue that when the contracts with the airport authorities were renegotiated with ANC, the MAG was also effectively reduced because only one of the companies at the concession would be subject to the MAG requirement. The orders of the bankruptcy court currently affect concession

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 1058196 (D.Del.)  
**(Cite as: 2002 WL 1058196 (D.Del.))**

Page 2

contracts at eleven airports nationwide.

*2 Federal Rule of Bankruptcy Procedure 8005 permits a party to seek a stay pending appeal of an order of the bankruptcy court. See Fed. R. Bankr. P. 8005. The court may grant such a stay when the party seeking the stay can demonstrate that: (1) it has a likelihood of success on the merits of the appeal; (2) it will be subject to irreparable harm if the stay is not granted; (3) the granting of the stay will not substantially harm other interested parties; and (4) the granting of the stay would serve the public interest. See In re Edwards, 228 B.R. 573, 575 (Bankr.E.D.Pa.1999). If the movant fails to make a showing on any one of these four factors, the court may deny the stay. See In re Blackwell, 162 B.R. 117, 120 (E.D.Pa.1993).

Hertz and Avis both assert that they will suffer irreparable harm if the bankruptcy court's orders are not stayed and the debtor's reorganization plan is permitted to continue. The only argument the appellants present in support of this contention is that ANC, National, and Alamo will gain a "competitive advantage" if the reorganization scheme is permitted to continue because they will be able to operate at a lower cost than Hertz and Avis. The court is not persuaded by this argument. First, the amount of money the debtors will save during the consolidation process has been quantified. The fact that the savings can be quantified weighs against a finding of irreparable harm. See In re Shelly's, Inc., 87 B.R.931, 935 (Bankr.S.D.Ohio 1988) (indicating that even where there might be some intangible loss to reputation, if injury is "at bottom, financial" and could be calculated, there was no irreparable injury).

Second, where a business is threatened with serious financial harm (i.e. going out of business) as a result of a competitor's actions, irreparable harm may be present. See Sprint Corp. v. Deangelo, 12 F.Supp.2d 1188, 1194 (D.Kan.1998) (collecting cases). However, where the sole injury is loss of a competitive advantage, the argument for irreparable harm is less compelling because "revenues and customers lost to competition which can be regained through competition are not irreparable." Central & Southern Motor Freight Tariff Ass'n v. Household Goods Carrier's Bureau, 757 F.2d 301, 309 (D.C.Cir.1985). In other words, the marketplace should eventually be able to correct any harm suffered by Hertz and Avis.

Third, although Hertz and Avis claim that they will be irreparably harmed in the absence of a stay, they have failed to adduce evidence of the putative injury on the record before the court. "To constitute irreparable harm, however, an injury cannot be speculative, it must be certain, great, and actual." Sprint, 12 F.Supp.2d at 1194 (citations and internal quotations omitted). Although the appellants have provided some evidence of the alleged advantage the ANC companies will receive, they have failed to make even a prima facie showing which demonstrates a tangible financial or other loss to Hertz or Avis. In the absence of such evidence, any loss to Hertz or Avis is merely speculative.

*3 Finally, the bankruptcy court orders thus far will only affect ANC operations at eleven airports nationwide. In contrast, there are eighty-seven international airports and over 700 other commercial airports in this country. [FN2] Moreover, the majority of the eleven affected airports are relatively small. Given the small number of airports that are affected at this time versus the large number of airports in this nation, the court is not persuaded that allowing the ANC companies to consolidate operations threatens irreparable harm at present. Additionally, although there is a possibility that the plan may be implemented at many more airports, the court also notes that both the appellants and the appellees have access to markets outside of the nation's airports. For all of the above reasons, the court finds that the appellants have failed to demonstrate irreparable harm.

> FN2. This information was obtained through telephone and electronic-mail communication with the Federal Aviation Administration ("FAA"). See E-mail from Ben Castalano, FAA, to Althea Brown, Judicial Administrator to the Honorable Gregory M. Sleet (May 21, 2002) (on file with chambers).

