# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | ) Chapter 11 |
| | ) |
| Olympus Healthcare Group, Inc., *et al.*, | ) Case Nos. 01-1849-1851 (WSS) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| KATHARINE B. SACKS, AS RECEIVER OF FIVE FACILITIES FORMERLY OWNED AND OPERATED BY PEGASUS MANAGEMENT, INC., | ) |
| | ) |
| | ) C.A. Nos. 05-581, 05-582 (KAJ) |
| | ) |
| | ) |
| | ) |
| Appellant, | ) |
| v. | ) |
| | ) |
| CRAIG JALBERT, LIQUIDATING SUPERVISOR FOR OLYMPUS HEALTHCARE GROUP, INC. ET. AL., US NURSING CORPORATION, | ) |
| | ) |
| | ) |
| Appellees. | |

## OPENING BRIEF OF APPELLANT, KATHARINE B. SACKS, AS THE STATE OF CONNECTICUT'S NURSING HOME RECEIVER FOR FIVE FACILITIES FORMERLY OWNED AND OPERATED BY PEGASUS MANAGEMENT COMPANY, INC.

Mark W. Eckard, Esquire
DE Bar No. 4542
REED SMITH LLP
1201 N. Market Street
Suite 1500
Wilmington, Delaware 19801
Phone:  (302) 778-7518
Fax:  (302) 778-7575
Email:  MEckard@ReedSmith.com

Counsel for Appellant

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS...... 1

II.   SUMMARY OF ARGUMENT ............................................................... 2

III.  STATEMENT OF FACTS AND PROCEDURAL HISTORY............................ 3

    A.    The Nursing Home Receivership................................................. 3

    B.    The Adversary Proceeding........................................................ 6

    C.    The Liquidating Supervisor Failed to Properly Serve Process on Ms. Sacks as the State of Connecticut's Nursing Home Receiver for the Five Facilities....................................................................................... 7

    D.    The $234,000 Default Judgment................................................ 7

    E.    The Pre-Arranged Settlement Between U.S. Nursing and the Liquidating Supervisor to Share the $234,000. ............................................... 8

    F.    The Motion to Vacate Default Judgment..................................... 8

    G.    The Settlement Objection. ........................................................ 9

    H.    The Default Judgment Order and the Settlement Order. ............... 9

    I.    The Appeals and the Stay Pending Appeal................................. 10

IV.   ARGUMENT ............................................................................... 11

    A.    The Bankruptcy Court erred as a matter of law in not finding that, as the State of Connecticut's Nursing Home Receiver for the Five Facilities, Ms. Sacks is an Agent of the State of Connecticut.......................... 13

        1.    The Bankruptcy Court's Finding that Ms. Sacks Was Not An Agent of the State of Connecticut Was a Legal Finding and Is Subject to *De Novo* Review in This Court.................................... 14

        2.    The Bankruptcy Court Incorrectly Found that Ms. Sacks is not an Agent of the State of Connecticut. .......................................... 16

    B.    The Bankruptcy Court Erred As a Matter of Law in Its Interpretation of Conn. Gen. Stat. § 52-64; As An Agent of the State of Connecticut, Ms. Sacks Must Be Served According to Fed.R.Bankr.P. 7004(b)(6) and Conn. Gen. Stat. § 52-64, which Requires Service Upon the Attorney General of the State of Connecticut. ......................................... 18

        1.    The Weight of Connecticut Authority Correctly Holds that Conn. Gen. Stat. § 52-64 is a Mandatory Provision; Service Upon an Agent of the State Must be Effected Through the Attorney General of the State of Connecticut............................................ 20

        2.    Connecticut's Rules of Statutory Interpretation Demonstrate that Conn. Gen. Stat. § 52-64 is a Mandatory Provision; Service Upon an Agent of the State Must be Effected Through the Attorney General of the State of Connecticut. ............................................ 24

V.    CONCLUSION................................................................................. 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Boughner v. Sec. of Health, Education and Welfare*, 572 F.2d 976 ...................................................2
*Brunswick Leasing Corp. v. Wisconsin Central, Ltd.*, 136 F.3d 521 ..............................................15
*In re City of Philadelphia Litigation*, 123 F.R.D. 515 ....................................................................15
*Fackelman v. Bell*, 564 F.2d 734 .......................................................................................................13
*Frof, Inc. v. Harris*, 695 F.Supp. 827 ...............................................................................................13
*Gold Kist v. Laurinburg Oil Co.*, 756 F.2d 14 .................................................................................12
*Gottlieb v. Sandia American Corp.*, 452 F.2d 510 (3d Cir. 1971), cert. denied, 404
U.S. 938 ..............................................................................................................................................12
*Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476 ...................................12
*Green v. Humphrey Elevator and Truc Co.*, 816 F.2d 877 ...............................................................12
*Heleasco Seventeen, Inc. v. Drake*, 102 F.R.D. 909 ........................................................................12
*In re Olympus Healthcare Group, Inc.*, 328 B.R. at 97 ....................................................................12
*In re Moreck*, 34 B.R. 119 ................................................................................................................19
*Page v. Schweiker*, 786 F.2d 150 .......................................................................................................2
*Pennoyer v. Neff*, 95 U.S. at 725-27 ............................................................................................30, 32
*Pierce v. Underwood*, 487 U.S. 552 ...................................................................................................2
*Spruill v. Gillis*, 372 F.3d 218 ...........................................................................................................2
*Stokes v. District Attorney*, 247 F.3d 539 .........................................................................................2
*U.S. v. Lane Laboratoriess-USA Inc.*, 427 F.3d 219 .........................................................................5
*In re Venegas*, 257 B.R. 41 ...............................................................................................................19
*Witherow v. The Fireston Tire & Rubber Co.*, 530 F.2d 160 ...........................................................12
*Zawadski De Bueno v. Bueno Castro*, 822 F.2d 416 .......................................................................13

## STATE CASES

*Committee on Unman Rights and Opportunities v. Truelove and MacLean, Inc.*,
680 A.2d 1261.....................................................................................................................................28
*Daily v. DelPonte*, 624 A.2d 876 ......................................................................................................26
*Derwin v. State Employees Retirement Committee*, 661 A.2d 1025.................................................26
*Hallas v. Boehmke & Dobosz, Inc.*, 686 A.2d 491 ..........................................................................15
*Hallas v. Boehmke and Dobosz, Inc.*, 686 A.2d at 499....................................................................18
*Howard v. Dallas Morning News, Inc.*, 918 S.W.2d 178 .................................................................15
*Lostritto v. Community Action Agency of New Haven, Inc.*, 848 A.2d 418...................................25
*Lostritto v. Community Action Agency of new Haven, Inc.*, 848 A.2d at 424
(quoting Williams v. Comm. on Human Rights and Opportunities, 777 A.2d 645,
661.......................................................................................................................................................30
*Lostritto v. Community Action Agency of new Haven, Inc.*, 848 A.2d at 424 ...............................27
*Lostritto v. Community Action Agency of New Haven, Inc.*, 848 A.2d at 424-25 ..................27, 28
*Manes v. Coats*, 941 P.2d 120...........................................................................................................15
*McDermott v. Calvary Baptist Church*, 819 A.2d 795 ....................................................................16
*McDermott v. Calvary Baptist Church*, 819 A.2d at 799 .................................................................17
*Miller v. Spicer*, 602 A.2d 65 (Del. 1991) .......................................................................................28
*Mitchell v. Ford Motor Credit Co.*, 688 P. 42 .................................................................................15
*Olsen v. Vail Associates Real Estate, Inc.*, 935 P.2d 975 ................................................................15

*Paige v. Town Plan & Zoning Committee*, 668 A.2d 340 ...........................................................26
*Russo v. McAviney*, 112 A. 657 .................................................................................................15
*Schwartz v. Brownlee*, 482 S.E.2d 827 ......................................................................................15
*Simko v. Zoning Board of Appeals of the Town of Fairfield*, 538 A.2d 202.................................24
*Town of Wallingford v. Werbiski*, 877 A.2d 749 .........................................................................29

