**ATTACHMENT TO:**

**OPENING BRIEF OF APPELLANT, KATHARINE B. SACKS, AS THE STATE OF CONNECTICUT'S NURSING HOME RECEIVER FOR FIVE FACILITIES FORMERLY OWNED AND OPERATED BY PEGASUS MANAGEMENT COMPANY, INC. (ADVERSARY CASE NO. 05-581 DOCKET NO. 13; FILED ON NOVEMBER 22, 2005; AND ADVERSARY CASE NO 05-582 DOCKET NO. 13; FILED ON NOVEMBER 22, 2005)**

# UNREPORTED
# CASES



Not Reported in A.2d                                                    Page 1
Not Reported in A.2d, 2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690
**(Cite as: 2001 WL 56474 (Conn.Super.))**

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.
Hilary GALLAND,
v.
Richard BISHOP, Administrator of the Estate of
Christopher Luke Yohan, et al.
**No. 088568.**

Jan. 9, 2001.

*MEMORANDUM OF DECISION ON PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (# 139 )*

ARENA.

I. *Procedural Background and Standard of Review*
*1 On July 30, 1999, the plaintiff, Hilary Galland,
filed an amended two-count complaint against the
defendants, Richard Bishop, as administrator of the
estate of Christopher Luke Yohan, and George
Galland. The first count, which is directed at Bishop,
alleges the negligent operation of a motor vehicle and
the second count alleges the vicarious liability of
Galland. In August 1999, Galland and Bishop filed
separate answers to the amended complaint. On
August 18, 2000, pursuant to Practice Book § 17-44
et seq., the plaintiff filed a motion for interlocutory
summary judgment as to both defendants. On
October 30, 2000, Galland filed an objection to the
motion for interlocutory summary judgment. Bishop
has not filed an objection to the motion for an
interlocutory summary judgment.

"Practice Book § [17-49] provides that summary
judgment shall be rendered forthwith if the pleadings,
affidavits and any other proof submitted show that
there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a
matter of law." (Internal quotation marks omitted.)
*Witt v. St. Vincents Medical Center,* 252 Conn. 363,
368, 746 A.2d 753, (2000). "A material fact has been
defined adequately and simply as a fact which will
make a difference in the result of the case." (Internal
quotation marks omitted.) *Hammer v. Lumberman's
Mutual Casualty Co.,* 214 Conn. 573, 578, 573 A.2d
699 (1990). "Although the party seeking summary
judgment has the burden of showing the nonexistence
of any material fact ... a party opposing summary

judgment must substantiate its adverse claim by
showing that there is a genuine issue of material fact
together with the evidence disclosing the existence of
such an issue." (Internal quotation marks omitted.)
*Maffucci v. Royal Park Ltd. Partnership,* 243 Conn.
552, 554-55, 707 A.2d 15 (1998). "The existence of
the genuine issue of material fact must be
demonstrated by counter affidavits and concrete
evidence." (Internal quotation marks omitted.) *Pion v.
Southern New England Telephone Co.,* 44 Conn.App.
657, 663, 691 A.2d 1107 (1997).

II. *Motion for Interlocutory Summary Judgment as to
the Defendant Bishop*
In his answer, Bishop admitted the following facts.
Bishop admitted that the plaintiff was a passenger in
the 1986 Pontiac station wagon and that the deceased
Christopher Luke Yohan was operating the car.
Bishop further admitted that he was appointed
administrator of the estate of Yohan by the Probate
and Family Court Department of Orange County,
Massachusetts.

Attached to the motion for summary judgment is a
subscribed and sworn statement of a witness
testifying to the following events. On April 4, 1997,
the car involved in the accident was traveling north in
the easternmost lane of Route 9. The car abruptly
made a left turn against a red light onto Washington
Street (Route 66) by crossing three lanes of
northbound traffic and three lanes southbound traffic.
A car traveling north on deKoven Drive with a green
light collided with the car driven by vehicle causing it
to roll over two times. (Statement of John Heft dated
April 4, 1997.) A different witness, traveling Route 9
on the southbound side with the green light,
corroborated the statement of Mr. Heft that Yohan
crossed against the light and oncoming traffic.
(Statement of Debbie Simon dated April 4, 1997.)
Moreover, the driver of the car that collided with the
Yohan vehicle also stated that Yohan turned against a
red light. (Deposition of Andrew Luangkhot, p. 23.)
Issues of negligence are not generally resolved on a
motion for summary judgment; *Fogarty v. Rashaw,*
193 Conn. 442, 446, 476 A.2d 582 (1984); where,
however, "there [are] no contradictory affidavits, the
court properly [decides] the motion [for summary
judgment] by looking only to the sufficiency of the
[movant's] affidavits and other proof. *Heyman
Associates No. 1 v. Insurance Co. of Pennsylvania,*
231 Conn. 756, 795, 653 A.2d 122 (1995).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 2
Not Reported in A.2d, 2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690
(Cite as: 2001 WL 56474 (Conn.Super.))

"Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles ..." (Internal quotation marks omitted.) *Gore v. Peoples Savings Bank*, 235 Conn. 360, 376, 665 A.2d 1341 (1995). The violation of a statute constitutes negligence per se where (1) the plaintiff is "within the class of persons protected by the statute," and (2) "the injury suffered is of the type that the statute was intended to prevent." *Id.,* 368- 69, 665 A.2d 1341. The court finds that the plaintiff's affidavit and other proof indicate that the plaintiff's injuries were caused by Yohan's negligent operation of the motor vehicle in violation of General Statutes § 14- 299(b)(3). [FN1] Proof of a violation of § 14-299(b)(3) constitutes negligence per se. *Paige v. Romans,* Superior Court, judicial district of New Haven at New Haven, Docket No. 416280 (March 29, 1999) (*Devlin J.*). Accordingly, it is decided that the motion for interlocutory summary judgment as to Bishop's liability, as administrator of the estate of Yohan, should be granted.

> FN1. General Statutes § 14-299(b)(3) provides in pertinent part that: "Vehicular traffic facing a steady red signal alone shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and remain standing until the next indication is shown ..."

### III. *Motion for Interlocutory Summary Judgment as to Defendant Galland*

*\*2* The plaintiff also seeks interlocutory summary judgment on the second count of the complaint seeking to hold George Galland vicariously liable for her injuries. Specifically, the plaintiff argues that she is entitled to judgment as a matter of law and that there are no genuine issues of material fact with respect to the agency relationship between Galland and the decedent Yohan. Alternatively, the plaintiff argues that there is no genuine issue of material fact regarding the applicability of the family car doctrine to the present circumstances.

#### A. *The Agency Relationship Between Galland and Decedent Yohan.*

The plaintiff advances two arguments supporting her contention that the decedent Yohan was the agent of Galland. First, the plaintiff seeks to avail herself of the evidentiary presumption set forth in General Statutes § 52- 183. [FN2] *Lockwood v. Gorski,* Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 133909 (May 6, 1994)

(*Mottolese, J.*) The plaintiff also claims that as Galland's agent, when she permitted Yohan to operate the motor vehicle, he became her subagent. The plaintiff argues that the principal is vicariously liable for the acts of his agents and subagents. Galland argues that the existence of an agency relationship is a question of fact and thus the motion for summary judgment must be denied.

> FN2. General Statutes § 52-183 provides: "In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of the motor vehicle, the operator, if he is other than the owner of the motor vehicle, shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment. The defendant shall have the burden of rebutting the presumption."

The existence of agency is ordinarily a question of fact but if the material facts are uncontested the agency relationship becomes a question of law. *Hallas v. Boehmke & Dobosz, Inc.,* 239 Conn. 658, 674, 686 A.2d 491 (1997); *Russo v. McAviney,* 96 Conn. 21, 24, 112 A. 657 (1921). "[T]he three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. *Restatement (Second), 1 Agency § 1, comment b (1958).*" (Citations omitted., internal quotation marks omitted.) *Hallas v. Boehmke and Dobosz, Inc., supra,* 239 Conn. 673.

Galland, in his responses to the plaintiff's requests for admission, admitted the following facts with respect to the agency relationship. Galland admitted that he was the owner of the motor vehicle driven by Yohan at the time of the accident. (Defendant Galland's Responses to the Plaintiff's Requests for Admission, Request 1.) Galland admitted that on April 4, 1997 and prior thereto, the decedent Yohan had his permission and authority to operate the motor vehicle in question and to do so for the benefit and convenience of the plaintiff. (Defendant Galland's Responses to the Plaintiff's Requests for Admission, Requests 5, 7, 8 and 9.) Galland also admitted that on April 4, 1997 and prior thereto, he did not place any restrictions on the use of the motor vehicle by the decedent Yohan or the plaintiff. (Defendant Galland's Responses to the Plaintiff's Requests for Admission,

Not Reported in A.2d                                                                      Page 3
Not Reported in A.2d, 2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690
**(Cite as: 2001 WL 56474 (Conn.Super.))**

Requests 10, 11, 12, 13 and 14. See also Deposition of Hilary Galland, p. 99-103.) Finally, Galland admitted that on April 4, 1997 and prior thereto, the plaintiff had his permission and authority to allow the decedent Yohan to operate the motor vehicle. (Defendant Galland's Responses to the Plaintiff's Requests for Admission, Request 14.) Galland submitted for review an affidavit that stated: "I did not give specific permission to Luke Yohan to drive the car the night that the accident occurred. I did know that Hilary had a boyfriend named Luke Yohan. I did know that she sometimes allowed her friends at college to drive her in the car. Hilary had our permission to allow such driving by her friends, including Luke Yohan." Affidavit of George F. Galland, Jr., ¶ 4.