Turning to harm to other interested parties, it is clear that granting a stay would have a substantial and detrimental effect on the debtor's plan of reorganization. According to the debtors, once the plan is fully implemented, savings of $136,000,000 will be achieved. The appellants argue that any savings at present, prior to the national implementation of the plan, will only amount to $6,000,000. The court finds that even a savings of $6,000,000 is important to a bankrupt estate. Moreover, a one year delay in implementing the plan might well seriously jeopardize the plan. [FN3] Thus, the court concludes that the granting of the stay would produce substantial harm to other parties.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
2002 WL 1058196 (D.Del.)
**(Cite as: 2002 WL 1058196 (D.Del.))**

> FN3. One year is the time the parties estimate for the appeal in the absence of a stay.

Since the appellants have failed to demonstrate irreparable harm or lack of substantial harm to other interested parties, the court will deny their motions for a stay of these proceedings. Therefore, none of the pending cases will be stayed on appeal. [FN4]

> FN4. Although the motions to stay were only filed in case numbers 02-154, 02-360, and 02-364, it is clear that the motions are intended to affect all of the pending cases. Therefore, the denial of the stay means that none of the pending cases will be stayed. The parties should therefore not attempt, absent a showing of good cause, to file additional motions to stay in the remaining cases.

For the aforementioned reasons, IT IS HEREBY ORDERED THAT:
1. The appellants' Motion for a Stay Pending Appeal (D.I.18--02-154) is DENIED.
2. Hertz's Emergency Motion for a Stay Pending Appeal (D.I.1--02-360) is DENIED.
3. Avis' Emergency Motion for a Stay Pending Appeal (D.I.1--02-364) is DENIED.
4. None of the cases in this litigation [Case Nos. 02-154, 02-175, 02-288 through and including 02-299, 02-360, and 02-364] will be stayed pending this appeal.

2002 WL 1058196 (D.Del.)

### Motions, Pleadings and Filings (Back to top)

- 1:02CV00364 (Docket) (May. 10, 2002)

- 1:02CV00360 (Docket) (May. 10, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d                                                                                                           Page 1
2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690
**(Cite as: 2001 WL 56474 (Conn.Super.))**

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
Hilary GALLAND,
v.
Richard BISHOP, Administrator of the Estate of Christopher Luke Yohan, et al.
**No. 088568.**

Jan. 9, 2001.

*MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (# 139 )*

ARENA.

I. *Procedural Background and Standard of Review*
\*1 On July 30, 1999, the plaintiff, Hilary Galland, filed an amended two-count complaint against the defendants, Richard Bishop, as administrator of the estate of Christopher Luke Yohan, and George Galland. The first count, which is directed at Bishop, alleges the negligent operation of a motor vehicle and the second count alleges the vicarious liability of Galland. In August 1999, Galland and Bishop filed separate answers to the amended complaint. On August 18, 2000, pursuant to Practice Book § 17-44 et seq., the plaintiff filed a motion for interlocutory summary judgment as to both defendants. On October 30, 2000, Galland filed an objection to the motion for interlocutory summary judgment. Bishop has not filed an objection to the motion for an interlocutory summary judgment.

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Witt v. St. Vincents Medical Center, 252 Conn. 363, 368, 746 A.2d 753, (2000). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact ... a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998). "The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. Southern New England Telephone Co., 44 Conn.App. 657, 663, 691 A.2d 1107 (1997).

II. *Motion for Interlocutory Summary Judgment as to the Defendant Bishop*
In his answer, Bishop admitted the following facts. Bishop admitted that the plaintiff was a passenger in the 1986 Pontiac station wagon and that the deceased Christopher Luke Yohan was operating the car. Bishop further admitted that he was appointed administrator of the estate of Yohan by the Probate and Family Court Department of Orange County, Massachusetts.