## FEDERAL STATUTES

11 U.S.C. §§ 547...........................................................................................................................6
28 U.S.C. § 158............................................................................................................................1
Fed.R.Civ.P. 42............................................................................................................................1
Fed.R.Civ.P. 60(b).................................................................................................................2, 9, 31
The Bankruptcy Court Erred As A Matter Of Law In Deciding Not To Vacate
The Default Judgment Pursuant To Fed.R.Civ.P. 60(B) ..............................................................2

## STATE STATUTES

<u>Compare</u> Conn. Gen. Stat. §§ 19a-543 ........................................................................................4
Conn. Gen. Stat. § 1-21i...........................................................................................................27
Conn. Gen. Stat. § 4-160...........................................................................................21, 26, 27, 28
Conn. Gen. Stat. §§ 19a-542 ......................................................................................................3
Conn. Gen. Stat. §§ 19a-543 ......................................................................................................4
Conn. Gen. Stat. §§ 33-897........................................................................................................4
Conn. Gen. Stat. § 52-102b....................................................................................................27, 28
Conn. Gen. Stat. § 52-572h....................................................................................................27, 28
Conn. Gen. Stat. § 52-592.........................................................................................................24
Conn. Gen. Stat. § 52-64........................................................................................................*Passim*
<u>Lostritto</u>, Conn. Gen. Stat. § 52-102b....................................................................................27
Ms. Sacks, Conn. Gen. Stat. § 52-64 ......................................................................................20
<u>Compare</u> Conn. Gen. Stat. § 52-64 ......................................................................................27, 28

## MISCELLANEOUS

10 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 2681 at 402 ...................................13
<u>In re Artesian Industries, Inc.</u>, 1994..........................................................................................19

# I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Katharine B. Sacks ("Ms. Sacks"), as the State of Connecticut's Nursing Home Receiver (as defined herein) for five facilities formerly owned and operated by Pegasus Management Company, Inc. (the "Five Facilities") appeals two orders of the Bankruptcy Court.[1]  The first order appealed is the Memorandum and Order Denying Motion of Defendant for an Order Setting Aside the Default and Default Judgment (the "Default Judgment Order") issued by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  The second order appealed herein by Ms. Sacks is the Bankruptcy Court's Order Authorizing and Approving Settlement Agreement (the "Settlement Order"), whereby the Bankruptcy Court authorized the release of the $234,000 at issue in the adversary proceeding that underlies these appeals.

A procedural history of these proceedings is included within the Statement of Facts (below).  The facts of this matter are not in dispute.  The questions before this Court are purely legal.

This Court has jurisdiction over these appeals pursuant to 28 U.S.C. § 158.

---

[1]     Ms. Sacks has filed a Motion to Consolidate Appeals pursuant to Fed.R.Civ.P. 42. Ms. Sacks' appeal of the Settlement Order is wholly dependent upon Ms. Sacks' appeal of the Default Judgment Order.

## II.   SUMMARY OF ARGUMENT AND STANDARDS OF REVIEW

1.   The Bankruptcy Court Erred As A Matter Of Law In Deciding Not To Vacate The Default Judgment Pursuant To Fed.R.Civ.P. 60(B)(4); The Default Judgment Is Void Because The Bankruptcy Court Lacked The Requisite *In Personam* Jurisdiction Over Ms. Sacks To Enter The Default Judgment.

> **STANDARD OF REVIEW:  Plenary.**  "Unlike the grant or denial of other motions under Rule 60(b), which may be reversed only for an abuse of discretion, determination sunder 60(b)(4) are subject to plenary review." Page v. Schweiker, 786 F.2d 150, 152 (3d Cir. 1986) (citing Boughner v. Sec. of Health, Education and Welfare, 572 F.2d 976, 977 (3d Cir. 1978)).

A.   The Bankruptcy Court erred as a matter of law in not finding that, as the State of Connecticut's Nursing Home Receiver for the Five Facilities, Ms. Sacks is an Agent of the State of Connecticut.

> **STANDARD OF REVIW:  *De novo*.**  As further demonstrated below, "[t]he existence of agency is ordinarily a question of fact but if the material facts are uncontested the agency relationship becomes a question of law." Galland v. Bishop, 2001 WL 56474 at *2 (Conn. Super. Ct. 2001).  Questions of law are subject to *de novo* review on appeal. U.S. v. Lane Labs-USA Inc., 427 F.3d 219, 223 (3d Cir. 2005) (citing Pierce v. Underwood, 487 U.S. 552, 558 (1988)).

B.   The Bankruptcy Court Erred As a Matter of Law in Its Interpretation of Conn. Gen. Stat. § 52-64; As An Agent of the State of Connecticut, Ms. Sacks Must Be Served According to Fed.R.Bankr.P. 7004(b)(6) and Conn. Gen. Stat. § 52-64, which Requires Service Upon the Attorney General of the State of Connecticut.

> **STANDARD OF REVIEW:  Plenary.**  Questions of statutory interpretation are subject to plenary review on appeal. Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004) (citing Stokes v. Dist. Attorney, 247 F.3d 539, 540-41 (3d Cir.2001)).

2

### III.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

The issues concerning this appeal are purely legal.  Ms. Sacks does not dispute that the Liquidating Supervisor transmitted a copy of the Complaint and Summons (as defined herein) to her via U.S. Mail, nor does Ms. Sacks dispute the facts surrounding the entry of the Default Judgment (as defined below) against her in her capacity as the Nursing Home Receiver (as defined below) for the Five Facilities.

On May 25, 2001 (the "Petition Date"), Pegasus Management Company, Inc. ("Pegasus") and, *inter alia*, Olympus Healthcare Group, Inc. ("Olympus") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code").  Olympus and Pegasus were operated under common management and control.  Olympus was the corporate parent and owner of Pegasus.  As of the Petition Date, Pegasus operated six skilled nursing facilities in the State of Connecticut.  Pegasus was a Massachusetts corporation and was registered as a foreign corporation in Connecticut.  Pegasus has not filed its required annual reports in either state since 2001 and has no officers or directors.

### A.    The Nursing Home Receivership.

On October 19, 2001 (the "Transfer Date"), the United States Court for the District of Delaware ordered that the chapter 11 case of Pegasus be dismissed so that its facilities and operations could be turned over to and become the responsibility of the State of Connecticut.  Also on the Transfer Date, pursuant to Conn. Gen. Stat. §§ 19a-542(3) and 542(c), the Superior Court of the Judicial District of Hartford, Connecticut ordered that Ms. Sacks "is appointed receiver of said facilities operated and owned by Pegasus management Company, Inc."  See Order of the Appointment of Receiver,

3

attached as "Exhibit A" to the Memorandum of Law in Support of the Motion to Vacate Default Judgment (Bankr. Adv. D.I. No. 38). The "said facilities" for which Ms. Sacks was appointed the State of Connecticut's nursing home receiver (a "Nursing Home Receiver") were/are all located within the territorial jurisdiction of the State of Connecticut.

As stated above, Ms. Sacks was appointed as Nursing Home Receiver for the Five Facilities pursuant to Conn. Gen. Stat. §§ 19a-543(3) and 542(a). Conn. Gen. Stat. § 19a-543(3) provides for the imposition of a receiver on a nursing home facility (a "Nursing Home Receivership") upon a finding that "such facility has sustained a serious financial loss or failure which jeopardizes the health, safety and welfare of the patients or there is a reasonable likelihood of such loss or failure." See Conn. Gen. Stat. § 19a-543(3). Conn. Gen. Stat. § 19a-542(a) provides the process for application for an appointment of a Nursing Home Receiver.