Viewing the facts in the light most favorable to the defendant; *Miles v. Foley,* 253 Conn. 381, 386, 752 A.2d 503, (2000); the court finds that there is no genuine issue of material fact as to the existence of an agency relationship between the decedent Yohan and Galland. The affidavit of Galland is insufficient to create a genuine issue of material fact with respect to the question of agency. Galland admitted that the decedent Yohan had his permission and authority to operate the motor vehicle in question and to do so for the benefit and convenience of the plaintiff. (Defendant Galland's Responses to the Plaintiff's Requests for Admission, Requests 5, 7. 8 and 9.) Galland's affidavit does not contradict the admitted authority that Yohan possessed to operate the motor vehicle. In light of Yohan's general authority to operate the motor vehicle and acknowledge previous course of conduct, the fact that Galland did not give Yohan specific permission on the night of the accident is insufficient to create a genuine issue of material fact with respect to the question of agency.

    B. *The Applicability of the Family Car Doctrine.*
**\*3** Moreover, the court may hold Galland vicariously liable for the plaintiff's injuries pursuant to the family car doctrine. "When a member of a family maintains a car for the pleasure, use and convenience of the family, and its purposes, he or she makes such pleasure and use a personal concern, thereby making those family members who use or enjoy the car his or her agents, as if they were pursuing the affairs of the owner. *Dibble v. Wolff* 135 Conn. 428, 434, 65 A.2d 479 (1949)." *Cook v. Nye,* 9 Conn.App. 221, 225, 518 A.2d 77 (1986).

The defendant relies on *Koops v. Gregg,* 130 Conn. 185, 32 A.2d 653 (1943) to oppose the motion for interlocutory summary judgment. In *Koops,* Donald

Gregg, a student at Yale, loaned a motor vehicle, owned by Alice Gregg and living in New Jersey, to a fellow student named Tweedy to attend a party. Donald Gregg did not attend the party. There was testimony that Donald Gregg loaned the car out on other occasions; that Alice Gregg had no knowledge of Tweedy's use; and that Tweedy was not on an errand for Alice Gregg. The court stated that "[i]t would not be enough to establish Mrs. Gregg's liability that she left the use of the car while it was in New Haven to the discretion of her son and knew that he at times loaned it to others; or even that she might be pleased to have him do so because it might give him a better standing among his fellow students; the law does not, in determining agency, take account of indefinite considerations and possible motive of such a nature." *Id.,* 191- 92, 32 A.2d 653. The *Koops* decision is not of particular value in analyzing the facts of the present case. The driver in *Koops* borrowed the car for his own purpose, to attend a party. Yohan, in the present case, was returning from a trip to the library at Connecticut College where the plaintiff needed to obtain a book for her senior thesis. The drive to Connecticut College was prompted by the specific purpose for which the car was provided to the plaintiff by Galland.

In *Dibble v. Wolf, supra,* 135 Conn. 428, 65 A.2d 479, however, the Connecticut Supreme Court upheld a judgment rendered by the trial court in favor of the plaintiff under the family car doctrine where the owner of the motor vehicle was held vicariously liable for an accident caused by his daughter driving her invalid mother. Vicarious liability was imposed under the family car doctrine even though the adult daughter, who was operating the motor vehicle, was married and maintained a separate household. The court held that because the defendant's wife could not drive herself "in giving her authority to use the car, as he did, the defendant necessarily included the power in her to get someone to drive it for her when she wanted to use it." *Id.,* 434, 65 A.2d 479. "[N]ot only was the car being used for the very purpose intended by the defendant, that of serving the pleasure and convenience of his wife ... but it was being driven for her by their daughter under his wife's immediate direction and with his approval and consent. Under the familiar legal maxim 'qui facit per alium facit per se,' the daughter's act became that of the mother and this rendered the family car doctrine operative to charge the defendant with liability." *Id.* 435, 65 A.2d 479.

**\*4** Similarly, Galland admitted providing the motor vehicle as a family vehicle for the pleasure and

Not Reported in A.2d
Not Reported in A.2d, 2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690
**(Cite as: 2001 WL 56474 (Conn.Super.))**

Page 4

convenience of the plaintiff. Defendant Galland's Responses to the Plaintiff's Requests for Admission, Request 3. The decedent Yohan was operating the car with the knowledge and authority of Galland. There were no restrictions on either the plaintiff's or Yohan's use of the motor vehicle. In fact, Yohan was operating the vehicle for the benefit and convenience of the plaintiff under the plaintiff's direction. Galland's lone affidavit does not contradict or create a genuine issue of material fact regarding the applicability of the family car doctrine. Under the facts of the present case, the court finds that there are no issues of material fact with respect to the applicability of the family car doctrine.

## IV. *Conclusion*

The plaintiff's affidavits and other proof indicate that the decedent Yohan negligently operated the motor vehicle and the defendant Bishop did not oppose summary judgment or submit any evidence, and, therefore, failed to raise a genuine issue of material fact. The plaintiff is therefore entitled to judgment as a matter of law. Accordingly, the motion for interlocutory summary judgment on the first count of the complaint alleging Bishop's liability for negligence is granted.

The defendant Galland has not produced evidence sufficient to raise a genuine issue of material fact with respect to the existence of an agency relationship between Galland and the decedent Yohan. Moreover, there is no genuine issue of material fact as to Galland's vicarious liability pursuant to the family car doctrine. Accordingly, the motion for interlocutory summary judgment on the second count directed at Galland is granted.

It is so ordered.

Not Reported in A.2d, 2001 WL 56474 (Conn.Super.), 28 Conn. L. Rptr. 690

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in B.R.
Not Reported in B.R., 2004 WL 941190 (Bankr.D.Del.), 42 Bankr.Ct.Dec. 279
**(Cite as: 2004 WL 941190 (Bankr.D.Del.))**

c

United States Bankruptcy Court,
D. Delaware.
In re SUN HEALTHCARE GROUP, INC., et al.,
Debtors.
SUN HEALTHCARE GROUP, INC., and any and
all debtor subsidiaries and affiliates
Plaintiff,
v.
MEAD JOHNSON NUTRITIONAL Defendant.
**No. 99-03657(MFW), ADV.PROC. 01-7671, ADV.
PROC. 01-7480(M.**

April 30, 2004.

Etta Rena Wolfe, Kimberly A. Allen, Mark D. Collins, Patrick Michael Leathem, Rebecca L. Booth, Russell C. Silberglied, Thomas L. Ambro, Richards Layton & Finger, James R. Adams, Joanne P. Pinckney, Karen L. Pascale, Bouchard, Margules & Friedlander, Marla Rosoff Eskin, Campbell & Levine, LLC, Michael Joseph Merchant, Robert J. Stearn Jr., Richards Layton & Finger, P.A., for Debtors.

Brian J. McLaughlin, Monzack and Monaco, P. A., Kurt F. Gwynne, Richard Allen Keuler, Jr., Thomas J. Francella, Jr., Reed Smith LLP, Wilmington, DE, for Defendant.

Mark Minuti, Tara L. Lattomus, Saul Ewing LLP, Wilmington, DE, for U.S. Trustee.

Denise Lynn Savage, Savage & Associates, White Plains, NY, Marla Rosoff Eskin, Campbell & Levine, LLC, Wilmington, DE, for Plaintiff.

*MEMORANDUM OPINION* [FN1]

> FN1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

WALRATH, Bankruptcy J.

*1 Before the Court is the Motion of defendant Mead Johnson Nutritional ("Mead") for an Order (1) reopening two adversary proceedings filed by Sun Healthcare Group, Inc., on behalf of itself and its subsidiaries and affiliates (collectively "the Debtors"), (2) vacating the default judgments entered

therein, and (3) dismissing the underlying complaints for failure to effect proper service within 120 days. The Debtors oppose the motion. After considering the arguments of both parties, and for the reasons set forth below, the motion to reopen is granted and the motion to dismiss is denied.

I. *BACKGROUND*

On October 12, 1999, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On October 10, 2001, the Debtors filed an adversary proceeding against Mead (Adv. No. 01-7671) to avoid certain preferential transfers totaling $91,629.54 pursuant to sections 105, 542, 547(b), 548, 550 and 551 of the Bankruptcy Code, New Mexico's Uniform Fraudulent Transfer Act, Texas's Business & Commercial Code, and any other applicable state laws. On October 12, 2001, the Debtors commenced a second avoidance action against Mead (Adv. No. 01-7480) seeking to recover $77,532.

The parties stipulate that the Debtors sent all pleadings to Mead at a post office box in Charlotte, North Carolina. The parties stipulate further that none of the mailings designated a particular individual or agent for the purpose of service of process. Mead failed to respond timely to any of the Debtors' mailings. Consequently, two default judgments were entered in favor of the Debtors on March 4, 2002. The adversary proceedings were closed on March 28 and 31, 2003.

The Debtors commenced collection on the judgments. As a result, on June 12, 2003, Mead filed the instant Motion to reopen the default judgments and to dismiss the underlying adversary complaints. The Debtors objected to the Motion on June 19, 2003. Mead filed its Reply on June 26, 2003. A Notice of Completion of Briefing was filed on March 10, 2004, and the matter is ripe for decision.

II. *JURISDICTION*

This Court has jurisdiction pursuant to 28 U.S.C. § § 1334 & 157(b)(2)(A), (F) & (O).

III. *DISCUSSION*

A. *Reopen Adversaries*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                    Page 2
Not Reported in B.R., 2004 WL 941190 (Bankr.D.Del.), 42 Bankr.Ct.Dec. 279
(Cite as: 2004 WL 941190 (Bankr.D.Del.))

Mead asks this Court to reopen the adversary proceedings to afford it relief. Its motion cites section 350 of the Bankruptcy Code in support. The Debtors assert that section 350 is applicable only to bankruptcy cases, not to adversaries filed in them. Consequently, the Debtors contend that we must deny the motion.

We agree with the Debtors that section 350 applies only to reopening bankruptcy cases and not to reopening adversary proceedings. 11 U.S.C. § 350(b) (1978) ("a case may be reopened ... to administer assets, ... accord relief to the debtor, or for other cause"); In re Woods, 173 F.3d 770, 772 (10th Cir.1999) (bankruptcy court has authority under section 350(b) to reopen a case).