Attached to the motion for summary judgment is a subscribed and sworn statement of a witness testifying to the following events. On April 4, 1997, the car involved in the accident was traveling north in the easternmost lane of Route 9. The car abruptly made a left turn against a red light onto Washington Street (Route 66) by crossing three lanes of northbound traffic and three lanes southbound traffic. A car traveling north on deKoven Drive with a green light collided with the car driven by vehicle causing it to roll over two times. (Statement of John Heft dated April 4, 1997.) A different witness, traveling Route 9 on the southbound side with the green light, corroborated the statement of Mr. Heft that Yohan crossed against the light and oncoming traffic. (Statement of Debbie Simon dated April 4, 1997.) Moreover, the driver of the car that collided with the Yohan vehicle also stated that Yohan turned against a red light. (Deposition of Andrew Luangkhot, p. 23.) Issues of negligence are not generally resolved on a motion for summary judgment; Fogarty v. Rashaw, 193 Conn. 442, 446, 476 A.2d 582 (1984); where, however, "there [are] no contradictory affidavits, the court properly [decides] the motion [for summary judgment] by looking only to the sufficiency of the [movant's] affidavits and other proof. Heyman Associates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756, 795, 653 A.2d 122 (1995).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00582-KAJ   Document 6-2   Filed 08/10/2005   Page 10 of 12

Not Reported in A.2d                                                                                               Page 2
2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690
(Cite as: 2001 WL 56474 (Conn.Super.))

"Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles ..." (Internal quotation marks omitted.) *Gore v. Peoples Savings Bank,* 235 Conn. 360, 376, 665 A.2d 1341 (1995). The violation of a statute constitutes negligence per se where (1) the plaintiff is "within the class of persons protected by the statute," and (2) "the injury suffered is of the type that the statute was intended to prevent." *Id.,* 368- 69, 665 A.2d 1341. The court finds that the plaintiff's affidavits and other proof indicate that the plaintiff's injuries were caused by Yohan's negligent operation of the motor vehicle in violation of General Statutes § 14- 299(b)(3). [FN1] Proof of a violation of § 14-299(b)(3) constitutes negligence per se. *Paige v. Romans,* Superior Court, judicial district of New Haven at New Haven, Docket No. 416280 (March 29, 1999) (*Devlin J.*). Accordingly, it is decided that the motion for interlocutory summary judgment as to Bishop's liability, as administrator of the estate of Yohan, should be granted.

> FN1. General Statutes § 14-299(b)(3) provides in pertinent part that: "Vehicular traffic facing a steady red signal alone shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and remain standing until the next indication is shown ..."

III. *Motion for Interlocutory Summary Judgment as to Defendant Galland*

*2 The plaintiff also seeks interlocutory summary judgment on the second count of the complaint seeking to hold George Galland vicariously liable for her injuries. Specifically, the plaintiff argues that she is entitled to judgment as a matter of law and that there are no genuine issues of material fact with respect to the agency relationship between Galland and the decedent Yohan. Alternatively, the plaintiff argues that there is no genuine issue of material fact regarding the applicability of the family car doctrine to the present circumstances.

A. *The Agency Relationship Between Galland and Decedent Yohan.*

The plaintiff advances two arguments supporting her contention that the decedent Yohan was the agent of Galland. First, the plaintiff seeks to avail herself of the evidentiary presumption set forth in General Statutes § 52- 183. [FN2] *Lockwood v. Gorski,* Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 133909 (May 6, 1994) (*Mottolese, J.*) The plaintiff also claims that as Galland's agent, when she permitted Yohan to operate the motor vehicle, he became her subagent. The plaintiff argues that the principal is vicariously liable for the acts of his agents and subagents. Galland argues that the existence of an agency relationship is a question of fact and thus the motion for summary judgment must be denied.