As the State of Connecticut's Nursing Home Receiver for the Five Facilities, Ms. Sacks' duties for the Five Facilities are very different than those ascribed to a traditional corporate receiver. Indeed, Ms. Sacks was appointed pursuant to statutes specifically providing for the appointment of a Nursing Home Receiver, which are wholly separate and distinct from Connecticut statutes providing for the imposition of a corporate receiver. Compare Conn. Gen. Stat. §§ 19a-543(3) and 542(a) (providing for appointment of a Nursing Home Receiver) with Conn. Gen. Stat. §§ 33-897 and 898 (providing for imposition of a corporate receiver).

As the Nursing Home Receiver for the Five Facilities, Ms. Sacks was, first and foremost, responsible for the health and welfare of the 681 residents residing therein.

4

From the time of her appointment, Ms. Sacks faced almost insurmountable challenges in the execution of her duties as Nursing Home Receiver. Retention of the nursing staff was primary among such challenges. The relatively few nurses that remained after the Transfer Date were highly stressed by the extra burdens they were carrying due to the absence of their former coworkers. Ms. Sacks was forced to use a large number of "pool nurses" to satisfy the staffing needs of the Five Facilities. Regular nurses frequently declined to cover additional shifts, choosing instead to moonlight at other jobs for higher compensation.

The Five Facilities were plagued by the exhaustion of poorly maintained buildings and equipment. Roofs leaked and were replaced, elevators failed, foundations leaked, kitchens flooded, boilers were replaced, hot water boosters required extensive maintenance, and laundry machines, dishwashers and refrigerators broke. One of the Five Facilities experienced a fire in a bathroom exhaust fan. Such physical plant problems were a danger to the Residents and were demoralizing to the staff.

Pursuant to the Order of Receivership, Ms. Sacks was ordered to make monthly reports to the State of Connecticut for the first six months of her Nursing Home Receivership and quarterly reports thereafter. Ms. Sacks' compensation was established by the State of Connecticut pursuant to the Order of Receivership and Ms. Sacks cannot be paid without the approval of the Connecticut Superior Court. From the beginning of her Nursing Home Receivership, Ms. Sacks took and continues to take direction in her duties from the Connecticut Superior Court, under the regular advice and consent of the Connecticut Department of Social Services, which finances the Nursing Home Receivership.

**B.     The Adversary Proceeding.**

The adversary action that forms the genesis of this appeal commenced when the Liquidating Supervisor-Appellee filed a complaint to avoid preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 (the "Complaint") against CAHCF Assistance Corporation ("CAHCF"). Through the Complaint, the Liquidating Supervisor sought to recover not less than $234,000. CAHCF subsequently disclaimed any right to the funds. On September 13, 2004, the Bankruptcy Court entered the Order (I) Directing Defendant to Deposit Funds with the Clerk of Court, (II) Directing the Clerk of the Court to Establish an Escrow Account, and (III) Providing for Dismissal of Defendant Upon Deposit of Funds (the "Interpleader Order") (Bankr. Adv. D.I. No. 24). In the Escrow Order, the Bankruptcy Court ordered CAHCF to deposit $234,000 in immediately available funds (the "Interpleader Funds") with the Clerk of the Bankruptcy Court on or before September 15, 2004. Upon transfer of the Interpleader Funds, the Court ordered that CAHCF be dismissed from the adversary action.

Also on September 13, 2004, the Bankruptcy Court entered the Order Directing Service of Complaint and Joining New Defendants (the "Service Order") (Bankr. Adv. D.I. No. 25), wherein the Court ordered that the Liquidating Supervisor serve a complaint and summons (the "Complaint and Summons") on and join "Pegasus" to the adversary action. The Service Order specifically provided that, "As to Pegasus, the [Liquidating Supervisor] shall effect formal service of process upon them." See Service Order. Under the Service Order, Pegasus and U.S. Nursing Corporation ("U.S. Nursing") are named as the "New Defendants" to the adversary proceeding.

**C.    The Liquidating Supervisor Failed to Properly Serve Process on Ms. Sacks as the State of Connecticut's Nursing Home Receiver for the Five Facilities.**

On October 12, 2004, counsel for the Liquidating Supervisor filed a Certificate of Service (Bankr. Adv. D.I. No. 26), certifying that on the same date, via U.S. Mail, service of the Complaint and Summons was made upon, *inter alia*, "Katharine B. Sacks, Receiver, Pegasus Management Company, Inc., Attorney at Law, LLC, 165 Bishop Street, New Haven, CT, 06511." <u>See</u> Certificate of Service. *Service of the Complaint and Summons was not effected upon the Attorney General for the State of Connecticut, nor was it left at the Attorney General's office.*

Ms. Sacks does not dispute that the Liquidating Supervisor transmitted the Complaint and Summons via U.S. Mail to her at the address listed above. Surrounding the time in which the Liquidating Supervisor transmitted a copy of the Complaint and Summons via U.S. Mail to Ms. Sacks, Ms. Sacks was in the process of closing an urgent and protracted sale of four nursing homes in an unrelated Nursing Home Receivership with problems much like those facing the Five Facilities. If service of the Complaint and Summons had been effective as to Ms. Sacks as the State of Connecticut's Nursing Home Receiver, Ms. Sacks would have been required to file an answer or other response to the Complaint by November 11, 2004.

**D.    The $234,000 Default Judgment.**

On January 14, 2005, the Clerk of the Bankruptcy Court entered a default against Pegasus pursuant to Rule 7055 of the Federal Rules of Bankruptcy Procedure ("<u>Fed.R.Bankr.P.</u>") (Bankr. Adv. D.I. No. 32). On February 8, 2005, the Liquidating Supervisor filed the Request by Plaintiff for Default Judgment Against Pegasus (Bankr. Adv. D.I. No. 33), seeking the entry of a default judgment against Pegasus and an order

that Pegasus has forfeited its right to the $234,000 at issue in the adversary proceeding. On February 14, 2005, the Bankruptcy Court entered a Judgment By Default (the "Default Judgment") pursuant to Fed.R.Bankr.P. 7055 (Bankr. Adv. D.I. No. 34). The Default Judgment orders that "Pegasus has no rights or claim to the funds at issue" in the instant action.

**E.      The Pre-Arranged Settlement Between U.S. Nursing and the Liquidating Supervisor to Share the $234,000.**

Two days after the entry of the Default Judgment against Ms. Sacks, the Liquidating Supervisor filed its Motion for Entry of an Order Authorizing and Approving Settlement Agreement (the "Settlement Motion") (Bankr. Adv. D.I. No. 36). In the Settlement Motion, the Liquidating Supervisor sought the Bankruptcy Court's authority to enter into a pre-arranged settlement with U.S. Nursing regarding the Interpleader Funds.

**F.      The Motion to Vacate Default Judgment.**

On February 22, 2005, Ms. Sacks filed her Motion for an Order Setting Aside Default and Default Judgment (the "Motion to Vacate Default Judgment") (Bankr. Adv. D.I. Nos. 38 and 39). In the Motion to Vacate Default Judgment, Ms. Sacks argued, *inter alia*, that the Default Judgment was void and should be set aside pursuant to Fed.R.Civ.P. 60(b)(4) because the Liquidating Supervisor failed to effect service upon Ms. Sacks of the Complaint and Summons. As an agent of the State of Connecticut, Ms. Sacks is entitled to service under Fed.R.Bankr.P. 7004(b)(6) and Conn. Gen. Stat. § 52-64, which provides directions for service on an agent of the State of Connecticut.

On March 11, 2005, Ms. Sacks filed a Request for Oral Argument regarding her Motion to Vacate Default Judgment. (Bankr. Adv. D.I. No. 44). The Bankruptcy Court

would eventually rule on the Motion to Vacate Default Judgment without allowing oral argument.

**G.    The Settlement Objection.**

On March 17, 2005, Ms. Sacks filed her Objection to the Settlement Motion (the "Settlement Objection") in order to preserve her right (as Nursing Home Receiver for the Five Facilities) to the Interpleader Funds.  The Settlement Motion sought approval of a process that did not provide the State of Connecticut, via Ms. Sacks as Nursing Home Receiver for the Five Facilities, to assert the claim of the Five Facilities to the Interpleader Funds.