Nevertheless, we disagree with the Debtors' assertion that this mandates we deny Mead's motion in toto. Adversary proceedings in bankruptcy cases are procedurally analogous to civil actions filed in district courts. [FN2] A district court does not need an independent basis to reopen a civil proceeding before considering a motion for relief from a judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. [FN3] Rather, such a motion is deemed a continuation of the original proceeding. 12 Moore's Federal Practice § 60.61 (Matthew Bender 3d ed.1999). Therefore, we will consider the merits of Mead's motion to vacate the Debtors' default judgments.

> FN2. Both are commenced by filing a complaint with the court. In fact, Bankruptcy Rule 9002(1) includes adversary proceedings within the definition of "civil action[s]." Bankruptcy Rule 7003 provides that Rule 3 of the Federal Rules of Civil Procedure--which governs the commencement of civil actions--also applies in adversary proceedings.

> FN3. Bankruptcy Rule 9024 incorporates by reference Rule 60(b) of the Federal Rules of Civil Procedure.

B. Vacate Default Judgments

*2 Mead claims that the default judgments are void under Rule 60(b)(4) because the Debtors failed to effect proper service of process. Bankruptcy Rule 7004(b)(3) requires that service by first class mail on a domestic corporation be addressed to "to the attention of an officer, managing or general agent, or ... any

other agent authorized by appointment or by law" to receive service of process. Fed. R. Bankr.P. 7004(b)(3). Here, the Debtors have admitted serving Mead only at P.O. Box 751735, Charlotte, NC 28275, without addressing the documents to the attention of any officer, managing or general agent of Mead. Mead asserts that this address is a lockbox to receive payments, which is maintained and administered by a bank. [FN4] (Aff. of Mary Stewart, ¶ ¶ 3-4.)

> FN4. Mead explains that the bank processes payments, deposits them into Mead's account, and forwards the documentation to Mead to allow it to apply the payments to the appropriate customer accounts.

Failure to address the service of process to the attention of an officer or agent of Mead violates the statutory requirements of Bankruptcy Rule 7004(b)(3). See, e.g., In re Golden Books Family Entertainment, Inc., 269 B.R. 300, 305 (Bankr.D.Del.2001) (notice documents deficient because "among other things, debtors failed to address any of the copies ... to a person of authority or to a person authorized to accept service"). Notice must comply with the literal requirements of Bankruptcy Rule 7004(b)(3). Id. at 305. Consequently, we conclude that the Debtors' service of process did not meet the requirements of Bankruptcy Rule 7004(b)(3).

The Third Circuit has held that "a default judgment entered when there has been no proper service of the complaint is, a fortiori, void, and should be set aside." Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir.1985). Thus, the default judgments the Debtors have obtained against Mead are void and should be set aside because service was defective.

The Debtors assert, nonetheless, that we should not vacate the default judgments because Mead's culpable conduct led to the entry of such judgments and that setting aside the judgment would be prejudicial to the Debtors. The Third Circuit has stated three factors lower courts should consider when deciding a motion to vacate a default judgment--whether (1) plaintiff will be prejudiced if the judgment is set aside, (2) defendant has a meritorious defense to the underlying action, and (3) default resulted from defendant's culpable conduct. Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir.1982). See also Hritz v.. Woma Corp., 732 F.2d 1178, 1181 (3d Cir.1984); U.S. v. $55,518 .05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir.1984).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                                Page 3
Not Reported in B.R., 2004 WL 941190 (Bankr.D.Del.), 42 Bankr.Ct.Dec. 279
**(Cite as: 2004 WL 941190 (Bankr.D.Del.))**

However, the *Feliciano* factors are inapplicable to the instant case because they are relevant "only when [a judgment to be vacated] was authorized." *Gold Kist, 756 F.2d at 19.* Since we already have determined that proper service of process was not effected in these adversary proceedings, this Court never acquired the personal jurisdiction over Mead necessary to bind it to the default judgments. As such, these judgments were not authorized. *See Lampe v. Xouth, Inc., 952 F.2d 697, 700-01 (3d Cir.1992)* (personal jurisdiction must be established in every case before a court has power to render any judgment; a court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon defendant).

**\*3** The Debtors also contend that we should not vacate the default judgments because they have "diligently pursued [their] claim[s]" while Mead failed to prosecute its motion within a "reasonable time ." (Debtors' Obj., pp. 12-13.) While *Rule 60(b)* states that motions should be initiated within a "reasonable time," this limitation does not apply to actions brought under subsection (4), the basis for Mead's current motion. *See, e.g., U.S. v. One Toshiba Color T.V., 213 F.3d 147, 157 (3d Cir.2000)* (en banc) ("nearly overwhelming authority exists for the proposition that there are no time limits with regards to a challenge to a void judgment because of its status as a nullity"); *Shenouda v. Mehanna, 203 F.R.D. 166, 169 (D.N.J.2001)* (defendant's motion to vacate default judgment not untimely although made 5 years after judgment entered; void judgment may be attacked at any time). *See also* 12 *Moore's Federal Practice,* § 60.44(5)(c) (Matthew Bender, 3d ed. 1999) (Rule 60(b)(4) motion challenging judgment as void is not subject to "reasonable time" requirement and may be made at any time).

Consequently, we conclude that the default judgments entered against Mead are void because the complaints were never properly served. Mead's motion to vacate will be granted.

### C. Motion to Dismiss Underlying Complaints

Mead also seeks to dismiss the Debtors' underlying complaints because of the failure to properly serve process within the 120 days prescribed in Bankruptcy Rule 7004, which incorporates Rule 4(m). Rule 4(m) provides:

> if service of the summons and complaint is not made upon defendant within 120 days after the filing of the complaint, the court ... shall dismiss

the action without prejudice as to the defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.
Fed.R.Civ.P. 4(m).

In a *Rule 4(m)* analysis, the court must first ascertain whether the plaintiff has "good cause" to excuse the failure to perfect service within 120 days. *See Petrucelli v. Bohringer, 46 F.3d 1298, 1305 (3d Cir.1995).* If the plaintiff demonstrates "good cause," then the court is duty-bound to extend the time for service. However, where the plaintiff cannot show "good cause," the court still has discretion to grant the plaintiff additional time to serve the defendant properly or to dismiss the action without prejudice.

The Third Circuit has equated "good cause" with "excusable neglect" under *Rule 60(b)(2). See Petrucelli, 46 F.3d at 1312,* citing *Dominic v. Hess Oil, 841 F.2d 513, 517 (3d Cir.1988).* Excusable neglect requires "a demonstration of good faith on the part of the party seeking an enlargement [of time for service] and some reasonable basis for noncompliance with the time specified in the rules." *Petrucelli, 46 F.3d at 1312.*

**\*4** Here, the Debtors have submitted no evidence of the requisite "excusable neglect" and reasonable basis for noncompliance with *Rule 4(m)*'s 120-day deadline that would warrant a finding by this Court that there is "good cause" to mandate extending the time for service. In fact, the Debtors did not even address this issue in the papers submitted to the Court.

However, even though the record does not show "good cause" for the Debtors' failure to properly serve Mead within 120 days, we can, in our discretion, grant the Debtors additional time to perfect service. Again, the *Petrucelli* case is instructive. The Third Circuit stated that the Advisory Committee notes on *Rule 4(m)* provide some factors for lower courts to consider when deciding to exercise their discretion, including whether the applicable statute of limitations would bar refiling of the plaintiff's action. *See Petrucelli, 46 F.3d at 1305-06.* Other factors a court may consider include frivolousness of the plaintiff's complaint, the plaintiff's objective unreasonableness (factually and legally), and the plaintiff's motivation in pursing the claim. *See Ritter v. Cooper, 2003 WL 23112306, at \*3 (D.Del. Dec.30, 2003).* The greater the number of these factors that appear true, the weaker the rationale

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                                    Page 4
Not Reported in B.R., 2004 WL 941190 (Bankr.D.Del.), 42 Bankr.Ct.Dec. 279
**(Cite as: 2004 WL 941190 (Bankr.D.Del.))**

for the court to exercise its discretion in favor of extending the time for service.

In this case, if the adversary proceedings are dismissed, the Debtors could not refile because the statute of limitations has expired. *See* 11 U.S.C. § 546(a)(1)(A). Therefore, the Debtors are unable to cure the defective service absent our grant of additional time. Further, consideration of the *Ritter* factors seem to support an extension. First, the Debtors' complaints do not appear frivolous or objectively unreasonable. Both the Debtors and Mead have acknowledged Mead's receipt of more than $45,000 in payments within 90 days prior to the filing of the Debtors' chapter 11 petitions. (Stip. of Facts, ¶ 4.) Whether such transfers represent avoidable preferences under section 547 of the Bankruptcy Code or fraudulent conveyances under New Mexico's Uniform Fraudulent Transfer Act and/or Texas' Business & Commercial Code and other applicable state laws are genuine issues of material fact about which the parties disagree. There remain additional important contested factual issues: (1) the actual amount of check 14948, (2) whether the Debtors' payments to Mead via checks 20123 and 20215 comprised improper post-petition transfers, and (3) whether checks 1459 and 14406 cleared within 90 days of the Debtors' chapter 11 filings. Consequently, the Debtors' complaints appear neither frivolous nor objectively unreasonable. *See, e.g., Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.,* 2004 WL 728878, at *3 (S.D.N.Y. Apr.6, 2004)* ("only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable").

**\*5** Next, we find no improper motive in the Debtors' prosecution of the instant adversary proceedings against Mead. The Debtors have pursued similar avoidance actions to recover funds from other creditors. (Obj. & Supp. Brief of Sun Healthcare, ¶ 4.) To the extent that the transfers can be avoided, the monies recovered belong to the estate. Consequently, the Debtors' maintenance of their claims against Mead appears appropriate.

Courts prefer to avoid default judgments and dispose of cases on the merits. *See, e.g., Tozer v. Krause Milling Co.,* 189 F.2d 242, 245 (3d Cir.1951); *In re USN Communications, Inc.,* 288 B.R. 391, 398 (Bankr.D.Del.2003). As a result, we will exercise our discretion under Rule 4(m) and grant the Debtors a short extension of time to serve the complaints.