> FN2. General Statutes § 52-183 provides: "In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of the motor vehicle, the operator, if he is other than the owner of the motor vehicle, shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment. The defendant shall have the burden of rebutting the presumption."

The existence of agency is ordinarily a question of fact but if the material facts are uncontested the agency relationship becomes a question of law. *Hallas v. Boehmke & Dobosz, Inc.,* 239 Conn. 658, 674, 686 A.2d 491 (1997); *Russo v. McAviney,* 96 Conn. 21, 24, 112 A. 657 (1921). "[T]he three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. *Restatement (Second), 1 Agency § 1, comment b (1958).*" (Citations omitted., internal quotation marks omitted.) *Hallas v. Boehmke and Dobosz, Inc., supra,* 239 Conn. 673.

Galland, in his responses to the plaintiff's requests for admission, admitted the following facts with respect to the agency relationship. Galland admitted that he was the owner of the motor vehicle driven by Yohan at the time of the accident. (Defendant Galland's Responses to the Plaintiff's Requests for Admission, Request 1.) Galland admitted that on April 4, 1997 and prior thereto, the decedent Yohan had his permission and authority to operate the motor vehicle in question and to do so for the benefit and convenience of the plaintiff. (Defendant Galland's Responses to the Plaintiff's Requests for Admission, Requests 5, 7, 8 and 9.) Galland also admitted that on April 4, 1997 and prior thereto, he did not place any restrictions on the use of the motor vehicle by the decedent Yohan or the plaintiff. (Defendant Galland's Responses to the Plaintiff's Requests for Admission,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                               Page 3
2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690
**(Cite as: 2001 WL 56474 (Conn.Super.))**

Requests 10, 11, 12, 13 and 14. See also Deposition of Hilary Galland, p. 99-103.) Finally, Galland admitted that on April 4, 1997 and prior thereto, the plaintiff had his permission and authority to allow the decedent Yohan to operate the motor vehicle. (Defendant Galland's Responses to the Plaintiff's Requests for Admission, Request 14.) Galland submitted for review an affidavit that stated: "I did not give specific permission to Luke Yohan to drive the car the night that the accident occurred. I did know that Hilary had a boyfriend named Luke Yohan. I did know that she sometimes allowed her friends at college to drive her in the car. Hilary had our permission to allow such driving by her friends, including Luke Yohan." Affidavit of George F. Galland, Jr., ¶ 4.

Viewing the facts in the light most favorable to the defendant; Miles v. Foley, 253 Conn. 381, 386, 752 A.2d 503, (2000); the court finds that there is no genuine issue of material fact as to the existence of an agency relationship between the decedent Yohan and Galland. The affidavit of Galland is insufficient to create a genuine issue of material fact with respect to the question of agency. Galland admitted that the decedent Yohan had his permission and authority to operate the motor vehicle in question and to do so for the benefit and convenience of the plaintiff. (Defendant Galland's Responses to the Plaintiff's Requests for Admission, Requests 5, 7. 8 and 9.) Galland's affidavit does not contradict the admitted authority that Yohan possessed to operate the motor vehicle. In light of Yohan's general authority to operate the motor vehicle and acknowledge previous course of conduct, the fact that Galland did not give Yohan specific permission on the night of the accident is insufficient to create a genuine issue of material fact with respect to the question of agency.

B. *The Applicability of the Family Car Doctrine.*
*3 Moreover, the court may hold Galland vicariously liable for the plaintiff's injuries pursuant to the family car doctrine. "When a member of a family maintains a car for the pleasure, use and convenience of the family, and its purposes, he or she makes such pleasure and use a personal concern, thereby making those family members who use or enjoy the car his or her agents, as if they were pursuing the affairs of the owner. Dibble v. Wolff 135 Conn. 428, 434, 65 A.2d 479 (1949)." Cook v. Nye, 9 Conn.App. 221, 225, 518 A.2d 77 (1986).