**H.    The Default Judgment Order and the Settlement Order.**

On June 23, 2005, without oral argument and after submission of subsequent papers related to Ms. Sacks' Motion to Vacate Default Judgment and Settlement Objection, the Bankruptcy Court entered its Memorandum and Order Denying [the Motion to Vacate Default Judgment] (the "Default Judgment Order") (Bankr. Adv. D.I. No. 51).  In the Default Judgment Order, the Bankruptcy Court denied Ms. Sacks' Motion to Vacate Default Judgment on two bases pertinent to this appeal.  First, the Bankruptcy Court stated,

> Ms. Sacks has not presented sufficient evidence to persuade
> [the Bankruptcy Court] that Ms. Sacks, in her capacity as
> Receiver of the Facilities of Pegasus Management, Inc., is
> an agent of the [State of Connecticut] and that therefore,
> service was required to be made pursuant to Connecticut
> law.  Ms. Sacks has failed to produce any credible evidence
> to support such a finding, and therefore, this Court declines
> to make such a finding.  At most, she has merely shown
> that she is the receiver appointed by the Superior Court of
> Connecticut for the five facilities.

In re Olympus Healthcare Group, Inc., 328 B.R. at 97. The second basis for the Default

Judgment Order that is pertinent to this appeal was stated as follows:

> This Court finds that service by first class mail upon [Ms.
> Sacks] was sufficient and proper under Bankruptcy Rule
> 7004, and that this Court therefore obtained jurisdiction
> over [Ms. Sacks]. Ms. Sacks' contention that the Default
> and Default Judgment must be set aside pursuant to Rule
> 60(b)(4) because it is void is therefore without merit.

Id. at 98. On June 30, 2005, the Bankruptcy Court entered its Order Authorizing and

Approving Settlement Agreement (the "Settlement Order"), thereby authorizing the

release of the Interpleader Funds according to the pre-arranged settlement between U.S.

Nursing and the Liquidating Supervisor.

## I.    The Appeals and the Stay Pending Appeal.

Ms. Sacks timely filed notices of appeal regarding the Default Judgment Order

and the Settlement Order. Subsequent to filing her notices of appeal, Ms. Sacks filed a

Motion for Stay Pending Appeal with the Bankruptcy Court. On August 16, 2005, after

submission of subsequent papers related to Ms. Sacks' Motion for Stay Pending Appeal,

the Bankruptcy Court entered its Order granting Ms. Sacks' Motion for Stay Pending

Appeal (Bankr. Adv. D.I. No. 71).

Following the docketing of this appeal, the parties submitted to mediation in

accordance with this Court's Standing Order Regarding Procedures To Govern Mediation

Of Appeals From The United States Bankruptcy Court For This District (issued July 26,

2004). On October 21, 2005, the parties participated in a mediation. Resolution of the

appeal was not achieved through mediation.

Ms. Sacks herein sets forth two grounds on which the Bankruptcy Court erred in

its decision to uphold the Default Judgment: (1) as the State of Connecticut's Nursing

Home Receiver for the Five Facilities, Ms. Sacks is an agent of the State of Connecticut

and (2) as an agent of the State of Connecticut, service on Ms. Sacks must be effected by

service upon the Attorney General. Because the Liquidating Supervisor did not serve the

Complaint and Summons on Ms. Sacks via service on the Attorney General of the State

of Connecticut, the Default Judgment is void and must be vacated.

## IV.    ARGUMENT

**The Bankruptcy Court erred as a matter of law in deciding not to vacate the Default
Judgment pursuant to Fed.R.Civ.P. 60(b)(4); the Default Judgment is void because
the Bankruptcy Court lacked the requisite *in personam* jurisdiction over Ms. Sacks
to enter the Default Judgment.**

"A default judgment entered when there has been no proper service of the

complaint is, *a fortiori*, void, and shall be set aside." Gold Kist v. Laurinburg Oil Co.,

756 F.2d 14, 19 (3d Cir. 1985). A court lacks the personal jurisdiction necessary to bind

a defendant to a default judgment where service was not properly effected. Sun

Healthcare Group, Inc. v. Mead Johnson Nutritional (In re Sun Healthcare Group, Inc.),

2004 WL 941190, *2 (Bankr. D. Del. 2004); see also O'Donnell v. Shalayev, 2004 WL

2958698, *7 (D.N.J. 2004) ("Because service was improper, the Court lacked personal

jurisdiction over [the defendant]. And, as noted above, a default judgment rendered by a

court which lacked personal jurisdiction over the defendant is void.") (citing Pennoyer v.

Neff, 95 U.S. 714, 725-27 (1877)).

It is well-settled in the Third Circuit that a federal court lacks jurisdiction over an

improperly served defendant – even where the defendant was given actual knowledge of

the lawsuit. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476,

492 (3d Cir. 1993) ("notice cannot by itself validate an otherwise defective service");

Green v. Humphrey Elevator and Truc Co., 816 F.2d 877, 881-883 (3d Cir. 1987) (even

where defendant has actual notice, where receipt of service is not verified by return acknowledgment, service must be completed by personal service upon the defendant); Witherow v. The Fireston Tire & Rubber Co., 530 F.2d 160, 166 (3d Cir. 1976) (the "controlling point" regarding service of process is not actual notice, but "whether service was achieved under the substantive law of both agency and service of process"); Gottlieb v. Sandia American Corp., 452 F.2d 510, 513 (3d Cir. 1971) (service upon corporation not properly effected despite actual service on corporation's controlling stockholder and co-defendan), cert. denied, 404 U.S. 938 (1971).  A contrary rule would provide plaintiffs with no incentive to properly serve the summons and complaint as required by the Federal Rules of Civil Procedure.  In re City of Philadelphia Litigation, 123 F.R.D. 515, 519 (E.D.Pa. 1988).

Default judgments are disfavored and, in a close case, doubts should be resolved in favor of setting aside default and reaching the merits.  Zawadski De Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987); see also Light and Sount Specialties, Inc. v. Vue-More Mfg. Co., 1990 WL 50568, * 3 (E.D. Pa. 1990) (citing "the strong policy concern of the courts of [the Third Circuit] favoring adjudication of clams on their merits, rather than on procedural points"); Acceptance Ins. Co. v. SDC, Inc., 1995 WL 53429, *1 (E.D.Pa. 1995) ("Our Court of Appeals has enunciated a strong policy encouraging decisions on the merits of cases and disfavoring default judgments."); 10 Wright, Miller & Kane, Federal Practice and Procedure § 2681 at 402 (1983) (the use of default judgment must be balanced against the strong judicial policy favoring trial on the merits). "The policy against default judgments is particularly strong in cases such as this, where the amount of the default judgment is significant." Dick Corp. v. W. Golden

12

Construction, Inc., 2003 WL 2309189, *3 n.3 (W.D.Pa. 2003) (citing Frof, Inc. v. Harris, 695 F.Supp. 827, 831 (E.D.Pa. 1988)).

"'A 60(b) motion to set aside judgment is to be construed liberally to do substantial justice.'" Albertson v. Winner Automotive, 2004 WL 2435290, * 1 (D. Del. 2004) (quoting Fackelman v. Bell, 564 F.2d 734, 735 (5th Cir. 1977)). As noted by Judge Latchum, "in passing upon default judgments Rule 60(b) should be 'given liberal construction . . . . *Any doubt* should be resolved in favor of petition to set aside the judgment so that the cases may be decided on their merits.'" Heleasco Seventeen, Inc. v. Drake, 102 F.R.D. 909, 915 (D. Del. 1984) (emphasis in original) (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (3d Cir. 1951)).

Ms. Sacks sets forth two errors of law committed by the Bankruptcy Court, both of which combined to result in the Bankruptcy Court's erroneous decision to not vacate the Default Judgment as void. As the State of Connecticut's Nursing Home Receiver for the Five Facilities, Ms. Sacks is an agent of the State of Connecticut. As an agent of the State of Connecticut, Ms. Sacks must be served via service on the Attorney General of the State of Connecticut.