## IV. *CONCLUSION*

For the foregoing reasons, we grant Mead's motion to vacate the default judgments and deny its motion to dismiss the Debtors' underlying complaints for failure to perfect service within 120 days of filing.

An appropriate Order is attached.

### *ORDER*

AND NOW, this 30th day of April, 2004, upon consideration of defendant Mead's Motion to vacate the default judgments and dismiss the underlying complaints and the Debtors' response, for the reasons set forth in the accompanying Opinion, it is hereby

ORDERED that the Motion to vacate the default judgments is GRANTED; and it is further

ORDERED that the Motion to dismiss the underlying complaints is DENIED.

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)
**(Cite as: 2004 WL 2958698 (D.N.J.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
Joseph O'DONNELL, Individually and t/a Top Glove
Promotions Plaintiff,
v.
Oleg SHALAYEV, Individually and t/a Oleg
Shalayev Promotions, and Nicolai
Valuev, Defendants.
**Civil Action No. 01-4721 (JBS).**

Dec. 22, 2004.
Gregory D. Saputelli, Esq., Obermayer, Rebmann,
Maxwell & Hippel, Cherry Hill, NJ, for Plaintiff.

Patrick Charles English, Esq., Dines & English,
L.L.C., Clifton, NJ, for Defendant Valuev.

*OPINION*

SIMANDLE, District Judge.

**\*1** This is Defendant Nicolai Valuev's motion to
vacate default judgment, entered by the Court on
March 28, 2002 for failure to respond to the Court's
orders requiring Defendants to provide full and
complete accountings to Plaintiff. The principal issue
is whether a mailing of the Complaint by Plaintiff's
counsel to Defendant Valuev's address in the Russian
Federation was sufficient to accomplish service of
process under any method permitted for foreign
service in Rule 4 of the Federal Rules of Civil
Procedure. If it is not, default judgment must be
vacated. For the reasons set forth herein, the motion
is granted and Defendant Valuev is required to serve
an answer within 20 days of entry of the
accompanying Order. [FN1]

> FN1. The Court has subject matter
> jurisdiction over this dispute pursuant to 28
> U.S.C. 1332.

I. BACKGROUND

A. *Underlying Facts*

On October 10, 2001, Plaintiff, Joseph O'Donnell,
individually and t/a Top Glove Promotions, filed a
complaint for damages and injunctive relief against
Defendants Oleg Shalayev, individually and t/a Oleg
Shalayev Promotions, [FN2] and Nicolai Valuev,
[FN3] grounded in several contract-based claims
[FN4] relating to an "Exclusive Representation
Agreement" ("Agreement") with Defendants and
Arseny Berezin. [FN5]

> FN2. The Agreement identifies Shalayev as
> "Manager."

> FN3. Defendant Valuev, a seven foot, two
> inch, 330 pound professional boxer, is the
> former boxing champion of the Pan Asian
> Boxing Association ("PABA") and the
> current number eleven contender in the
> heavyweight division as ranked by the
> World Boxing Association ("WBA").

> FN4. Plaintiff's claims against Defendants
> included: (1) breach of contract; (2) "breach
> of covenant of non-interference and non-
> circumvention"; and (3) breach of fiduciary
> duty. (Complaint at 18-30.) Plaintiff
> additionally brought the following claims
> against Defendant Shalayev; (1) fraud; (2)
> tortious interference with contract; and (3)
> tortious interference with prospective
> economic advantage.

> FN5. These three individuals together
> comprised "The Russian Parties." Berezin,
> referred to in the Agreement as
> "Consultant," terminated his relationship
> with the Russian Parties under the
> Agreement on or about August 18, 2001.
> The final party to the Agreement was
> Guennadi Synkov, O'Donnell's business
> partner. O'Donnell and Synkov together
> comprised "The U.S. Parties."

Pursuant to the Agreement, the U.S. Parties were
given the "exclusive right" to "represent" Valuev in
the United States and around the world, except
Russia, and to "promote and manage fights" on
Valuev's behalf in all countries worldwide, except
Russia, "providing [Valuev] with financial,
management, training and legal support as
necessary." (Agreement at ¶ 3.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 2
Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)
**(Cite as: 2004 WL 2958698 (D.N.J.))**

B. *Facts Relating to Service of Process*

In the section of the Agreement entitled "addresses for legal notices," the U.S. and Russian Parties agreed to use the following address for legal notices to the Russian Parties: "Oleg Shalayev, Koroleva str. 9, apt. 28, St. Petersburg, 197431 Russia." (Agreement at ¶ 13.) Additionally, on March 12, 2001, Berezin sent an e-mail to Synkov including the following address: "Valuev Nikolay Sergeevich St. Petersburg, Krasnoloselsky Rayon, Krasnoye Selo, Ul. Gvardeyskaya 8/2 apt 39." [FN6] (7/20/04 O'Donnell Cert. at ¶ 5.)

> FN6. This is the same address that Valuev listed as his "place of residence" on his Russian Passport application in December 2000. (9/13/04 Supplemental O'Donnell Cert. at 1-2, Exs. A and B.)

In August 2001, Plaintiff sent, via fax, copies of the proposed summons and complaint, translated in Russian, to Shalayev and Valuev. In response, Shalayev faxed to Plaintiff a letter written in Russian. (7/20/04 O'Donnell Cert. at ¶ 12, Ex. G.) The letter is dated "08.23.001" and Plaintiff alleges that it bears the signatures of Shalayev and Valuev. (*Id.*) Valuev denies having signed that letter, accusing Shalayev of forging his signature. (9/04 Valuev Decl. at ¶ 3.) The English translation of the letter reads, in pertinent part: "We have received from you the papers concerning your complaint against me and Nicolay. Since this is a serious matter and requires a competent translation and consultation with experts, we are unable to give you an immediate answer, but we will respond [sic] you within a week." [FN7] (7/20/04 O'Donnell Cert. at ¶ 12, Ex. G.)

> FN7. The translation was included by O'Donnell, and was not part of the facsimile transmission from Shalayev and Valuev.

**\*2** Moreover, on or about August 23, 2001, (which was about seven weeks before the Complaint was filed on October 10, 2001) Shalayev and Valuev allegedly telephoned O'Donnell to discuss the proposed complaint. (*Id.* at ¶ 13.) Synkov also participated in the discussion and served as a translator. (*Id.*) Defendant Valuev admits participating in that telephone discussion (Valuev Decl. at ¶ 5), but asserts that he has "no recollection of speaking with Mr. O'Donnell or Mr. Synkov after August of 2001, and certainly did not discuss any final judgment with either." (*Id.* at ¶ 7 .)

According to Defendant, he has "been contacted by many individuals regarding fighting in the United States and it is possible such a conversation occurred though I have no recollection of one with plaintiff in 2002." (*Id.*)

On September 11, 2001, Plaintiff received a letter from Evgeny Vasilievich Popov, an attorney from St. Petersburg, Russia. Mr. Popov was not at that time a member of the New Jersey Bar. (7/20/04 O'Donnell Cert. at Ex. I.) The letter stated that "I have been retained by Oleg Shalayev and Nikolay Valuev to represent and protect the interests of The Russian Parties in Top Glove Promotions ." (*Id.*) Defendant Valuev, however, maintains that "I never retained anyone, including Evgeny Vasilievich Popov to represent me in this matter. My sole retention has been the recent retention of the firm of Dines and English, L.L.C. to represent me." (4/17/04 Valuev Cert. at ¶ 5.)

On October 10, 2001, the day the complaint was filed, Plaintiff mailed copies of the summons and complaint to Defendant Valuev at "Sergeevich St. Petersburg, Krasnoloselsky Rayon, Krasnoye Selo, Ul. Gvardeyskaya 8/2 apt 39," via DHL Worldwide Express. (7/21/04 Saputelli Cert. at ¶ 3, Ex. B.) The delivery confirmation receipt is dated October 10, 2001, and the accompanying "tracking" report indicates that the delivery was signed for by "OSIPOVA" on October 16, 2001. (*Id.*)

Additionally, on October 10, 2001, Plaintiff sent, via DHL Worldwide Express, copies of the summons and complaint to Shalayev at "Koroleva St. 9, Apt. 28, St. Petersburg, Russia," the address designated by the Agreement for legal notices to the Russian Parties. (7/21/04 Saputelli Cert. at ¶ 3, Ex. A; *see* Agreement at ¶ 13.) According to the DHL tracking report, Shalayev signed for the delivery on October 17, 2001. (7/21/04 Saputelli Cert. at ¶ 3, Ex. A.) Finally, Plaintiff mailed copies of the summons and complaint to Mr. Popov, in Russia, via DHL Worldwide Express. (*Id.* at ¶ 5, Ex. C.) That delivery was signed for on October 12, 2001, by "KUZNETSOVA," Mr. Popov's secretary. (*Id.*)

By handwritten letter, allegedly bearing the signatures of both Shalayev and Valuev, dated "26.10.001," the two defendants acknowledged receipt of the "Complaint." (7/20/04 O'Donnell Cert. at ¶ 18, Ex. L.) On November 8, 2001, the Clerk of the Court received a document written in Russian from Mr. Popov. The Office of the Court Clerk promptly contacted Mr. Popov via email, requesting

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)
(Cite as: 2004 WL 2958698 (D.N.J.))

that he clarify the significance of the submission. Mr. Popov replied that he was the "attorney for defendants" and that the document was the Defendants' "answer." (7/21/04 Saputelli Cert. at ¶¶ 6-8, Ex. D.) The Court Clerk granted the Defendants an additional 30 days in which to translate the answer into English, but Defendants failed to comply within that 30 day period.

**\*3** On February 13, 2002, after oral argument by Plaintiff's counsel, the Court granted Plaintiff's motion to strike Defendants' November 8, 2001 submission, pursuant to <u>Fed.R.Civ.P. 12(f)</u>, and to enter default judgment against Defendants under <u>Fed.R.Civ.P. 55(a)</u> and <u>55(b)</u>. In so ordering, the Court held that "personal jurisdiction over these defendants exists because they were duly served with process, they attempted to respond to these allegations, they've had substantial contacts with the forum state, New Jersey, sufficing for both general jurisdiction and transactional jurisdiction." (2/14/2002 Tr. at 15; 7-11.)