The defendant relies on Koops v. Gregg, 130 Conn. 185, 32 A.2d 653 (1943) to oppose the motion for interlocutory summary judgment. In Koops, Donald Gregg, a student at Yale, loaned a motor vehicle, owned by Alice Gregg and living in New Jersey, to a fellow student named Tweedy to attend a party. Donald Gregg did not attend the party. There was testimony that Donald Gregg loaned the car out on other occasions; that Alice Gregg had no knowledge of Tweedy's use; and that Tweedy was not on an errand for Alice Gregg. The court stated that "[i]t would not be enough to establish Mrs. Gregg's liability that she left the use of the car while it was in New Haven to the discretion of her son and knew that he at times loaned it to others; or even that she might be pleased to have him do so because it might give him a better standing among his fellow students; the law does not, in determining agency, take account of indefinite considerations and possible motive of such a nature." Id., 191- 92, 32 A.2d 653. The *Koops* decision is not of particular value in analyzing the facts of the present case. The driver in *Koops* borrowed the car for his own purpose, to attend a party. Yohan, in the present case, was returning from a trip to the library at Connecticut College where the plaintiff needed to obtain a book for her senior thesis. The drive to Connecticut College was prompted by the specific purpose for which the car was provided to the plaintiff by Galland.

In Dibble v. Wolf, supra, 135 Conn. 428, 65 A.2d 479, however, the Connecticut Supreme Court upheld a judgment rendered by the trial court in favor of the plaintiff under the family car doctrine where the owner of the motor vehicle was held vicariously liable for an accident caused by his daughter driving her invalid mother. Vicarious liability was imposed under the family car doctrine even though the adult daughter, who was operating the motor vehicle, was married and maintained a separate household. The court held that because the defendant's wife could not drive herself "in giving her authority to use the car, as he did, the defendant necessarily included the power in her to get someone to drive it for her when she wanted to use it." Id., 434, 65 A.2d 479. "[N]ot only was the car being used for the very purpose intended by the defendant, that of serving the pleasure and convenience of his wife ... but it was being driven for her by their daughter under his wife's immediate direction and with his approval and consent. Under the familiar legal maxim 'qui facit per alium facit per se,' the daughter's act became that of the mother and this rendered the family car doctrine operative to charge the defendant with liability." Id. 435, 65 A.2d 479.

*4 Similarly, Galland admitted providing the motor vehicle as a family vehicle for the pleasure and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690
**(Cite as: 2001 WL 56474 (Conn.Super.))**

Page 4

convenience of the plaintiff. Defendant Galland's Responses to the Plaintiff's Requests for Admission, Request 3. The decedent Yohan was operating the car with the knowledge and authority of Galland. There were no restrictions on either the plaintiff's or Yohan's use of the motor vehicle. In fact, Yohan was operating the vehicle for the benefit and convenience of the plaintiff under the plaintiff's direction. Galland's lone affidavit does not contradict or create a genuine issue of material fact regarding the applicability of the family car doctrine. Under the facts of the present case, the court finds that there are no issues of material fact with respect to the applicability of the family car doctrine.

### IV. *Conclusion*

The plaintiff's affidavits and other proof indicate that the decedent Yohan negligently operated the motor vehicle and the defendant Bishop did not oppose summary judgment or submit any evidence, and, therefore, failed to raise a genuine issue of material fact. The plaintiff is therefore entitled to judgment as a matter of law. Accordingly, the motion for interlocutory summary judgment on the first count of the complaint alleging Bishop's liability for negligence is granted.

The defendant Galland has not produced evidence sufficient to raise a genuine issue of material fact with respect to the existence of an agency relationship between Galland and the decedent Yohan. Moreover, there is no genuine issue of material fact as to Galland's vicarious liability pursuant to the family car doctrine. Accordingly, the motion for interlocutory summary judgment on the second count directed at Galland is granted.

It is so ordered.

2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.