**A.      The Bankruptcy Court erred as a matter of law in not finding that, as the State of Connecticut's Nursing Home Receiver for the Five Facilities, Ms. Sacks is an Agent of the State of Connecticut.**

The Bankruptcy Court erred as a matter of law in finding that Ms. Sacks is not an agent of the State of Connecticut. As a threshold matter, this section will first address this Court's standard of review of this finding and will next demonstrate the inaccuracy of the Bankruptcy Court's legal finding that Ms. Sacks is not an agent of the State of Connecticut.

**1.    The Bankruptcy Court's Finding that Ms. Sacks Was Not An Agent of the State of Connecticut Was a Legal Finding and Is Subject to *De Novo* Review in This Court.**

"The existence of agency is ordinarily a question of fact but if the material facts are uncontested the agency relationship becomes a question of law." Galland v. Bishop, 2001 WL 56474, *2 (Conn. Super. Ct. 2001) (citing Hallas v. Boehmke & Dobosz, Inc., 686 A.2d 491, 499 (Conn. 1997) and Russo v. McAviney, 112 A. 657, 659 (Conn. 1921)); see also Brunswick Leasing Corp. v. Wisconsin Central, Ltd., 136 F.3d 521, 526 (7th Cir. 1998) (applying Illinois law and stating, "the existence of an agency relationship and its extent are questions of fact, but of course if the facts are undisputed the issues can be resolved as questions of law"); Schwartz v. Brownlee, 482 S.E.2d 827, 828 (Va. 1997) ("while there may have been a conflict in the *positions* taken by the parties with respect to the agency question, there was no conflict in the *facts* with respect to that question. When there is no substantial conflict in the facts and circumstances disclosed by the evidence, it becomes a question of law to be decided by the court whether one party was the agent of another.") (internal quotations and citation omitted); Manes v. Coats, 941 P.2d 120, 123 (Alaska 1997) ("A court may rule on the existence and scope of an agency relationship which arises from undisputed facts."); Olsen v. Vail Associates Real Estate, Inc., 935 P.2d 975, 980 (Colo. 1997) ("Where there is no conflict in the facts which are alleged to have created the agency, the question of the existence of an agency relationship is a question of law."); Howard v. Dallas Morning News, Inc., 918 S.W.2d 178, 185 (Ark. 1996) ("Although agency is a question of fact ordinarily determined by the trier of fact, where the facts are undisputed, and only one inference can reasonably be drawn from them, it becomes a question of law."); Mitchell v. Ford Motor Credit Co., 688 P. 42,

14

47 (Okla. 1984) ("Where facts relied upon to establish the existence of the agency are undisputed and no conflicting inferences may be drawn therefrom, the question of whether an agency exists is one of law for the court.").

An agency is "the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control and consent by the other so to act." McDermott v. Calvary Baptist Church, 819 A.2d 795, 799 (Conn. 2003) (citing Restatement (Second), 1 Agency § 1 (1958)). Therefore, the three elements required to prove the existence of an agency relationship include: "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." Id.; Hallas v. Boehmke and Dobosz, Inc., 686 A.2d 491, 499 (Conn. 1997) (citing Restatement (Second), 1 Agency § 1, comment b (1958) and collecting other Connecticut Supreme Court cases).

The Liquidating Supervisor and U.S. Nursing never challenged the State of Connecticut's public manifestation that Ms. Sacks would act on its behalf, as evidenced by the Order of the Appointment of Receiver entered by the Superior Court of Connecticut in Hartford on October 19, 2001 and attached to the Motion to Vacate Default Judgment. See Motion to Vacate Default Judgment at ¶ 10. The Liquidating Supervisor and U.S. Nursing never challenged Ms. Sacks' status as the State of Connecticut's Nursing Home Receiver for the Five Facilities, which confirms her acceptance of the nursing home receivership. And, the Liquidating Supervisor and U.S. Nursing never challenged that Ms. Sacks and the State of Connecticut operate under an understanding that the State of Connecticut ultimately is in control of Ms. Sacks'

15

undertaking as its nursing home receiver for the Five Facilities. <u>See</u> Motion to Vacate Default Judgment at ¶ 13 ("Further evidencing her role *as an agent of the State of Connecticut*, Ms. Sacks takes direction in her duties from the Connecticut Superior Court, under the advice and consent of the Connecticut Department of Social Services, which finances the receivership.") (emphasis added). These facts constitute a *prima facie* showing under Connecticut law that, as the State of Connecticut's nursing home receiver for the Five Facilities, Ms. Sacks is an agent of the State of Connecticut. <u>McDermott v. Calvary Baptist Church</u>, 819 A.2d at 799.

Because the Liquidating Supervisor and U.S. Nursing failed to dispute any of the facts relied upon by Ms. Sacks in support of her agency for the State of Connecticut, the Bankruptcy Court found *as a matter of law* that Ms. Sacks is not an agent of the State of Connecticut. <u>Galland v. Bishop</u>, 2001 WL 56474 at *2. The question of the existence of an agency between Ms. Sacks and the State of Connecticut is a question of law for this Court in the face of undisputed facts in support of Ms. Sacks' statement that she is an agent of the State of Connecticut. <u>Id.</u> As a purely legal finding, the Court's finding that Ms. Sacks is not an agent of the State of Connecticut is subject to *de novo* review in this Court.

### 2.    The Bankruptcy Court Incorrectly Found that Ms. Sacks is not an Agent of the State of Connecticut.

As stated above, the three elements required to prove the existence of an agency relationship include: "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." <u>McDermott v. Calvary Baptist Church</u>, 819 A.2d at 799 (<u>citing</u> Restatement (Second), 1 Agency § 1 (1958));

Hallas v. Boehmke and Dobosz, Inc., 686 A.2d at 499 (citing Restatement (Second), 1

Agency § 1, comment b (1958) and collecting other Connecticut Supreme Court cases).

Ms. Sacks set forth unchallenged facts in the Motion to Vacate Default Judgment

and related papers showing that she is an agent of the State of Connecticut.  The Order of

Receivership, in and of itself, should be a sufficient document to prove Ms. Sacks'

agency on behalf of the State of Connecticut.  Pursuant to the Order of Receivership, Ms.

Sacks was hired by the State of Connecticut as its Nursing Home Receiver, Ms. Sacks

accepted such an undertaking, and the Order of Receivership constitutes proof that Ms.

Sacks and the State of Connecticut both understood that the State of Connecticut was in

charge of the undertaking.  See Restatement (Second), 1 Agency § 1 (1958).  As was

stated in the Motion to Vacate Default Judgment at ¶ 13,

> Ms. Sacks was ordered to make monthly reports to the state
> for the first six months of the receivership, and quarterly
> reports thereafter.  Ms. Sacks' compensation was
> established by the [State of Connecticut] pursuant to the
> Order of Receivership and Ms. Sacks cannot be paid
> without the approval of the Connecticut Superior Court.
> *Further evidencing her role as an agent of the State of
> Connecticut*, Ms. Sacks takes direction in her duties from
> the Connecticut Superior Court, under the advice and
> consent of the Connecticut Department of Social Services,
> which finances the receivership.

See Motion to Vacate Default Judgment at ¶ 13.  Such unchallenged facts constituted

more than sufficient indicia of Ms. Sacks' agency for the State of Connecticut.

Moreover, the Bankruptcy Court ruled that Ms. Sacks did not present "sufficient

evidence" of her agency, yet the District Court did not allow oral argument, nor receive

*any* evidence beyond that represented in the Motion to Vacate Default Judgment and

papers related thereto.  The Bankruptcy Court erred as a matter of law in finding that Ms.

Sacks is not an agent of the State of Connecticut.