On February 14, 2002, the Court entered an Order granting preliminary injunctive relief in favor of Plaintiff and ordering that Defendants provide an accounting to Plaintiff. On March 26, 2002, a final hearing was held on the default judgment damages. Final judgment was entered on March 28, 2002, in favor of Plaintiff, in the amount of $176,783.04. [FN8] Plaintiff served copies of the Orders of February 13 and 14, 2002, along with certified translations thereof, upon Defendants Valuev and Shalayev and Mr. Popov, via Courier Express Services, Ltd., as per the Court's Order. (7/21/04 Saputelli Cert. at ¶ 12, Ex. J.; 2/14/2002 Order at 4.) On March 30, 2002, a copy of the Final Judgment, as well as a certified Russian translation, was delivered to "St. Petersburg, Krasnoloselsky Rayon, Krasnoye Selo, Ul. Gvardeyskaya 8/2 apt 39." (8/3/04 Saputelli Cert. at ¶ 6, Ex. C.)

> FN8. On September 12, 2002, Plaintiff moved for leave to reopen Final Judgment and to file a first amended complaint. Plaintiff's proposed pleading sought injunctive relief against the original Defendants as well as additional defendants theretofore not joined.
> By letter dated September 12, 2002, the Court advised Plaintiff that <u>Fed.R.Civ.P. 60(b)</u> "does not appear to permit amending pleadings to assert new causes of action against new defendants not previously named." Subsequently, on September 17,

2002, Plaintiff withdrew all motions filed on September 12.

Before the Court is Defendant Valuev's Motion To Vacate Default Judgment and Set Aside Orders, filed July 9, 2004. [FN9]

> FN9. Plaintiff has since moved to amend and/or clarify judgment, seeking to have the Court extend the duration of the Agreement through February 28, 2008 [Docket Item 49]. That motion will be dismissed in light of the Court's setting aside default judgment herein.

## II. DISCUSSION

### A. *Standard of Review*

<u>Rule 55(c) of the Federal Rules of Civil Procedure</u> provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with <u>Rule 60(b)</u>." Pursuant to <u>Fed.R.Civ.P. 60(b)(4)</u>, "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment" if "the judgment is void." A default judgment rendered by a court which lacked personal jurisdiction over the defendant is void. *Pennoyer v. Neff,* 95 U.S. 714, 725-727 (1877). A defendant may challenge the personal jurisdiction of the rendering court by attacking the validity of the service of process. *Stranahan Gear Co. v. NL Indus. Inc.,* 800 F.2d 53, 56-57 (3d Cir.1986). "Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendants with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 699, 701 (1988).

Though the decision to set aside a default judgment is left "primarily to the discretion of the district court," *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir.1984), the Third Circuit mandates that a district court generally must weigh three factors in ruling on a motion to vacate default judgment under <u>Rule 60(b)</u>:
**\*4** (1) whether the plaintiff will be prejudiced if the default is lifted;
(2) whether the defendant has a meritorious defense; and
(3) whether the default was the result of the defendant's culpable conduct.
*Emcasco Insurance Co. v. Sambrick,* 834 F.2d 71, 73 (3d Cir.1987); *Gold Kist, Inc. v. Laurinburg Oil*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Co.,* 756 F.2d 14, 19 (3d Cir.1985); *Mettle v. First Union Nat'l Bank,* 279 F.Supp.2d 598, 601 (D.N.J.2003).

However, since "[a] default judgment entered when there has been no proper service of the complaint is, *a fortiori,* void, and should be set aside," *Gold Kist,* 756 F.2d at 19 (citing Fed.R.Civ.P. 60(b)(4)), in such instances, the district court need not resort to an analysis of the three factors listed above. *Gold Kist,* 756 F.2d at 19.; *Mettle,* 279 F.Supp.2d at 603 n. 3 ("As this Court finds that entry of default against [defendant] is void based on the improper service of the summons and complaint, the Court need not consider the factors set forth in *Gold Kist.*" (citing *Gold Kist,* 756 F.2d at 19)).

B. *Defendant's Motion to Vacate*

Defendant Valuev seeks to have the Court set aside default judgment pursuant to Fed.R.Civ.P. 60(b)(4). [FN10] (Def.'s Br. at 3.) Valuev contends that service of process was never properly effectuated pursuant to Fed.R.Civ.P. 4(f), thereby preventing the Court from obtaining personal jurisdiction over Defendant. (*Id.* at 3-6.) Defendant is correct. Default judgment must be vacated.

> FN10. Defendant additionally cites Fed.R.Civ.P. 60(b)(6), providing that upon motion a court may relieve a party from default judgment for "any other reason justifying relief from the operation of the judgment," in support of the proposition that "Mr. Valuev does, indeed, have [sic] valid defense." (Def.'s Br. at 6.)
> "Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case. At the same time, however, that Rule does not confer upon the district courts a *standardless* residual discretionary power to set aside judgments. In particular, Rule 60(b)(6) is available only in cases evidencing extraordinary circumstances. In addition, courts must be guided by the well established principle that a motion under Rule 60(b) may not be used as a substitute for appeal." *Martinez-McBean v. Gov't of the Virgin Islands,* 562 F.2d 908, 911 (3d Cir.1977) (internal citations omitted).
> A meritorious defense is only one factor to be considered by the Court in deciding a motion under 60(b)(6) and, by itself, will not amount to "extraordinary circumstances" warranting vacating default judgment.

*Sambrick,* 834 F.2d at 73. Accordingly, the merits of Valuev's arguments are discussed in turn below.

(i) *Timeliness of Defendant's Motion*

Rule 60(b) provides that a motion to vacate default judgment "shall be made within a reasonable time." Fed.R.Civ.P. 60(b). Despite this mandate, however, the Third Circuit has joined the "nearly overwhelming authority" supporting the proposition that "laches is not available to preclude a claimant from attacking a void judgment" under Rule 60(b)(4). *One Toshiba Color Television,* 213 F.3d at 158 (collecting cases). Indeed, "no passage of time can transmute a nullity into a binding judgment, and hence there is no time limit for such a motion." *United States v. One Toshiba Color Television,* 213 F.3d 147, 157 (3d Cir.2000) (en banc).

"It is in the pursuit of his remedies that [the moving party's] delay, if any, will become an issue." *Id.* Thus, for example, where default judgment has been entered in a civil forfeiture proceeding and judgment has been satisfied, petitioner's delay in bringing a motion to vacate for defective service of process may not preclude the court from setting aside judgment, though it may be grounds for denying petitioner actual return of property. *Id.; United States v. $119,980.00,* 680 F.2d 106, 107-08 (11th Cir.1982) (holding Rule 60(b) may not be used to impose affirmative relief beyond vacating prior judgment).

Where, though, the relief sought is limited to the motion to vacate, as it is here, the inquiry necessarily ends where it begins. Accordingly, Defendant Valuev was not bound by any time constraints in challenging the Court's default judgment as void. *Id.; Shenouda v. Menhanna,* 203 F.R.D. 166, 169 (D.N.J.2001) (holding motion to vacate under Fed.R.Civ.P. 60(b)(4) timely despite being made almost five years after the court's entry of default judgment). Thus, the instant motion is timely.

(ii) *Personal Jurisdiction and Service of Process*

*5 As the discussion below details, the Court has personal jurisdiction over Defendant Valuev.

[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution. In New Jersey,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)
(Cite as: 2004 WL 2958698 (D.N.J.))

this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process....

Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation. Physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant. Instead, the plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state, or otherwise purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir.1998) (internal citations omitted).

As explained in the Court's Oral Opinion of February 13, 2002, there is both general and specific jurisdiction over Defendant Valuev in this case. First, general jurisdiction was satisfied because at the time default judgment was entered there were continuous ongoing contacts for at least one year by Mr. Valuev with New Jersey. At the very least, there was a training camp in Vineland and a prize fight in Atlantic City, both located within the District of New Jersey.

Even if there were not general jurisdiction over Mr. Valuev, the Court finds that there was specific jurisdiction.

In order for specific jurisdiction to be properly exercised under the Due Process Clause, the plaintiff must satisfy a two-part test. First, the plaintiff must show that the defendant has constitutionally sufficient "minimum contacts" with the forum. Second, for jurisdiction to be exercised the court must determine, in its discretion, that to do so would comport with "traditional notions of fair play and substantial justice."

*IMO Industries*, 155 F.3d at 259 (internal citations omitted). Both prongs are satisfied here. Specifically, the subject matter of Plaintiff's complaint was the Exclusive Representation Agreement to which Defendant Valuev was a party. The Agreement pertains to services that have been rendered by Mr. Valuev as a boxer in the District of New Jersey. As such, it does not offend "traditional notions of fair play and substantial justice" that Mr. Valuev would be hailed into a New Jersey court to address the charges against him.

(iii) *Means of Service of Process*

"[N]otice, though necessary, is not sufficient to effect service.... Although notice underpins Federal Rule of Civil Procedure 4 concerning service, notice cannot by itself validate an otherwise defective service. Proper service is still a prerequisite to personal jurisdiction. Inquiry into the propriety of service is separate from, and in addition to, the due process concerns present in an inquiry into the notice itself." *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir.1993).

(a) *Service on Foreign Defendant and the Hague Service Convention*

*6 Under Rule 4(f)(1) of the Federal Rules of Civil Procedure, service upon an individual in a foreign country may be effectuated "by any internationally agreed means reasonably calculated to give notice, such as the Hague Convention on the Service of Judicial and Extrajudicial Documents."

The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. The Convention revised parts of the Hague Conventions of 1905 and 1954. The revision was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad.

*Schlunk*, 486 U.S. at 698 (1988). The Convention, as a ratified treaty, is the supreme law of the land and maintains controlling effect. *See* U.S. Const. Art. VI, cl. 2; *Jennings v. Boenning & Co.*, 482 F.2d 1128, 1132 n. 1 (3d Cir.1973); *EOI Corp. v. Medical Marketing Ltd.*, 172 F.R.D. 133, 135 (D.N.J.1997).