**B.**     **The Bankruptcy Court Erred As a Matter of Law in Its Interpretation of Conn. Gen. Stat. § 52-64; As An Agent of the State of Connecticut, Ms. Sacks Must Be Served According to Fed.R.Bankr.P. 7004(b)(6) and Conn. Gen. Stat. § 52-64, which Requires Service Upon the Attorney General of the State of Connecticut.**

As an agent of the State of Connecticut, Ms. Sacks must be served according to

Fed.R.Bankr.P. 7004(b)(6), which requires that "mail service on a 'state or municipal

corporation or other governmental organization thereof subject to suit' must be mailed to

the person or office designated under state law."  Speth v. Ute Mountain Farm and Ranch

Enterprise (In re Bennett Trading, Inc.), 2004 WL 2334316, *2 (Bankr. D. Kan. 2004)

(quoting Fed.R.Bankr.P. 7004(b)(6)); In re Venegas, 257 B.R. 41, 45 (Bankr. D. Idaho

2001) (insufficient service of process where sheriff was not served according to Idaho

law); Mason v. Star Bank Nat'l Assoc. (In re Artesian Industries, Inc.), 1994 WL 502024,

*4 (Bankr. N.D. Ohio 1994) (Fed.R.Bankr.P. 7004(b)(6) "defers to state law with respect

to who is served").

Legislative history demonstrates that litigants must strictly adhere to the

requirements of Fed.R.Bankr.P. 7004(b)(6).  In re Artesian Industries, Inc., 1994 WL

502024 at *4.  Rule 7004(b)(6) derives from former Bankruptcy Rule 704.  Former

Bankruptcy Rule 704(h) provided that minor errors in serving a summons and complaint

did not render service ineffective if no prejudice resulted from the defective service.  See

In re Moreck, 34 B.R. 119 (Bankr. M.D. Pa. 1983).  That language from Bankruptcy Rule

704(h) was struck from the modern Fed.R.Bankr.P. 7004.  Thus, "[m]ore recent cases

which apply Rule 7004 have required more strict adherence to the language of the rule."

In re Artesian Industries, Inc., 1994 WL 502024, *4 (citations omitted).

The Liquidating Supervisor sought to serve Ms. Sacks as the Nursing Home

Receiver for the Five Facilities, in her capacity as an agent of the State of Connecticut.

Thus, under Connecticut law, the Plaintiff was required to serve process upon Ms. Sacks

in accordance with Fed.R.Bankr.P. 7004(b)(6), which requires service according to Conn.

Gen. Stat. § 52-64.

Under Connecticut law, service of process directed against an agent of the State

must be served as provided by Conn. Gen. Stat. § 52-64. At the time the Liquidating

Supervisor attempted to effect service on Ms. Sacks, Conn. Gen. Stat. § 52-64 provided:

> Service of process in any civil action or proceeding maintainable
> against . . . the state or against any institution, board, commission,
> department or administrative tribunal thereof , or against any
> officer, servant, agent or employee of the state or of any such
> institution, board, commission, department or administrative
> tribunal, as such, may be made by leaving a true and attested copy
> of the process, including the declaration or complaint, with the
> Attorney General or at his office in Hartford.

Conn. Gen. Stat. § 52-64. Effective October 1, 2005, Conn. Gen. Stat. § 52-64 now reads

as follows:

> Service of process in any civil action or proceeding maintainable
> against . . . the state or against any institution, board, commission,
> department or administrative tribunal thereof , or against any
> officer, servant, agent or employee of the state or of any such
> institution, board, commission, department or administrative
> tribunal, as such, may be made by *a proper officer (1) leaving a*
> *true an attested copy of the process, including the declaration or*
> *complaint, with the Attorney General at the Attorney General's*
> *office in Hartford, or (2) sending a true and attested copy of the*
> *process, including the summons and complaint, by certified mail,*
> *return receipt requested, to the Attorney General at the Attorney*
> *General's office in Hartford.*

Conn. Gen. Stat. § 52-64 (Conn. Public Act 05-105, Substitute House Bill No. 6883

(Connecticut General Assembly – January Session, 2005).  Although Conn. Gen. Stat. §

52-64, still uses the seemingly permissive "may," the statute now further clarifies that the

"may" applies to a choice to serve the Attorney General either by (1) leaving process at

the Attorney General's office in Hartford or (2) sending process to the Attorney

General's office in Hartford.  See Conn. Gen. Stat. § 52-64 (effective October 1, 2005).

The choice now provided within Conn. Gen. Stat. § 52-64 is similar to the choice in the

former Conn. Gen. Stat. § 52-64 to leave process (1) with the Attorney General or (2) at

his office in Hartford.

Although Conn. Gen. Stat. states that the Attorney General "may" be served in a

civil action against the state, the statute fails to provide any alternative recipient for

service.  Conn. Gen. Stat. § 4-160 provides a process for the state to authorize suit against

itself.  Subsection (e) of that section provides, "Civil process directed against the state

*shall* be served as provided by section 52-64."  Conn. Gen. Stat. § 4-160(e).  Thus, where

there is no alternative to service on the Attorney General provided by Conn. Gen. Stat. §

52-64, and Conn. Gen. Stat. § 4-160(e) provides that service *shall* be served as provided

by Conn. Gen. Stat. § 52-64, it is clear that service in an action against the state must be

served on the Attorney General.

> **1.    The Weight of Connecticut Authority Correctly Holds that Conn.
> Gen. Stat. § 52-64 is a Mandatory Provision; Service Upon an Agent
> of the State Must be Effected Through the Attorney General of the
> State of Connecticut.**

Failure to serve the Attorney General with process in an action against an agent or

department of the State is sufficient cause for dismissal of the action, because without

proper service of process, the court lacks personal jurisdiction over the defendant.  See,

20

*e.g.*, <u>Gothberg v. Caliendo</u>, 2000 WL 966144, *1 n. 1 (Conn. Super. Ct. 2000) (citing Conn. Gen. Stat. § 52-64 and stating, "Service of civil process in any action against the state is to be made on the Attorney General."); <u>Gavigan v. Commissioner of Revenue Services</u>, 2002 WL 207587 (Conn. Super. Ct. 2002) (appeal dismissed where plaintiff filed summons and complaint with the clerk of court and mailed a copy of the complaint to the appropriate Commissioner, but failed to serve the Attorney General); <u>Langer v. Comm. on Human Rights and Opportunities</u>, 2000 WL 727014, *2 (Conn. Super. Ct. 2000) (appeal dismissed due to insufficiency of service of process where plaintiff failed to serve the Attorney General in action against the State).

Despite the Connecticut legislature's use of the word "may," Connecticut law requires strict adherence to Conn. Gen. Stat. § 52-64 as a mandatory provision. In <u>Gavigan v. Commissioner of Revenue Services</u>, the *pro se* plaintiff commenced the action by filing a summons and complaint with the clerk of the court. Following the clerk's directions, the *pro se* plaintiff did not effect service on the Attorney General, but rather mailed a copy to the Commissioner of Revenue Services. <u>Gavigan v. Commissioner of Revenue Services</u>, 2002 WL 207587 at *1. In <u>Gavigan</u>, despite (1) direct service on the state official that was arguably the most direct target for the complaint and summons, (2) the plaintiff's *pro se* status, and (3) explicit misdirection by the court clerk, the Connecticut Superior Court dismissed the plaintiff's appeal, citing the plaintiff's failure to strictly adhere to Conn. Gen. Stat. § 52-64 – which requires service on the Attorney General in an action against the State of Connecticut.

The same mandatory interpretation was applied by the court in <u>Marion v. Marion</u>, 1998 WL 351900, **4-5 (Conn. Super. Ct. 1998). In that case, the plaintiff effected

service of process directly on seven of the twenty-nine defendants by personal service at their place of abode or by certified mail. As judges of the Superior Court, all seven of these defendants were agents of the state. *Despite personal service at their place of abode or properly effected certified mail service*, the court found that "*service of process was insufficient as it was not served on the Attorney General as required by [Conn. Gen. Stat.] 52-64 for actions against state officials.*" Id. at *5 (emphasis added). See also Langer v. Commission on Human Rights and Opportunities, 2000 WL 727014, *2 (Conn. Super. Ct. 2000) (service of process on Commission was defective because, despite direct service of appeal papers on the Commission and filed with the clerk of the Superior Court, service was not effected on the Attorney General).