The Hague Service Convention was entered into force for the United States on February 10, 1969 and for the Russian Federation on December 1, 2001. Plaintiff's Complaint was filed on October 10, 2001 and, thus, the terms of the Convention would not have governed service of original process attempted on that date.

(b) *Service Under the Federal Rules*

In the absence of an internationally agreed means of service, service may be effectuated "by delivery to the individual personally of a copy of the summons and the complaint," so long as service is "reasonably calculated to give notice" and is not prohibited by the law of the foreign country. Fed.R.Civ.P. 4(f)(2)(C)(i).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)
(Cite as: 2004 WL 2958698 (D.N.J.))

Plaintiff here does not allege to have attempted service under this provision.

In the alternative, service under Rule 4(f)(2)(C)(ii) may be made by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served...." Fed.R.Civ.P. 4(f)(2)(C)(ii). As the discussion below explains, service in this manner was likewise not accomplished.

(1) *Service on Valuev Individually*

Plaintiff here argues that service on Defendant Valuev by ordinary mail to Valuev's place of residence in Russia was sufficient to satisfy the requirements of Rule 4. This contention is erroneous. [FN11] Under Rule 4(f)(2)(C)(ii), service by mail to a foreign defendant is improper if addressed and dispatched by the plaintiff rather than by the clerk of the court. Additionally, the Rule requires a signed receipt. The Advisory Committee Note to former Rule 4(i)(D)(1), now Rule 4(f)(2)(C)(ii), indicates that these "additional safeguards"--a signed receipt and the processing of papers by the court clerk--are intended to insure delivery, especially "since the reliability of postal service may vary from country to country...." Advisory Committee Note to former Fed.R.Civ.P. 4(i)(D)(1). By failing to satisfy the technical requirements of the Rule, Plaintiff was unsuccessful in his attempt to properly serve Defendant by mail.

> FN11. Under Fed.R.Civ.P. 4(f)(3), a court may in some instances specially authorize service of process by ordinary mail. *Levin v. Ruby Trading Corp.,* 248 F.Supp. 537 (S.D.N.Y.1965). The Court did not do so here.

(2) *Service on Valuev's Agent*

*7 Plaintiff also attempted to serve Mr. Shalayev in Russia by ordinary mail to the agreed upon address. At that time, Shalayev arguably was acting as Valuev's agent. (*See* 9/30/04 Valuev Cert. ¶¶ 3,4 and 7.) Indeed, the Agreement explicitly identified Shalayev's address as that to which "legal notices" would be served on the Russian Parties. Whether Shalayev was indeed Valuev's agent for purposes of service of process, though, is of no import here; even if Shalayev were authorized to receive service of process on Valuev's behalf, any attempt by Plaintiff to do so was insufficient under the Federal Rules.

Service by delivery to a "individual personally" does not include service upon that individual's agent. *See* Fed.R.Civ.P. 4(e)(2) (distinguishing between service "to the individual personally" and service "to an agent authorized by appointment or by law to receive service of process"). To be sure, the Federal Rules of Civil Procedure do authorize, in other instances, service upon agents. *See* Fed.R.Civ.P. 4(e)(2) (authorizing service upon individuals within a judicial district of the United States "by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process"); Fed.R.Civ.P. 4(h)(1) (permitting service upon corporations and associations by delivering a copy of the summons or complaint to a "general agent" or "to any other agent authorized by appointment or by law to receive service of process"). Rule 4(f), however, governing service upon individuals in a foreign country, does not authorize service by such means, perhaps recognizing the difficulty inherent in determining whether a foreign entity was in fact a duly appointed agent for accepting service of process in the foreign country. In any event, even if service on an agent were permissible under Fed.R.Civ.P. 4(f), it would have to be effectuated through the agent in the same manner as on the party himself--either personally under Rule 4(f)(2)(C)(i), or by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served," Fed.R.Civ.P. (4)(f)(2)(C)(ii). Once again, neither requirement was satisfied here. As such, service on Shalayev, as Defendant Valuev's agent, was likewise insufficient to constitute service on Valuev.

By failing to comply with the requirements of the Federal Rules of Civil Procedure, Plaintiff failed to properly serve Defendant with notice of the proceedings against him. [FN12] Because service was improper, the Court lacked personal jurisdiction over Mr. Valuev. And, as noted above, a default judgment rendered by a court which lacked personal jurisdiction over the defendant is void. *Pennoyer v. Neff,* 95 U.S. at 725-727. [FN13]

> FN12. Even if the address to which service by ordinary mail was attempted to Mr. Valuev was his actual place of residence (a disputable proposition as discussed in detail below), thereby affording Defendant actual notice of the pendency of the proceedings, the Court's conclusion would remain the same. Indeed, as noted *supra,* "notice cannot by itself validate an otherwise defective service." *Grand Entertainment Group,* 988

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)
(Cite as: 2004 WL 2958698 (D.N.J.))

F.2d at 492. "A district court's power to assert in personam authority over parties defendant is dependant not only on compliance with due process *but also on compliance with the technicalities of Rule 4.*" *Id.* (emphasis added).

FN13. "A void judgment is no judgment at all," *Shenouda*, 203 F . R.D. at 169, and, therefore, "no passage of time can render a void judgment valid." *One Toshiba Color Television*, 213 F.3d at 157. Thus, that the default judgment was issued roughly two and one half years ago is not relevant to the Court's determination of this issue.

## C. *Additional Factors to Be Considered by the Court*

Having determined that default judgment entered against Defendant Valuev is void, the Court is not required to additionally consider the three factors enumerated in *Emcasco*. [FN14] *Gold Kist*, 756 F.2d at 19 (citing Fed.R.Civ.P. 60(b)(4)); *Mettle*, 279 F.Supp.2d at 603 n. 3; *Shenouda*, 203 F.R.D. at 171 (concluding a 60(b)(4) analysis upon a determination that default judgment was void because service of process was defective). In any event, as the following discussion illustrates, those factors also militate in favor of setting aside default judgment. *Contra Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 920 (3d Cir.1992) ("It is not necessary that all the factors point toward a default before the sanction will be upheld.")

FN14. Again, those factors are: (1) whether the plaintiff will be prejudiced if the default is lifted; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. *Emcasco Insurance*, 834 F.2d at 73.

## (i) *Prejudice to Plaintiff*

**\*8** Plaintiff here has failed to identify, both in its numerous written submissions and before the Court at oral argument on September 20, 2004, any prejudice that may befall Mr. O'Donnell if the Court were to vacate default judgment under Rule 60(b). The only potential prejudice that the Court can identify is the waste of time and money that Plaintiff will incur in awaiting Defendant's response and in addressing Defendant's default. These expenses, however, are curable by requiring Defendant to reimburse Plaintiff for reasonable costs and fees.

### (ii) *Existence of A Meritorious Defense*

Defendant alleges that the Agreement violates the Professional Boxing Safety Act ("Muhammad Ali Boxing Reform Act" or "Act"), 15 U.S.C. § 6301 *et seq.*, and, thus, is void. Additionally, Defendant claims the Agreement is invalid under Nevada law. The Court is inclined to agree with these conclusions.

### (a) *Muhammad Ali Boxing Reform Act*

Pursuant to 15 U.S.C. § 6308(b)(1), entitled "firewall between promoters and managers," "it is unlawful for a promoter to have a direct or indirect financial interest in the management of a boxer" or for "a manager to have a direct or indirect financial interest in the promotion of a boxer." [FN15] For reasons now explained, as to boxing matches conducted in the United States, the Agreement violates that provision. [FN16]

FN15. The Act defines "manager" to mean "a person who receives compensation for service as an agent or representative of a boxer," and "promoter" as "the person primarily responsible for organizing, promoting, and producing a professional boxing match." 15 U.S.C. § 6301(5) and (9).

FN16. The Act is not applicable to that part of the Agreement governing boxing matches conducted outside of the United States, as the Act exclusively governs matches held in this country. *See* 15 U.S.C. § 6301(8) (defining "professional boxing match" as "a boxing contest *held in the United States"* ) (emphasis added).

The explicit purpose of the Exclusive Representation Agreement at issue here was for the U.S. Parties and the Russian Parties "to act ... as a single management and promotional unit to" *inter alia,* "promote [Valuev's] fights in the U.S.A. and worldwide." (Agreement at ¶ 1.) Moreover, the Agreement purports to "grant to the U.S. Parties an exclusive right to *represent* [Valuev] in the United States and worldwide, except Russia, to promote and *manage* fights in the United States and worldwide, except Russia on behalf of [Valuev], providing him with financial, management, training and legal support as necessary." (*Id.* at ¶ 3 (emphasis added).); *see* 15 U.S.C. § 6301(5) (defining "manager" as "a person who receives compensation for service as an agent or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 8
Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)
(Cite as: 2004 WL 2958698 (D.N.J.))

*representative* of a boxer") (emphasis added).

Furthermore, the Agreement states that "[t]he U.S. Parties will designate its representatives to act as *co-managers*" so long as Shalayev gives his consent on decisions relating to choice of opponents and venues, training schedules and routines, and financial arrangement of fights. (Agreement at ¶ 4.2 (emphasis added).)

Despite the paucity of case law throughout the nation interpreting the Muhammad Ali Boxing Reform Act, the language and stated purpose of the statute seem to contemplate (and prohibit) agreements such as the one here.