Research of Conn. Gen. Stat. § 52-64 reveals two earlier cases that rely on the word "may" in Conn. Gen. Stat. § 52-64 to interpret the statute as "directory rather than mandatory." See Cummings v. D'Oyen, 1995 WL 43771, *2 (Conn. Super. Ct. 1995); Paecht v. Kelly, 1995 WL 70339, *1 (Conn. Super. Ct. 1995). These courts held that Conn. Gen. Stat. § 52-64 merely provides an alternative method of service for state officials and departments. Id.; see also Zawadski De Bueno v. Bueno Castro, 822 F.2d at 420 (default judgments are disfavored in the Third Circuit – and in a close case, doubts should be resolved in favor of setting aside default and reaching the merits).

This minority line of reasoning is contradicted by the greater weight of the authority discussed above. A permissive interpretation of Conn. Gen. Stat. § 52-64 is "legally incorrect." Hollis v. State of Connecticut Judicial Branch, 1998 WL 811469, * 1 (Conn. Super. Ct. 1998). In that case, the plaintiff sued the Sate of Connecticut Judicial Branch and effected service upon the State's Manager of Labor Relations. The suit was

dismissed in the tribunal below for failure to make service of process upon the Attorney General.  Id. (citing Conn. Gen. Stat. § 52-64).  On appeal, the plaintiff attributed his failure to serve the Attorney General on the ambiguity caused by the use of the word "may" in Conn. Gen. Stat. § 52-64.  Id. ("Hollis asserts that the improper service in the original action stemmed from a reasonable, *although legally incorrect*, interpretation of [Conn. Gen. Stat.] § 52-64.") (emphasis added).  Despite the court's conclusion that service was "defective" because of the plaintiff's failure to serve the Attorney General, the court decided to allow the plaintiff to have his day in court, as allowed by a remedial statute permitting a plaintiff to commence a new action if an action has failed to be heard for various procedural reasons.  See Conn. Gen. Stat. § 52-592.  "The original service, although defective, was based on a reasonable interpretation of an ambiguous statute." Id. at *2.  Thus, an interpretation of Conn. Gen. Stat. § 52-64 as permissive rather than mandatory is "legally incorrect" albeit a reasonable mistake in light of the statute's ambiguity.

By enacting Conn. Gen. Stat. § 52-64, the Connecticut legislature intended to clearly designate the Attorney General as an agent for service of process in actions against the state.  Simko v. Zoning Board of Appeals of the Town of Fairfield, 538 A.2d 202, 204 (Conn. 1988).  Although the legislature's use of the word "may" seems ambiguous in light of the sole designation of the Attorney General as the agent for service of process in such actions, it nevertheless remains that Conn. Gen. Stat. § 52-64 is an example of the Connecticut legislature's ability to "clearly to designate agents for service of process when an agent for service of process is what it intended to create." Id. (citing, *inter alia*, Conn. Gen. Stat. § 52-64).

Given that the Connecticut legislature clearly designated an agent for service of process in Conn. Gen. Stat. § 52-64, the legally incorrect interpretation of the statute as permissive is perhaps attributable to the legislature's failure to provide any alternative to serving the Attorney General in that statute.  <u>See</u> Conn. Gen. Stat. § 52-64.  The statute, entitled "Service in action against the state," provides that service "may" be made upon the Attorney General, but fails to state any other person upon whom "[s]ervice in [an] action against the state" may be served.  <u>Id.</u>

> **2.    Connecticut's Rules of Statutory Interpretation Demonstrate that Conn. Gen. Stat. § 52-64 is a Mandatory Provision; Service Upon an Agent of the State Must be Effected Through the Attorney General of the State of Connecticut.**

Connecticut courts *contemporaneously* ascertain the meaning of a statute from (1) the text of the statute itself *and* (2) the provisions relationship to other statutes.  <u>Lostritto v. Community Action Agency of New Haven, Inc.</u>, 848 A.2d 418, 423 (Conn. 2004) (quoting Conn. Public Acts 2003 No. 03-154 § 1 ("The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself *and* its relationship to other statutes.")).  Connecticut courts thus read statutes together in order to harmoniously and consistently interpret the law.

> We assume that the legislature attempts to create a consistent body of law.  Assuredly, we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law. . . . Indeed, this tent of statutory construction requiring us to read statutes together is particularly applicable when the statutes relate to the same subject matter. . . . Finally, we presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions.

24

Comm. on Unman Rights and Opportunities v. Truelove and MacLean, Inc., 680 A.2d

1261, 1267 (Conn. 1996) (citing Paige v. Town Plan & Zoning Comm., 668 A.2d 340

(Conn. 1995); Derwin v. State Employees Retirement Comm., 661 A.2d 1025 (Conn.

1995); Daily v. DelPonte, 624 A.2d 876 (Conn. 1993)).

A review of certain statutes surrounding Conn. Gen. Stat. § 52-64 further reveals

that that statute must be read as mandatory. Conn. Gen. Stat. § 4-160 clarifies that,

despite the Connecticut legislature's use of the word "may" in Conn. Gen. Stat. § 52-64,

the Attorney General is the sole agent for service of process in an action against the State

of Connecticut. Conn. Gen. Stat. § 4-160(e) provides that "[c]ivil process directed

against the state *shall* be served as provided by section 52-64." Conn. Gen. Stat. § 4-

160(e) (emphasis added). Conn. Gen. Stat. § 4-160 does not provide any alternative

statute to govern service of process in an action against the state. Thus, if (1) civil process

directed against the state *must* be served as provided by Conn. Gen. Stat. § 52-64, and (2)

Conn. Gen. Stat. § 52-64 provides only the Attorney General as an agent for service of

process in actions against the state, then the Connecticut Attorney General must be the

only agent for service of process in an action against the State of Connecticut or its

agent.[2]

In Lostritto v. Community Action Agency of New Haven, Inc., 848 A.2d at 424-

25, the Connecticut Supreme Court reasoned in the exact fashion set forth above to

---

[2]     Another Connecticut statute provides further evidence that interpretation of Conn.
Gen. Stat. § 52-64 as permissive is legally incorrect. Where the Connecticut legislature
wants service of process in an action against a state agency served *somewhere other than
on the Attorney General*, it knows well how to do so. Conn. Gen. Stat. § 1-21i(d),
concerning service on the Connecticut Freedom of Information Commission states,
"Notwithstanding . . . section 52-64, all process shall be served upon the commission at
its office." See Conn. Gen. Stat. § 1-21i(d).

construe a provision with the word "may" as mandatory rather than directory. The statute

at issue in <u>Lostritto</u>, Conn. Gen. Stat. § 52-102b(a), provides in relevant part:

> A defendant in any civil action to which [Conn. Gen. Stat.
> § 52-572h] applies **may** serve a writ, summons and
> complaint upon a person not a party to the action who is or
> may be liable pursuant to said section for a proportionate
> share of the plaintiff's damages in which case the demand
> for relief shall seek an apportionment of liability. Any such
> writ, summons and complaint, hereinafter called the
> apportionment complaint, shall be served within one
> hundred twenty days of the return date specified in the
> plaintiff's original complaint. . . .

Conn. Gen. Stat. § 52-102b(a) (emphasis added).

To resolve the question of whether Conn. Gen. Stat. § 52-102b(a) is permissive or

mandatory, the Connecticut Supreme Court looked to a neighboring provision that

required conformance with Conn. Gen. Stat. § 52-102b(a), despite the use of the

seemingly directory "*may*" in that statute.  <u>Compare</u> Conn. Gen. Stat. § 52-64 (using the

seemingly directory "may") with Conn. Gen. Stat. § 4-160(e) (providing that Conn. Gen.