(b) *Nevada Law* [FN17]

>    FN17. The Agreement contains a choice-of-law provision in favor of Nevada law. The Court here must apply New Jersey choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 497 (1941); *Echols v. Pelullo,* 2004 WL 1699050, at *2 (3d Cir.2004).* New Jersey courts will generally enforce choice-of-law provisions in contracts provided that the chosen law does not offend the public policies of New Jersey and the contract bears some "reasonable relation" to the chosen jurisdiction. *Pepe v. Rival,* 85 F.Supp.2d 349, 381-82 (D.N.J.1999); *Instructional Systems, Inc. v. Computer Curriculum Corp.,* 614 A.2d 124, 133 (N.J .1992).
>    The public policy of the State of Nevada is consistent with that of New Jersey. *Compare* N.J.S.A. 5:2A-2 *with* Nev. Admin. Code 41 § 467.010 *et seq. and* 41 § § 467.012, 467.015, 467.018 (creating a medical advisory board to oversee and regulate the physical and mental fitness of boxers within the state). Moreover, although neither party discusses whether the contract bears any "reasonable relation" to the chosen jurisdiction, the Agreement states that the parties "intend to establish a promotional company in the USA as a limited liability company to be registered in Las Vegas, Nevada...." (Agreement at ¶ 2.4.)

Defendant additionally argues that the Agreement violates Nev. Admin. Code41 § 467.104 which provides that "an unarmed combatant [FN18] may not have a promoter or any of its members, stockholders, officials, matchmakers or assistant

matchmakers act directly or indirectly as his manager." [FN19] For the reasons expressed *infra,* the express terms of the Agreement contravene this prohibition. *See* Section II.C.ii.a. Additionally, section 467.104 states that "[a]n unarmed combatant may not have a promoter or any of its members, stockholders, officials, matchmakers or assistant matchmakers ... hold any financial interest in his management or his earnings from contests or exhibitions." Nev. Admin. Code 41 § 467.104. This language directly implicates paragraph 7.1 of the Agreement, stating that "The Russian Parties and the U.S. Parties agree that they shall share all net proceeds of any fight revenues, including the purse...."

>    FN18. As defined by Nev. Admin. Code § § 467.0037 and 467.0039, this includes a professional boxer.

>    FN19. In addition, though neither party addresses the point, the Court notes that the "Exclusive Representation Agreement" likely violates Nevada Administrative Code § 467.112. That provision states that "[a] bout agreement which provides that an unarmed combatant must fight exclusively for one promoter or at the option of the promoter is prohibited." The term "bout agreement" is not explicitly defined by the statute, though, it means something distinct from promotional agreement. *See* Devin Burstein, Esq., *The Muhammad Ali Boxing Reform Act: Its Problems and remedies, Including the Possibility of a United States Boxing Administration,* 21 Cardozo Arts & Ent. L.J. 433, 441 (2003). In any event, the statute would seem to be implicated where, as here, the promotional agreement grants the "promoter" the "exclusive right ... to promote ... fights in the United States and worldwide...." (Agreement at ¶ 3.) *See* Jeffrey S. Fried, Esq., *The Sweet Science, Legally Speaking (Professional Boxing),* 14 J. Legal Aspects of Sport 75, 84 n. 3 (2004) (noting that Section 467.112(2) of the Nevada Administrative Code prohibits "exclusive" promotional agreements). However, as this issue has not been briefed or argued by either party, and as its resolution does not change the outcome here, further discussion may properly be reserved for another day.

*9 For these reasons, the Court holds that the

Agreement likely violates Nev. Admin. Code 41 § 467.104. [FN20]

> FN20. Defendant additionally argues that under common law contract principles the Agreement is indefinite and, therefore, void. Specifically, Defendant contends that because the Agreement allocates 50% of the net proceeds to the Russian Parties, "[t]here is absolutely no way one can determine from the document what Mr. Valuev's purse would be for any bout...." (Def.'s Br. at 9.) This argument is without merit.
>
> In Nevada, as in most jurisdictions, "[a] contract, to be enforceable, must be sufficiently definite." Chung v. Atwell, 745 P.2d 370, 371 (Nev.1987) (citing Restatement (Second) of Contracts § 33 (1981)). "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." Restatement (Second) Contracts § 33(2); see Chung, 745 P.2d at 371 (citing Restatement with approval). However, with contracts for the rendition of services, "one party may be given power to fix the price within limits set by agreement or custom or good faith." Restatement (Second) Contracts § 33(2) cmt. e. For these reasons, Valuev's "indefiniteness" defense is meritless.

(iii) *Defendant's Culpable Conduct*

It is well settled that "the party in default must show that the default was not caused by his own culpable conduct in order to have it set aside." *Emcasco Insurance Co.*, 834 F.2d at 73; *Admiral Home Appliances v. Tenavision, Inc.*, 735 F.2d 1347 (D.N.J.1982). Plaintiff argues that "Valuev's utter disregard of the lawsuit and the mandates of the Final Judgment for well over two years, constitutes arrogance and complete disregard of the consequences of such conduct. Valuev is obviously moving to vacate the Judgment at this late date simply because the Judgment interferes in his new plans." (Pl.'s Br. at 32.) Specifically, Plaintiff alleges that Defendant Valuev has recently signed a promotional agreement with a German promoter, Wilfried Sauerland, and has fought (and will continue to fight) under Sauerland's promotion. (Pl.'s Br. at 17 ¶ ¶ 34-38, Ex. R.) The Court determines that these reasons for denying Defendant's motion are insufficient in light of the particulars of this case.

To begin with, Defendant Valuev does not speak, read nor write English. (9/30/04 Valuev Cert. at ¶ 14; 4/17/04 Valuev Cert.) All knowledge that Mr. Valuev had regarding the specifics of the proceedings against him were communicated to him by Mr. Shalayev. [FN21] Indeed, it was Mr. Shalayev who first informed Mr. Valuev, sometime in the second half of 2002, of the judgment entered against him by this Court on March 28, 2002. (Id. at ¶ 4.) Based on Mr. Shalayev's communications with Defendant, Mr. Valuev was either unaware of, or unable to comprehend, the terms of the judgment. (Id. at ¶ ¶ 4-8.) In fact, Mr. Valuev maintains that he only learned the full terms of the final judgment after he severed ties with Shalayev sometime in 2003. [FN22]

> FN21. Mr. Shalayev was handling all of Mr. Valuev's business affairs from the time the action was commenced through entry of default judgment. (9/30/04 Valuev Cert. at ¶ 3.)
>
> FN22. More specifically, Valuev first learned of the terms of the judgment when his current promoter received a letter from Mr. O'Donnell, dated September 19, 2003. (7/20/04 O'Donnell Cert., Ex. Q.)

Plaintiff, though, alleges that copies of the summons and complaint were sent to Defendant Valuev at his permanent address in Russia--the same address that Defendant listed as his permanent residence on his Russian Passport application, and the same address provided by Berezin in an e-mail to Synkov (7/20/04 O'Donnell Cert. at ¶ 5; 9/13/04 Supplemental O'Donnell Cert. at 1-2, Exs. A and B.) Defendant maintains that he has not lived at that address for at least several years. (4/17/04 Valuev Cert. at ¶ 4; 9/04 Valuev Decl. at ¶ 2.) In support of that contention, Defendant has explained to the Court that

> in Russia the address at which one is registered is not necessarily the address at which one lives. The Guardeyska address was the address of my father and mother where I was brought up. When my surviving parent dies, the registration means that I will have a right to claim ownership rights to the apartment. I do not, however, live there.

(9/30/04 Valuev Cert. at ¶ 11.) Plaintiff does not dispute this characterization of Russian property law. As courts are entitled to consider such evidence in determining foreign law, Fed.R.Civ.P. 44.1, the Court accepts Mr. Valuev's representations, at least for purposes of the instant motion.

*10 Having not received notice of the pendency of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)
**(Cite as: 2004 WL 2958698 (D.N.J.))**

the proceedings against him, Mr. Valuev relied on the accuracy of Mr. Shalayev's representations regarding the terms of the Court's final judgment and order. That Mr. Shalayev's interests may not have been aligned with Mr. Valuev's only bolsters the veracity of the contention that Defendant did not learn the full terms of default judgment from Mr. Shalayev. Thus, just as Defendant suggested to this Court at oral argument, even if Shalayev did receive copies of the summons and complaint in this action, he in all likelihood never forwarded it along to Defendant Valuev. [FN23]

> FN23. Additionally, Defendant represented to the Court at oral argument that on multiple occasions Shalayev fraudulently signed Valuev's name to documents. (*See also* 9/04 Valuev Decl. at ¶ 3.)

For the reasons just explained, the Court is uncomfortable attributing the delay in filing this motion to Mr. Valuev. Indeed, once Valuev learned of the specifics of the judgment against him, he retained counsel within a relatively short period of time. [FN24] In sum, the default was not caused by Defendant's culpable conduct. [FN25]

> FN24. In another context, the Court might be reluctant to find that a period of several months constituted a reasonably short period of time. Here, though, in light of Mr. Valuev's limited resources at the time, Defendant was not in a position to immediately retain counsel in the United States. (9/30/04 Valuev Decl. at ¶¶ 8, 14 .)

> FN25. This determination, by itself, does not resolve the question of whether the instant motion was made "within a reasonable time." Fed.R.Civ.P. 60(b). Indeed, the motion to vacate default judgment was not made until, at the very minimum, four months after Defendant retained counsel. This delay has not been explained by Defense counsel. To be sure, defense counsel has certified to the Court that Plaintiff did not immediately respond to the inquiries he directed to Plaintiff on March 12, 2004, almost two years after the case had been closed. (7/7/04 English Cert. at ¶¶ 2-4.) Even if this Court were to give Defendant the benefit of the doubt as to this added delay, the instant motion still would not have been filed until three months after Plaintiff responded to Defense counsel's

inquiries. Nonetheless, in light of the Court's determinations as to the first two factors of the three-prong test--lack of prejudice to Plaintiff and existence of Defendant's meritorious defense-the Court holds that the motion should be granted. *$55,518.05 in U.S. Currency,* 728 F.2d at 195 (holding doubtful cases should be resolved in favor of setting aside the default judgment); *Hoxworth,* 980 F.2d at 920 ("It is not necessary that all the factors point toward a default before the sanction will be upheld.")

III. CONCLUSION

For the foregoing reasons, Defendant Valuev's motion to vacate default judgment pursuant to Fed.R.Civ.P. 60(b)(4) is granted and Defendant will be directed to answer Plaintiff's complaint within 20 days. The accompanying Order is entered.