Stat. 52-64 is the exclusive means of service of process in an action against the State of

Connecticut).

> Our determination that [Conn. Gen. Stat. § 52-102b(a) is
> mandatory is further informed by the text of subsection (f)
> of the statute, which strongly suggests that compliance with
> the 120 day provision is mandatory. That subsection
> provides that "[t]his section ***shall be the exclusive means***
> by which a defendant may add a person who is or may be
> liable pursuant to [Conn. Gen. Stat. § 52-572h] for a
> proportionate share of the plaintiff's damages as a party to
> the action." . . . Indeed, we have stated that [Conn. Gen.
> Stat. § 52-572h], which establishes the right to apportion
> liability, does not entitle a defendant to seek to apportion
> liability in instances in which the procedures outlined in
> [Conn. Gen. Stat. § 52-102b] are not followed. . . . Thus, it
> is incontrovertible that, if a defendant seeks to apportion
> liability, he *must* comply with § 52-102b(a).

Lostritto v. Community Action Agency of New Haven, Inc., 848 A.2d at 425 (internal

citations and quotations omitted) (emphasis added).  There is thus authority from the

Connecticut Supreme Court for interpreting a provision with the word "may," as a

mandatory provision, especially where a neighboring statute provides for exclusive use of

such a seemingly permissive statute.  Compare Conn. Gen. Stat. § 52-64 (using the word

"may") with Conn. Gen. Stat. § 4-160(e) (requiring plaintiffs in actions against the state

to serve the state in exclusive accordance with Conn. Gen. Stat. § 52-64).

Thus, exactly as the Lostritto court reasoned, whereas Conn. Gen. Stat. § 4-160(e)

exclusively requires adherence to Conn. Gen. Stat. § 52-64 regarding service of process

in actions against he State of Connecticut – and Conn. Gen. Stat. § 52-64 provides only

one method for service of process, Conn. Gen. Stat. § 52-64 must be a mandatory

provision.  See Lostritto v. Community Action Agency of New Haven, Inc., 848 A.2d at

425.  Where appropriate in view of the full setting of the statute, a court may interpret

"may" as "shall."  See Miller v. Spicer, 602 A.2d 65, 67 (Del. 1991) (Justice Walsh)

("The use of the verb 'shall' in legislation generally connotes a mandatory requirement

while the verb 'may' is deemed permissive. . . . *But the test is a contextual one and the*

*mere use of a term does not control the question of legislative intent if the full setting of*

*the statute suggests a different construction.*") (emphasis added).

To interpret "may" as used in Conn. Gen. Stat. § 52-64 to mean that service in an

action against the State of Connecticut "may" be made upon the Attorney General and

"may" be made elsewhere renders the statute ineffective.  Such an interpretation opens an

important and substantive provision to so many different possibilities as to render the

statute meaningless.  In fact, to read Conn. Gen. Stat. § 52-64 as permissive renders the

entire provision superfluous, given the lack of direction provided therein regarding methods of service in an action against the State of Connecticut *other than* service on the Connecticut Attorney General. See Town of Wallingford v. State, Dept. of Public Health, 2005 WL 1971865, *4 (Conn. Super. Ct. 2005) ("'It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions . . . . Statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant.'") (quoting Carmel Hollow Assoc.'s Limited Partnership v. Town of Bethlehem, 848 A.2d 451, 458-59 (2004)). If service in an action against the State "may" be made by effecting service on the Connecticut Attorney General, and "may" be made elsewhere, by what other means may process in an action against the state be served? Is there any limit to the other methods by which service of process in an action against the State of Connecticut may be effected? A permissive interpretation of Conn. Gen. Stat. § 52-64 leads to an absurd result. See Town of Wallingford v. Werbiski, 877 A.2d 749, 755 (Conn. 2005) (Connecticut courts "will not interpret statutes in such a way that would lead to a 'bizarre or absurd result.' ") (citing First Union National Bank v. Hi Ho Mall Shopping Ventures, Inc., 869 A.2d 1193 (Conn. 2005)).

Service of a complaint and summons is an important and substantive matter. Without proper service of a complaint and summons, the court does not attain personal jurisdiction over the defendant. Pennoyer v. Neff, 95 U.S. at 725-27.

> The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the

legislative provision is designed to secure order, system
and dispatch in the proceedings, it is generally held to be
directory, especially where the requirement is stated in
affirmative terms unaccompanied by negative words.

Lostritto v. Community Action Agency of New Haven, Inc., 848 A.2d at 424 (quoting

Williams v. Comm. on Human Rights and Opportunities, 777 A.2d 645, 661 (Conn.

2001). (the "Lostritto Test").

When Conn. Gen. Stat. § 52-64 is reviewed through the lens of the Lostritto Test,

it is obvious that Conn. Gen. Stat. § 52-64 is a mandatory provision.  As evidenced by its

title ("Service in action against state."), Conn. Gen. Stat. § 52-64 is *solely* concerned with

how to effect service of process in an action against the State of Connecticut.  Thus, the

action (service of process in an action against the State of Connecticut) is "the essence of

the thing to be accomplished."  See Lostritto v. Community Action Agency of New

Haven, Inc., 848 A.2d at 424.  Service of process is certainly a substantive matter, for

without proper service of process, a court does not attain personal jurisdiction over the

defendant.  Pennoyer v. Neff, 95 U.S. at 725-27.  The Bankruptcy Court erred as a matter

of law in finding that Conn. Gen. Stat. § 52-64 is a permissive statute.  Conn. Gen. Stat. §

52-64 requires that service of process in an action against an agent of the State of

Connecticut be effected via service of process on the Attorney General of the State of

Connecticut.

Service of the Complaint and Summons in this matter was defective because the

Plaintiff did not serve the Attorney General in accordance with Conn. Gen. Stat. § 52-64,

as is required by Fed.R.Bankr.P. 7004(b)(6).  The Default Judgment is void under

Fed.R.Civ.P. 60(b)(4) as made applicable by Fed.R.Bankr.P. 9024 because the

Bankruptcy Court did not have personal jurisdiction over Ms. Sacks, as the State of

Connecticut's Nursing Home Receiver (agent) for the Five Facilities. The Bankruptcy Court erred as a matter of law in finding that Conn. Gen. Stat. § 52-64 does not require that service of process on an agent of the State be made by effecting service of process on the Attorney General of the State of Connecticut.

## V.    **CONCLUSION**

Ms. Sacks respectfully requests that this Court reverse the Bankruptcy Court's Default Judgment Order and Settlement Order and vacate the Default Judgment. The Default Judgment is void and must be set aside pursuant to Fed.R.Civ.P. 60(b)(4). The Bankruptcy Court erred as a matter of law in finding that, as the State of Connecticut's Nursing Home Receiver for the Five Facilities, Ms. Sacks is not an agent of the State of Connecticut. The Bankruptcy Court also erred as a matter of law in interpreting Conn. Gen. Stat. § 52-64 as a permissive statute. A correct interpretation of that statute (especially in light of its recent amendment) imparts that service of process on an agent of the State of Connecticut must be effected by service of process on the Attorney General of the State of Connecticut.

*[remainder of page intentionally left blank]*

For the foregoing reasons, the Ms. Sacks respectfully requests that this Court enter an Order reversing the Default Judgment and the Settlement Order and granting Ms. Sacks such other and further relief as is appropriate.

Dated: November 22, 2005          Respectfully submitted,
      Wilmington, Delaware
                                 REED SMITH LLP

                        By: /s/ Mark W. Eckard
                                 Mark W. Eckard (No. 4542)
                                 1201 Market Street, Suite 1500
                                 Wilmington, DE 19801
                                 Telephone: (302) 778-7500
                                 Facsimile: (302) 778-7575
                                 E-mail: meckard@reedsmith.com

                                 Counsel for Katharine B. Sacks, as the State of Connecticut's Nursing Home Receiver for Five Facilities Formerly Owned and Operated By Pegasus Management Company, Inc.