*ORDER TO VACATE DEFAULT JUDGMENT AND TO ANSWER*
This matter came before the Court upon motion by Defendant Valuev to vacate default judgment entered by the Court on March 28, 2002 for failure to respond to the Court's orders requiring Defendants to provide full and complete accountings to Plaintiff; and

The Court having considered the written submissions and having heard oral argument on September 20, 2004; and

For the reasons expressed in the Opinion of today's date;

IT IS this *22nd* day of December 2004 hereby

ORDERED that the motion to vacate default judgment under Fed.R.Civ.P. 60(b)(4) by Defendant Valuev is *GRANTED;* and

IT IS FURTHER ORDERED that Defendant Valuev shall answer Plaintiff's complaint within 20 days from today; and

IT IS FURTHER ORDERED that Plaintiff's motion to amend and/or clarify the default judgment [Docket Item 49] is dismissed as moot.

2005819703

Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)

Not Reported in F.Supp.2d                                                    Page 11
Not Reported in F.Supp.2d, 2004 WL 2958698 (D.N.J.)
**(Cite as: 2004 WL 2958698 (D.N.J.))**

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV04721 (Docket) (Oct. 10, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                                         Page 1
Not Reported in F.Supp., 1990 WL 50568 (E.D.Pa.)
**(Cite as: 1990 WL 50568 (E.D.Pa.))**

**C**
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
LIGHT AND SOUND SPECIALTIES, INC.
v.
VUE-MORE MANUFACTURING CO.
**CIV. A. No. 88-7372.**

April 18, 1990.
Michael P. Abbott, Roberta Jacobs-Meadway,
Teresa M. Hechmer, Panitch Schwarze Jacobs &
Nadel, Philadelphia, Pa., for plaintiff.

Vue-More Manufacturing Co., pro. se.

MEMORANDUM OPINION AND ORDER

WEINER, Senior District Judge.

**\*1** Plaintiff, Light and Sound Specialties, Inc. filed
its complaint in this matter on September 3, 1988 and
took a default judgment on November 7, 1988.
Presently before the court is a motion by the
defendant Vue-More Manufacturing Co. to set aside
the default. The defendant argues that service was
incomplete, and that this court has no personal
jurisdiction over it. For the reasons which follow, the
motion is granted.

Vue-More is a New Jersey corporation, with its
principle place of business in New Jersey. The
complaint against it alleges violation of a trade mark,
owned by the plaintiff, on the term "spinner" to
denote a device used to rotate a mirror ball or other
suspended item. Service of the complaint was made
by registered mail, pursuant to Fed. R. Civ. P.
4(c)(2)(c). [FN1] By affidavit of its principle, Vue-
More states it did not sign or return the
acknowledgment, accompanying the service. It
further contends that it does all of its business from
New Jersey and has no "physical" contacts with
Pennsylvania. However, the bulk of its business is by
catalog sale. It maintains a mailing list of some 5,000
names, approximately 200 of whom, it concedes, are
located in Pennsylvania. Approximately 6% of its
actual customers are located in Pennsylvania.

FN1. Rule 4(c)(2)(C) provides in relevant
part:

(C) A summons and complaint may be
served upon a defendant . . .
(i) pursuant to the law of the State in which
the district court is held for the service of
summons or other like process upon such
defendant in an action brought in the courts
of general jurisdiction of that State, or
(ii) by mailing a copy of the summons and
of the complaint (by first-class mail, postage
prepaid) to the person to be served, together
with two copies of a notice and
acknowledgment . . . . If no
acknowledgment of service under this
subdivision of this rule is received by the
sender within 20 days after the date of
mailing, service of such summons and
complaint shall be made under subparagraph
(A) or (B) of this paragraph in the manner
prescribed by subdivision (d)(1) or (d)(3).

Propriety of service upon the defendant.

The defendant argues that service was improper
because 1.) the plaintiff did not meet the specific
requirement of Rule 4(c)(2)(C)(ii) that it provide two
copies of the acknowledgment; and, 2.) as Vue-More
did not consent to the service by mail by returning
the acknowledgment, the plaintiff was required to
reserve the pleadings as provided by the Rule, which
it did not do. The plaintiff concedes its service was
not in conformity with subdivision (ii) of the Rule,
but counters by arguing that its service was adequate
under subdivision (i) of the Rule. Subdivision (i)
provides for service in accordance with state
procedure. Plaintiff draws our attention to Rule 403
of the Pennsylvania Rules of Civil Procedure, which
provides
If a rule of civil procedure authorizes original
process to be served by mail, a copy of the process
shall be mailed to the defendant by any form of
mail requiring a receipt signed by the defendant or
his authorized agent. Service is complete upon
delivery of the mail.
**\*2** Under this rule of state procedure it argues, the
signing of the Postal Service's return receipt by the
defendant's agent, effectuated service. This argument
would be valid but for the fact that Pennsylvania does
not permit original process to be served by mail upon
a corporation.

Pennsylvania Rule of Civil Procedure 424,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 50568 (E.D.Pa.)
(Cite as: 1990 WL 50568 (E.D.Pa.))

Page 2

apparently overlooked by the parties, provides that

> Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action:
>
> (1) an executive officer, partner or trustee of the corporation or similar entity, or
>
> (2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or
>
> (3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

(emphasis added). On the face of Rule 424, plaintiff failed to properly serve the defendant under the applicable state rule for service of process.

We note that one case decided by the Pennsylvania Superior Court has given Rule 424 a completely different construction. In Reichert v. TRW, Inc., 561 A.2d 745 (Pa. Super. 1989), the court, faced with the same situation, determined that the Pennsylvania Supreme Court could not possible have intended an interpretation of Rule 424, limiting service upon corporations to hand delivery. Reviewing the predecessor rules for service upon corporations, the Superior Court held that the drafters of Rule 424 must have intended that the Rule be simply a list of who hand delivery should be made upon, if the hand delivery option were chosen for service. We cannot agree with this interpretation.

First, the Superior Court ignores the actual words used by the drafters of Rule 424 that service of original process "shall be made" by hand delivery. By contrast, Rule 423, governing service upon partnerships and unincorporated entities states "service . . . shall be made upon any of the following persons", without specifying the appropriate method for service. Rule 423, therefore can come within the catch-all service provisions of Rule 403, because there is no provision prohibiting service by mail. It is clear to us that the words of Rule 424 take service upon corporations out of the ambit of Rule 403 because service by mail is clearly not authorized.

Second, we cannot agree with the Superior Court's discussion of the relationship between Rule 424 and Rule 404, governing service outside the Commonwealth. Rule 404 is a general rule, providing for service by mail. Rule 424 is a specific rule governing service upon corporations. The trial court in Reichert had determined, as we, that a specific rule is to be given effect over a general one. See Pa.R.C.P. 132 (where conflict between two provisions is

irreconcilable, the particular provision prevails over the general one). The Superior Court avoided application of this rule of construction by its finding that Rules 404 and 424, as construed, are not in conflict. As we reject the court's construction that Rule 424 permits service by mail, so to we must reject its conclusion that the Rules are harmonious. Rather we find the Rules are in conflict, requiring the more specific provision regarding corporations to prevail over the more general rule regarding extra-territorial service.

*3 Third, the equities of this case, we find militate toward a finding that service was not complete. Plaintiff was forced to make recourse to the state rules because it admits it did not comply with the federal rule. [FN2] The purpose of the acknowledgment contemplated by Fed. R. Civ. P. 4(c)(2)(C)(ii) is to ensure there is no question but that the defendant has actual notice of the pending lawsuit, if initial service is by mail. The Superior Court's construction of Rule 424 removes this guarantee, as regards corporations. Unlike the Superior Court, we can see wisdom in the apparent exception created for corporations. If service upon them was permitted merely by registered mail, with no other device to ensure acknowledgment of the seriousness of what is received, there is nothing to guarantee that those in need of knowing that the corporation has been sued will ever receive actual notice of the lawsuit.

> FN2. The inclusion of the one copy of the acknowledgment form indicates that plaintiff's intent was to effect service under the federal rules, rather than the state rules.

Our concerns regarding the validity of service under the Pennsylvania rule, are but another factor to be coupled with the strong policy concern of the courts of this circuit favoring adjudication of claims on their merits, rather than on procedural points, see Zawadski De Bueno v. Bueno Castro, 822 F.2d 416, 420, (3d Cir. 1987) (default judgments are generally disfavored and in a close case, doubts should be resolved in favor of setting aside default and reaching the merits). In Zawadski, the court repeated the three factors we must apply in determining whether to grant relief from a default. We must consider: 1.) whether the plaintiff will be prejudiced if the default is lifted; 2.) whether the defendant has a meritorious defense; and 3.) whether the default was the result of the defendant's culpable conduct. Id. at 419-420.

This plaintiff, as with all plaintiffs facing the loss of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 3
Not Reported in F.Supp., 1990 WL 50568 (E.D.Pa.)
**(Cite as: 1990 WL 50568 (E.D.Pa.))**

default judgment, will be prejudiced by having to prove its case, rather than moving directly to the execution stage. This prejudice, however, is not overriding. The papers filed by the defendant in connection with this motion demonstrate that it can put on a meritorious defense. [FN3] Finally, we find the default was not the result of the defendant's culpable conduct. While it determined not to return the acknowledgment, it was within its rights not to if it was willing to incur the cost associated with requiring the plaintiff to reserve the complaint.

> FN3. The court, of course, takes no position on the validity of the asserted defenses for any other purpose but the instant discussion.

For the reasons we have stated, the entry and judgment of default will be vacated.

### ORDER

The motion of the defendant Vue-More Manufacturing Co. to set aside the entry of default and default judgment is GRANTED.

The entry of default and the judgment of default entered by the court are SET ASIDE.

*4 Defendant Vue-More Manufacturing Co. shall file a responsive pleading to the plaintiff's complaint within twenty (20) days of the date of this order.

Trial in this matter shall commence on Monday, June 11, 1990 at 9:00 a.m. in Courtroom 6B, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

IT IS SO ORDERED.

Not Reported in F.Supp., 1990 WL 50568 (E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.