

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)
**(Cite as: 2004 WL 2435290 (D.Del.))**

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Kirk ALBERTSON, Plaintiff,
v.
WINNER AUTOMOTIVE, et al., Defendants.
**No. Civ.A. 01-116KAJ.**

Oct. 27, 2004.

Richard R. Wier, Jr., and Daniel W. Scialpi, Richard R. Wier, Jr., P.A., Wilmington, Delaware, for Plaintiff.

R. Stokes Nolte, Nolte & Brodoway, P.A., Wilmington, Delaware, for Defendant.

MEMORANDUM OPINION

JORDAN, J.

I. INTRODUCTION

*1 This is the conclusion of an employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. Presently before me are two motions. The first is a Motion to Vacate Judgment pursuant to Federal Rule of Civil Procedure 60(b), filed by defendant Winner Automotive, et al . ("Winner"). (Docket Item ["D.I."] 58; the "Motion to Vacate.") The second is a Motion for Costs Including Attorneys' Fees pursuant to Federal Rule of Civil Procedure 68 and 42 U.S.C. § 2000e et seq, filed by plaintiff Kirk Albertson ("Plaintiff"). (D.I. 60; the "Motion for Costs.") Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons set forth, defendant Winner's Motion will be denied, and Plaintiff's Motion will be granted.

II. BACKGROUND

Plaintiff was an employee of Winner until his termination on January 29, 1999. (D.I. 63 at 1.) On March 9, 1999, Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor and the Equal Employment Opportunity Commission ("EEOC"). (*Id.*) The EEOC issued a right to sue letter, after which Plaintiff filed a Title VII suit in this court on February 20, 2001. (*Id.*) On April 15, 2001, Plaintiff's Complaint was amended to include a claim alleging that Winner had breached its contractual covenant of good faith and fair dealing. (*Id.*) A jury trial was scheduled to begin on September 29, 2003. (*Id.*)

On August 13, 2003, Winner sent Plaintiff's counsel a letter by electronic mail which made an offer of judgment in the amount of $40,000. (*Id.* at 1; D.I. 59 at 2.) The offer did not specifically address attorney's fees. (D.I. 59 at 2.) The offer stated:

Please accept this letter as the defendants [sic] Offer of Judgment, pursuant to rule 68.1 of the Local Rules of United States District Court for the District of Delaware. The offer of judgment is in the amount of $40,000.00. Please respond to this offer within 10 days as indicated within the rule.

(D.I.63, Ex. A.)

On August 27, 2003, Plaintiff accepted the offer, within the 10 day limit, [FN1] sending notice of his acceptance by both hand delivery and electronic means. (D.I. 59 at 2; *see* D.I. 63 at 1.) Plaintiff filed the Notice of Acceptance and the Offer of Judgment with the Clerk of the Court on August 28, 2003. (D.I. 63 at 1; *see* D.I. 59 at 2.) After indicating a difference of opinion with regard to whether the Offer of Judgment included attorneys' fees, Winner filed its Motion to Vacate on September 11, 2003. Plaintiff then filed his Motion for Costs on September 22, 2003. (D.I. 63 at 1 .)

FN1. Plaintiff's response was within the 10 day time limit because, under Rule 6 of the Federal Rules of Civil Procedure, "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the calculation." Therefore, Plaintiff's response was timely under Rule 68's 10 day limit.

III. STANDARD OF REVIEW

A. Motion to Vacate--Rule 60(b)

"The general purpose of Rule 60, which provides relief from judgments for various reasons, is to strike

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00582-KAJ    Document 15-2    Filed 11/23/2005    Page 2 of 19

Not Reported in F.Supp.2d                                                                             Page 2
Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)
(Cite as: 2004 WL 2435290 (D.Del.))

a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." _U.S. v. Enigwe, 320 F.Supp.2d 301, 306 (E.D.Pa.2004)_ (quoting _Boughner v. Sec'y of Health, Educ. and Welfare, 572 F.2d 976, 977 (3d Cir.1978)_). The decision to grant or deny relief pursuant to Rule 60(b) lies in the "sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances." _Ross v. Meagan, 638 F.2d 646, 648 (3d Cir.1981)_ (internal quotations and citations omitted). A district court's discretion has been described as "especially broad." _Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir.1989)_. "A 60(b) motion to set aside judgment is to be construed liberally to do substantial justice." _Fackelman v. Bell, 564 F.2d 734, 735 (5th Cir.1977)_ (internal citations and quotations omitted).

*2 Rule 60(b) provides, in relevant part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) ... excusable neglect ... (4) the judgment is void...." Fed.R.Civ.P. 60(b). Winner relies on both Rule 60(b)(1) and (4) in its Motion to Vacate Judgment. (D.I. 59 at 4-10.)

B. Attorneys' Fees--Title VII

Title VII provides, in relevant part: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of the costs ..." 42 U.S.C. § 2000e-5(k). The United States Court of Appeals for the Third Circuit ("Third Circuit") has established a test to determine whether a party qualifies for an award of attorney's fees:
> First, the plaintiff must be a "prevailing party"; i.e., the plaintiff must essentially succeed in obtaining the relief sought on the merits. Second, the circumstances under which the plaintiff obtained the relief sought must be causally linked to the prosecution of the Title VII complaint, in the sense that the Title VII proceedings constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief.

_Blackshear v. City of Wilmington, 15 F.Supp.2d 417, 432 (D.Del.1998)_ (quoting _Sullivan v. Commonwealth of Pennsylvania Dept. of Labor and Indus., 663 F.2d 443, 452 (3d Cir.1981)_). Under this test, attorney's fees are generally available "whenever a civil rights cause of action ultimately results in the plaintiff's having obtained relief." _Id._ (quoting _Sullivan, 663 F.2d at 447)._

IV. DISCUSSION

A. Winner's Motion to Vacate

Winner makes two arguments in support of its Motion to Vacate (D.I. 59 at 4- 10), both based on Federal Rule of Civil Procedure 60(b): Winner argues that it committed excusable neglect under Rule 60(b)(1) and that the judgment itself is void under Rule 60(b)(4). (_Id._)

1. Excusable Neglect--Rule 60(b)(1)

Winner argues that the judgment should be vacated because it committed excusable neglect by failing to specifically stated that its Offer of Judgment did not include costs. (_Id._ at 5.) Winner's argument is based entirely on _Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993)_, and a plea that this area of law is "complex." (_Id._ at 5- 7.)

Excusable neglect "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." _Ceridian Corp. v. SCSC Corp., 212 F.3d 398, 403 (8th Cir.2000)_ (quoting _Pioneer Inv. Servs., 507 U.S. at 394_ ["_Pioneer_"] ). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' ... is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." _Pioneer_ at 392. The four factors to be weighed include: "the danger of prejudice to the ... [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." _Id._ at 395.

*3 Winner argues that Plaintiff "would not be prejudice[d] because the judgment would be vacated and no consequence from it would further apply [,] ... trial in this matter has not occurred and would not be substantially delayed[,] ... the omission was one of inadvertence, and ... the movant has acted in good faith." (D.I. 59 at 6.) Essentially, Winner argues that its mistake was excusable because this "area of law is complex" and "[t]he phrase 'with costs then accrued' [in Rule 68] would seem to indicate that the offer includes costs, or in this case attorneys [sic] fees." (_Id._ at 7.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Winner's exclusive focus on *Pioneer* is misplaced. "*Pioneer* did not alter the traditional rule that mistakes of law do not constitute excusable neglect...." Ceridian, 212 F.3d at 404. "[N]o circuit that has considered the issue after *Pioneer* has held that an attorney's failure to grasp the relevant procedural law is 'excusable neglect.' " *Id.* (quoting Advanced Estimating Sys., Inc. v. Riney, 130 F.3d 996, 998 (11th Cir.1997) (citation omitted) (citing cases from the 2d, 5th, 7th, and 9th Circuits); *see also* Webb v. James, 147 F.3d 617, 622 (7th Cir.1998) (attorney's failure to conduct research not excusable neglect); Mendell v. Gollust, 909 F.2d 724, 731 (2d Cir.1990), *aff'd on other grounds,* 501 U.S. 115 (1991) (counsel's ignorance of the law did not mandate relief from judgment)). Winner essentially admits that it made a mistake of law when it argues that "the area of law is complex." (D.I. 59 at 7.)

Winner's neglect is not "excusable" in the sense contemplated by Rule 68 and the case law under that rule. Federal Rule of Civil Procedure 68 provides:
> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, *with costs then accrued.*

Fed.R.Civ.P. 68 (emphasis added). In 1985, the United States Supreme Court made it clear that "with costs then accrued" means accrued costs are in addition to the sum offered, unless otherwise specified. Marek v. Chesny, 473 U.S. 1, 6 (1985) (*"Marek"*). The Court stated that "if the offer does not state that costs are included and an amount for costs is not specified, the court will be obligated by the terms of the Rule to include in its judgment an additional amount which in its discretion it determines to be sufficient to cover costs." *Id.* (internal citations omitted.) Thus, even if the language of Rule 68 were not clear, the Supreme Court's holding in *Marek* is unmistakable. Marek, 473 U.S. at 6.

To set aside the judgment in this case would undermine the purpose of the Rule, "to encourage settlement and avoid protracted litigation." Webb v. James, 147 F.3d 617, 619 (7th Cir.1998) (holding that the defendants should bear the burden of the ambiguity created by their silence on fees). Therefore, Winner's neglect is not "excusable" under Rule 60(b)(1).

2. Void Judgment--Rule 60(b)(4)

*4 Winner's second argument in its Motion to Vacate is that "the underlying offer itself was improper which renders the judgment null or void" under Rule 60(b)(4). (D.I. 59 at 7-8.) Winner argues that Rule 68 requires that the defendant "serve" an offer of judgment on the plaintiff and that the offer in this case was "clearly not served." (*Id.* at 8.) Rule 68 states: "At any time more than 10 days before the trial begins, a party defending against a claim may *serve* upon the adverse party an offer to allow judgment...." Fed.R.Civ.P. 68 (emphasis added). Rule 5(b)(2)(D) provides that: "Service ... [may be] made by: ... Delivering a copy by any other means, including electronic means, *consented to in writing* by the person served." Fed.R.Civ.P. 5(b)(2)(D) (emphasis added).

Winner's argument is that Plaintiff did not consent in writing to service by electronic means and therefore, since its Offer of Judgment was sent electronically, it was not properly served under Rules 5 and 68. (D.I. 59 at 8.)

Plaintiff makes two arguments in response: (1) that service of the offer by facsimile was proper and (2) that Winner is "estopped from claiming the impropriety of their chosen method of service...." (D.I. 63 at 10.) I agree with Plaintiff. Service was proper because Plaintiff consented to service by facsimile when he sent his Notice of Acceptance in response on August 27, 2003. (*Id.* at 11.) Even if service were not proper, Winner is bound by quasi-estoppel from repudiating its attempt to serve Plaintiff.

Winner proposes that I interpret Rule 5(b)(2)(D) in a highly technical manner and admits the "technical nature of [its] ... argument." (D.I. 59 at 9.) [FN2] Winner sent the Offer of Judgment by facsimile. (D.I. 59 at 2.) Plaintiff received it, acknowledged receipt, and accepted the Offer of Judgment. (*Id.*) He sent his written response by two different means: facsimile and hand delivery. (D.I. 63 at 3.) Under the circumstances, the written consent to the offer can only be viewed as consent to the service as well. Moreover, during the litigation, various documents besides the Offer of Judgment were transmitted between counsel by facsimile and electronic mail. (D.I. 63 at 3.) It is clear that Winner believed, correctly, that Plaintiff would accept service by facsimile or it would not have sent its Offer of Judgment in that manner.

FN2. In support of its argument, Winner

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00582-KAJ    Document 15-2    Filed 11/23/2005    Page 4 of 19

Not Reported in F.Supp.2d                                                                                                      Page 4
Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)
(Cite as: 2004 WL 2435290 (D.Del.))

> cites two cases regarding "filing by facisimile." (D.I. 59 at 8-9 (citing *McIntosh v. Antonio,* 71 F.3d 29, 35 (1st Cir.1995) and *Tiberi v. CIGNA Ins. Co.,* 40 F.3d 110, 111 (5th Cir.1994)). These cases, however, discuss service in terms of court filings and are therefore inapposite to the issue at hand.

Even if service were not technically proper under Rule 5, however, Winner is estopped from making the "ineffective service" argument. "The doctrine of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken." *Bott v. J.F. Shea Co., Inc.,* 299 F.3d 508, 512 (5th Cir.2002). Quasi-estoppel applies when it would be unconscionable to allow a person "to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.* It is "[a]n equitable doctrine preventing one from repudiating an act or assertion if it would harm another who reasonably relied on the act or assertion." Black's Law Dictionary 591 (8th ed.2004). Winner clearly believed that its service of the Offer of Judgment upon Plaintiff was proper. Plaintiff reasonably relied on the offer and Winner's chosen method of service, and accepted it. It would be unconscionable to allow Winner to repudiate its chosen method of service after it received its intended benefit of the offer, namely, settlement of the case.

*5 Rule 5(b)(2)(D) exists to protect the party receiving service, not the party providing service. [FN3] Under these circumstances, Winner is estopped from arguing that service was not proper. Based on the language of the Rule, the course of conduct of the parties, and Plaintiff's written acknowledgment of receipt and acceptance of Winner's Offer of Judgment, I hold that the Offer of Judgment was properly served on Plaintiff.

> FN3. The requirement for consent, as discussed by the Advisory Committee, was to protect the party receiving service "because it is not yet possible to assume universal entry into the world of electronic communication." Fed.R.Civ.P. 5 (2001 Amendments, Advisory Committee Notes).

Therefore, Winner's Motion to Vacate will be denied.

B. Plaintiff's Motion for Costs

As noted earlier, Winner's Offer of Judgment was silent as to costs. *See supra,* section II. Plaintiff's basic argument is that he should be awarded costs, including attorneys' fees, because he is a prevailing party under Title VII and because, given the terms of Winner's Offer of Judgment, Rule 68 permits such recovery. (D.I. 61 at 4.) Winner's counter-argument is that it did not intend to offer more than $40,000 and that although its offer was silent as to costs, it should not be obligated to pay any more than its offer. (*See* D.I. 65 at 1.)

Attorney's fees are considered "costs" under Rule 68 when the underlying statute provides for attorney's fees to be awarded as part of the costs. *Marek,* 473 U.S. at 2. The underlying statute in this case is Title VII. In a Title VII action, attorney's fees are expressly categorized as costs by 42 U.S.C. § 1988(b), which states: "The court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Therefore, if Plaintiff qualifies for an award of attorney's fees under the Third Circuit's two-part test, [FN4] then a reasonable fee will be awarded as part of the costs. Plaintiff does qualify under that test.

> FN4. As noted earlier, *see supra,* section III.B., the test is whether the plaintiff is a "prevailing party" and if so, are the circumstances under which the plaintiff obtained the relief sought causally linked to the prosecution of the Title VII complaint.

First, Plaintiff is clearly the "prevailing party" by virtue of his acceptance of Winner's Offer of Judgment. *See Delta Air Lines, Inc. v. August,* 450 U.S. 346, 363 (1981) (Powell, J., concurring) (noting that: "A Rule 68 offer of judgment is a proposal of settlement that, by definition, stipulates that the plaintiff shall be treated as the prevailing party. It follows, therefore, that the 'costs' component of a Rule 68 offer of judgment in a Title VII case must include reasonable attorney's fees accrued to the date of the offer.") (internal citations omitted); *Baird v. Boies, Schiller & Flexner LLP,* 219 F.Supp.2d 510, 522 n. 9 (S.D.N.Y.2002) (finding that "plaintiffs here are 'prevailing parties' by virtue of their acceptance of the Rule 68 offer of judgment"). Second, it is undisputed that the relief Plaintiff obtained was causally linked to the prosecution of his Title VII complaint. Therefore, I must determine what reasonable attorneys' fees to award in this case. [FN5]

> FN5. Winner does not contest that Plaintiff qualifies for an award of attorney's fees, and focuses its argument on the reasonableness

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00582-KAJ   Document 15-2   Filed 11/23/2005   Page 5 of 19

Not Reported in F.Supp.2d                                                                                  Page 5
Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)
**(Cite as: 2004 WL 2435290 (D.Del.))**

of the fees requested. (D.I.65.)

1. The Lodestar Amount

A reasonable fee is one that is adequate to attract competent counsel, but which does not produce a windfall to attorneys. *Pub. Interest Research Group of New Jersey, Inc. v. Windall,* 51 F.3d 1179, 1185 (3d Cir.1995) (internal quotations omitted) [*"PIRG"* ]; *see Blum v. Stenson,* 465 U.S. 886, 897 (1984). The starting point for determining the reasonableness of a fee is to calculate the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The result of this calculation is called the "lodestar." *See Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990).

a. Reasonableness of Rates

*6 The general rule is that a reasonable hourly rate is calculated according to the prevailing market rate in the community. *Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir.1996). "The 'starting point' in determining the appropriate hourly rate is the attorneys' usual billing rate." *See Pennsylvania Envt'l Def. Found. v. Canon-McMillan Sch. Dist.,* 152 F.3d 228, 231 (3d Cir.1998) [*"PEDF"* ] (citing *PIRG,* 51 F.3d at 1185). This rate, however, is not automatically deemed reasonable. *See, e.g., Blanchard v. Bergeron,* 489 U.S. 87, 93 (1989); *PIRG,* 51 F.3d at 1185 (internal citations omitted). The party requesting the payment of attorneys' fees bears the burden of establishing by way of satisfactory evidence, "in addition to the attorney's own affidavits, that the requested hourly rates meet this standard." *Washington,* 89 F.3d at 1035 (internal citations omitted).

In the instant case, Mr. Wier, counsel for Plaintiff, contracted with Plaintiff for an hourly rate of $300 in December 2000, subject to change. (D.I. 60, Wier Aff. at ¶ 8; D.I. 65, Ex. A, Fee Agreement between Mr. Wier and Plaintiff.) In September 2001, Mr. Wier's hourly rate increased to $325 and then to $350 in April 2002. (*Id.*) Plaintiff's counsel's associate, Mr. Scialpi, charged an hourly rate of $95 in December 2000. (*Id.* at ¶ 9.) Mr. Scialpi's rate increased several times thereafter (to $110 in May 2001, $125 in October 2001, $150 in April 2002, $175 in July 2002, $185 in May 2003, and $195 in June 2003). (*Id.*) Mr. Wier's paralegal, Ms. Edwards, charged an hourly rate of $85. (*Id.* at ¶ 10.) Mr. Wier asserts that these rates are "commensurate with the prevailing market rate in the community for similar cases for attorneys, with reasonably comparable skills, reputation and experience." (*Id.* at ¶ 11.) In support of Plaintiff's argument that his counsel's fees are reasonable, affidavits of David H. Williams, Esquire and Richard G. Elliot, Jr., Esquire are attached to Mr. Wier's affidavit. (*Id.,* Ex. E.) Both supporting affidavits confirm that Mr. Wier and Mr. Scialpi's rates are "in accordance with the prevailing market rate in Delaware for similar services by attorneys with reasonably comparable skill, experience and reputation." (*Id.,* Ex. E, Williams Aff. at ¶¶ 4-5; *Id.,* Ex. E, Elliot, Jr. Aff. at ¶¶ 4-5.) In fact, Winner does not contest the reasonableness of Plaintiff's counsels' hourly rates and I accept those rates as reasonable. Therefore, this Court "may not exercise its discretion to adjust the requested rate downward." *Washington,* 89 F.3d at 1036 (holding that, "[w]here, as here, the plaintiff has met his prima facie burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward.").

*7 Winner does argue, however, that the overall fee award sought is unreasonable. (D.I. 65 at 5.) Winner argues that the reasonableness of Plaintiff's attorneys' fees must be determined by applying three factors discussed by Justice O'Connor in her concurrence in *Farrar v. Hobby,* 506 U.S. 103, 116-22 (1992). (D.I. 65 at 2.) *Farrar,* however, does not apply to this case. The test set forth in *Farrar* applies only to cases where nominal damages are obtained or "plaintiff's recovery is merely technical or de minimis." *See Fisher v. Kelly,* 105 F.3d 350, 352 (7th Cir.1997) (citing *Farrar,* 506 U.S. at 114-16). In *Farrar,* the plaintiff sued for 17 million dollars, but obtained only nominal damages of one dollar in judgment. *Farrar,* 506 U.S. at 108. In this case, Plaintiff received a judgment that cannot be characterized as nominal. Therefore, the correct standard is that, "[a] prevailing party is entitled to recover its reasonable attorney's fees unless special circumstances would render such an award unjust." *Torres v. Metro. Life Ins. Co.,* 189 F.3d 331, 332 (3d Cir.1999) (citing 42 U.S.C.A. § 2000e-5(k)).

Winner's next argument is that Plaintiff's counsel averaged his billable rate over the life of the case and then used that average as the rate for the multiplier for the number of hours expended. (D.I. 65 at 4.) That assertion, however, is incorrect. As pointed out in his Reply, Plaintiff's counsel did not use the average hourly rate to calculate the fees. (D.I. 67 at 3.) For example, the first entry states that 1.5 hours were spent in a conference with Plaintiff. (D.I. 60,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                 Page 6
Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)
**(Cite as: 2004 WL 2435290 (D.Del.))**

Ex. A, at 1.) The total fee billed for that time was $450. (*Id.*) The fee was calculated based on Plaintiff's counsel's hourly rate at that time of $300, not the average of $333.56 as stated on page 19 of Exhibit A. (*Id.*) The attorneys' fees will be calculated based on the hourly rate at the time the work was performed.

b. Reasonable Hours

The next step in the lodestar calculation is to make a determination of "the time reasonably expended in conducting the litigation." *Local Union No.1992 of the Intern'l Bhd. of Elec. Workers v. Okonite Co.,* 34 F.Supp.2d 230, 236 (D.N.J.1998) (citing *Hensley,* 461 U.S. at 433; *PIRG,* 51 F.3d at 1188)). Plaintiff has the burden of proving the reasonableness of the hours to be compensated. *Northeast Women's Ctr. v. McMonagle,* 889 F.2d 466, 477 (3d Cir.1989). Hours which are "excessive, redundant, or otherwise unnecessary" must be excluded by the court. *Hensley,* 461 U.S. at 434.

A party requesting attorneys' fees must provide a "fee petition ... specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington,* 89 F.3d at 1037 (internal quotations and citations omitted). A district court must review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary. *See id.; Hensley,* 461 U.S. at 433.

*8 In the instant matter, Plaintiff requests payment for the following time expenditures:

```
R.R. Wier        130.35   hours
Anne Edwards      12.20   hours
Dan Scialpi      127.24   hours
-----------------------------
Total            269.79   hours
```

(D.I. 60, Wier Aff., Ex. A at 9.) Descriptive time entries were submitted in support of the Plaintiff's Motion for Costs. (*Id.*)

c. Objections to Time Billed

Winner's first objection to the time billed is actually in regards to the fee agreement. (D.I. 65 at 3.) Winner characterizes the agreement as a "misnomer" because Plaintiff's counsel gets paid for service regardless of the outcome of the case. (*Id.*) The fee agreement calls for "40% of any recovery by way of settlement or litigation, or the number of hours I [Plaintiff's counsel] have expended at my hourly rate of $300 an hour, whichever is greater." (D.I. 65, Ex. A, Fee Agreement between Mr. Wier and Plaintiff.) Whether or not a provision such as that is usual for this type of case, and I have no basis for commenting on that question, it was evidently agreed to by Plaintiff. Therefore, Winner's characterization of the fee agreement as a "misnomer" is inaccurate. Laudable or not, it was an agreement, and Winner has not provided authority or argument for voiding it in its entirety as being unconscionable. Even if Winner had done so, however, the relevant inquiry here is entitlement to fees under pertinent statutory and case law. I need not and do not make any decision on the enforceability of the fee agreement as such. [FN6]

FN6. Winner also argues that the agreement specifies that costs are to be advanced by Plaintiff by way of a retainer, but that the costs were actually advanced by counsel. (D.I. 65, Ex. A, Fee Agreement between Mr. Wier and Plaintiff.) How costs were paid is not relevant to the issue of the reasonableness of the time billed in this case.

Winner's second objection to the time billed is a series of questions regarding the amount of time listed for particular events. (*Id.* at 3-5.) Each of those questions is addressed as follows. [FN7]

FN7. The question regarding the amount billed for preparing the fee request is addressed in section III, *infra*.

i. Demand Letter

Winner alleges that the time spent by Plaintiff's counsel preparing a ten page demand letter (the "Demand Letter") is excessive for counsel as accomplished as Plaintiff's. (D.I. 65 at 4.) Plaintiff argues in rebuttal that the time spent was reasonable because the Demand Letter was on behalf of three plaintiffs, the other two of whom were

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)  
**(Cite as: 2004 WL 2435290 (D.Del.))**

Page 7

witnesses in Plaintiff's case. (D.I. 67 at 4.) The Demand Letter "specifically detailed the facts of the cases, expected testimony, damages, and the exposure of the Defendants." (*Id.* (emphasis added)) The time spent was "verified as accurate and necessary by the affidavit of counsel." (*Id.*)

Plaintiff's counsel's response is not entirely persuasive. He admits that the time spent on the Demand Letter was on behalf of "three plaintiffs." (See D.I. 67 at 4.) Counsel would not be permitted to bill each client the full time spent drafting the Demand Letter. Again, the burden is on Plaintiff to show the reasonableness of the fees. Having admitted that the work was done to address the claims of three clients, it is not enough simply to assert that the work would have been the same for Plaintiff alone. Under these circumstances, counsel's time should be divided in proportion to the number of clients on whose behalf the Demand Letter was drafted. Accordingly, Plaintiff's counsel's time will be reduced by two-thirds from 14.50 hours to 4.83 hours.

ii. Conference--February 12, 2001

*9 Winner next questions the reasonableness of Plaintiff's counsel's billing 1.50 hours for a conference with defendants' counsel on February 12, 2001. (D.I. 65 at 4.) Winner's basis for its argument of unreasonableness is that Winner's counsel billed only 0.80 hours for the same conference. (*Id.*) Plaintiff's counsel does not rebut Winner's assertion except to say "a discrepancy of less than an hour for a conference is not a basis for reducing the award." (D.I. 67 at 4.)

I disagree. Plaintiff has again not carried his burden with regard to the time billed. Therefore, Plaintiff's counsel's time will be reduced to match that of Winner's counsel, from 1.50 hours to 0.80 hours.

iii. Teleconference--May 16, 2001

Winner also questions Plaintiff's counsel's bill for 1.00 hour for a teleconference with defense counsel and the court for which Winner's counsel billed only 0.60 of an hour. (D.I. 65 at 4.) Plaintiff's counsel argues that this twenty minute difference was spent preparing for the scheduling conference. (D.I. 67 at 4.) Plaintiff's counsel also points out that although Winner's counsel described his time as 0.60 hours, he also spent time (0.20 hours) preparing for the conference. (*Id.; see* D.I. 65, Ex. C.) Therefore, there is only a 12 minute difference between the time billed by each party's counsel. Winner's counsel spent 12 minutes preparing for the conference and Plaintiff's counsel spent 24 minutes.

Plaintiff's counsel's unrebutted assertion, supported by affidavit, that he spent the time in preparation is sufficient to satisfy his burden of proving the reasonableness of the preparation time.

iv. Mediation--October 30, 2001

Winner questions why Plaintiff's counsel is "permitted to bill the entire eight hours ... for attendance at a mediation in this matter when he was representing three clients at the mediation." (D.I. 65 at 4.) Plaintiff's counsel's response is that "[t]he time ... would have been the same regardless of whether one or three clients were present." (D.I. 67 at 4.)

As with the Demand Letter, Plaintiff's counsel's response in this regard is unpersuasive. Without demonstrating a basis for the assertion that the time would have been the same, and without providing any other rationale for dividing the time among the clients, Plaintiff's counsel leaves as the most sensible alternative dividing the time in proportion to the number of clients represented at the mediation. Plaintiff's counsel's time for that mediation will therefore be reduced by two-thirds, from 8.00 hours to 2.67 hours.

v. Deposition Transcript Summary

Winner questions why "it took plaintiff's counsel's associate 4.75 hours ... to summarize a deposition transcript of Al Stevens for a deposition that lasted only three and one half hours." (D.I. 65 at 4.) Plaintiff's counsel's response is that Mr. Stevens was "the general manager of the Defendants, who retaliated against Plaintiff and terminated him ... [and was therefore,] an important deponent." (D.I. 67 at 5.)

*10 Winner's argument is unpersuasive. There is no basis for me to reduce the time spent by Plaintiff's counsel's associate when Winner offers no specific contradictory evidence that the task should have been completed in less time. It is clear that Mr. Stevens was an important deponent and information gained from his deposition required due care. Four and three-quarters hours does not appear excessive in light of the importance of Mr. Stevens' deposition to Plaintiff's case.

d. Total Reasonable Hours Expended

Winner does not attack the adequacy of the documentation submitted in support of Plaintiff's Motion for Costs. Plaintiff's counsel submitted 20 pages of itemized records indicating the date the legal work was performed, the attorney who performed it, the nature of the work, the number of hours spent, and the total fee

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00582-KAJ    Document 15-2    Filed 11/23/2005    Page 8 of 19

Not Reported in F.Supp.2d                                                                 Page 8
Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)
(Cite as: 2004 WL 2435290 (D.Del.))

charged for the work. Accordingly, I find that Plaintiff has submitted adequate documentation in support of his Motion for Costs.

The hours billed by Mr. Wier are reduced as described above. A reduction of 0.70 hours for the conference on February 12, 2001, a reduction of 9.67 hours for the Demand Letter, and a reduction of 5.33 hours for the mediation on October 30, 2001. The remaining requested hours are granted without change.

e. Final Award

The following represents the reasonable attorneys' fees awarded in this matter.

```
ATTORNEY                                    FEE IN DOLLARS
---------------------------------------     ---------------------------------

MR. WIER

24.38 hours at $300 per hour                $7,314.00
10.87 hours at $325 per hour                $3,532.75
79.40 hours at $350 per hour                $27,790.00

MR. SCIALPI

2.45 hours at $95 per hour                  $232.75
3.35 hours at $110 per hour                 $368.50
16.79 hours at $125 per hour                $2,098.75
13.45 hours at $150 per hour                $2,017.50
35.35 hours at $175 per hour 8              $6,186.25

22.95 hours at $185 per hour                $4,245.75
32.90 hours at $195 per hour                $6,415.50

MS. EDWARDS

12.20 hours at $85 per hour 9               $1,037.00
---------------------------------------------------------------------------
---------------------------------------------------------------------------

LODESTAR                                    $61,238.75
```

FN8. In Plaintiff's Counsel's Affidavit (D.I. 60 at ¶ 9), Mr. Scialpi's rates are said to have been increased from $175 to $185 in May 2003. In the computer printout summary (D.I.60, Ex. A) the first time Mr. Scialpi's rates are listed at $185 per hour is actually 11/08/02. (D.I. 60, Ex. A at 11.) Since this is inconsistent with the sworn affidavit, the lodestar calculations include 13.20 hours at $175 per hour encompassing the time from 11/08/02 through 4/29/03. Thereafter, beginning on 5/03/03, Mr. Scialpi's rates are calculated at $185 per hour as stated in Plaintiff's counsel's Affidavit (D.I. 60 at ¶ 9). Any other discrepancy between the lodestar calculations and the fees listed in the summary (D.I.60, Ex. A) are due to

computer error on behalf of Plaintiff's counsel, most likely similar to the error described below in footnote 9.

FN9. In Plaintiff's counsel's Affidavit (D.I. 60 at ¶ 10), Ms. Edwards, Mr. Wier's paralegal, is said to have had an hourly rate of $85. Yet, on page 19

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)  
**(Cite as: 2004 WL 2435290 (D.Del.))**

Page 9

of the computer printout summary (D.I.60, Ex. A) Ms. Edwards' hourly rate is listed at $87.46 and her total is calculated based on that amount. (D.I. 60, Ex. A at 19.) The lodestar was calculated based on $85 per hour of Ms. Edwards' work as stated in Plaintiff's counsel's Affidavit (D.I. 60 at ¶ 10).

2. Enhancement of the Lodestar

*11 Plaintiff argues that an upward adjustment of the lodestar is warranted in this case. (D.I. 61 at 7.) Winner objects because in its view, "Plaintiff and his counsel have chosen to await the resolution of this matter before the consideration of any fees." (D .I. 65 at 4.)

The Supreme Court has held that "compensation received several years after the services were rendered--as it frequently is in complex civil rights litigation--is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." _Missouri v. Jenkins by Agyei,_ 491 U.S. 274, 283 (1989) (finding that an appropriate adjustment for delay in payment is appropriate in some civil rights cases). Therefore, a delay enhancer is designed to compensate an attorney for the gap between the time services were rendered and the fee award. _See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,_ 483 U.S. 711, 716 (1987). The Plaintiff has the burden of "documenting evidence of the time value of money and market interest rates of the period in question." _Spruill v. Winner Ford of Dover, LTD.,_ No. CIV.A. 94-685 MMS, 1998 WL 186895, at *7 (D.Del. Apr. 6, 1998) (citing _Blum v. Witco Chem. Co.,_ 888 F.2d 975, 984 (3d Cir.1989)). Computing a delay enhancer is "within the district court's discretion." _Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,_ 995 F.2d 414, 424 (3d Cir.1993) (citing _Student Pub. Interest Research Group v. AT & T Bell Labs.,_ 842 F.2d 1436, 1453 (3d Cir.1998); _Rode v. Dellarciprete,_ 892 F.2d 1177, 1188 (3d Cir.1990); _In re Fine Paper Antitrust Litig.,_ 751 F.2d 562, 588 (3d Cir.1984)).

In this case, Plaintiff has satisfied his burden of documenting evidence of the time value of money and the market interest rates during the period in question. (D.I.60, Ex. C.) Plaintiff requests a delay enhancement in the amount of $2,885.38. (D.I. 60 at 1.) In my discretion, however, and in accordance with my reduction of Plaintiff's counsel's reasonable billable time, I will reduce the amount of the delay enhancer. Plaintiff was seeking $66,142.00 in attorneys' fees, [FN10] but I determined the lodestar to be $61,238.75. That is a reduction of 7.41%. Therefore, Plaintiff will be awarded a delay enhancement of $2,671.57, which represents 7.41% less than the requested amount.

FN10. This is different than the $66,244 stated in Plaintiff's Motion for Costs (D.I. 60 at 1) because of the reasons discussed in footnotes 8 and 9, _supra._

3. Fee Application

Plaintiff also requests compensation for the time spent preparing the fee application. (D.I. 61 at 7-8.) Plaintiff claims that 34.30 hours were spent on activities related to the application. (D.I. 60, Ex. F at 3.) Winner argues that it is not "appropriate to award $7,000.00 for the preparation of a straight-forward fee request." (D.I. 65 at 4-5.) Plaintiff's counsel's response is that "Defendants offer no contradictory evidence that the task should have, or could have, been completed in less time, with the same due care." (D.I. 67 at 5.)

*12 The analysis of the fee application costs is independent of, but identical to the analysis imposed upon the litigation costs. _See Institutionalized Juveniles v. Sec'y. of Pub. Welfare,_ 758 F.2d 897, 924 (3d Cir.1985). The number of hours allotted to the petition are multiplied by the hourly rate. _See id._ I agree with Winner that the time billed for the fee request is excessive. It is evident that Plaintiff's counsel did in fact invest due care in his application, but the $7330.75 represents nearly 12% of the underlying fee awarded for the prosecution of the entire case. The request thus appears to me to be excessive, in light of all of the circumstances of the case. I will award $5,000 for preparation of the fee application, which is an amount that fully recognizes the commitment of resources required to meet Plaintiff's burden on this application.

4. Costs

Plaintiff has submitted for reimbursement costs of $5,734.71. (D.I.60.) Winner does not object to the amount or veracity of the costs submitted for reimbursement. Therefore, I will award costs of $5,734.71.

5. Post-Judgment Interest

The Third Circuit has held that "pursuant to 28 U.S.C. § 1961(a), post-judgment interest on an attorney's fee award runs from the date that the District Court enters a judgment quantifying the amount of fees owed to the prevailing party...." _Eaves v. County of Cape May,_ 239 F.3d 527, 542 (3d Cir.2001); _see also Institutionalized_

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)  
**(Cite as: 2004 WL 2435290 (D.Del.))**

Page 10

*Juveniles,* 758 F.2d at 927 (noting that "interest on a judgment ... should be computed from the date of [the district court's] initial entry.") Therefore, post-judgment interest in this case would not begin to run until the date of this opinion and the accompanying order, in which the amount of fees owed is quantified. Post-judgment interest is granted from the date of this opinion and order and is to be calculated by the parties in accordance with 28 U.S.C. § 1961.

V. CONCLUSION

Based on the above discussion, I will award $68,910.32 in attorneys' fees and $5,734.71 in costs to Plaintiff as a prevailing party in his suit against Winner. Plaintiff's Motion for Costs (D.I.60) will be GRANTED, as described, and Winner's Motion to Vacate (D.I.58) will be DENIED. An appropriate order will follow.

Not Reported in F.Supp.2d, 2004 WL 2435290 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV00116 (Docket) (Feb. 20, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in B.R.  Page 1
Not Reported in B.R., 2004 WL 2334316 (Bankr.D.Kan.)
**(Cite as: 2004 WL 2334316 (Bankr.D.Kan.))**

C
Only the Westlaw citation is currently available.

United States Bankruptcy Court,
D. Kansas.
In re: BENNETT TRADING, INC., Debtor.
Steven L. SPETH, Trustee, Plaintiff,
v.
UTE MOUNTAIN FARM AND RANCH
ENTERPRISE, Defendant.
No. 01-16115, 03-5329.

April 6, 2004.
William H. Zimmerman, Jr., Case, Moses, Zimmerman, Wichita, KS, for Debtor.

Timothy J. King, Wichita, KS, for Plaintiff.

J. Scott Pohl, Hinkle Elkouri Law Firm LLC, John K. Pearson, Wichita, KS, for Defendant.

*MEMORANDUM OPINION*

NUGENT, Chief Bankruptcy J.

*1 The trustee brings this adversary proceeding to avoid an alleged preferential transfer by the debtor to defendant Ute Mountain Farm and Ranch Enterprise ("Enterprise") under 11 U.S.C. § 547(b). [FN1] In response, the Enterprise has moved to dismiss the complaint [FN2] for lack of personal and subject matter jurisdiction, asserting that (1) it has not been properly served under Fed. R. Bankr.P. 7004; and (2) it enjoys sovereign immunity from this avoidance action because it is an agency of a federally-chartered Indian Tribe. [FN3] The trustee replies that while his service on the Enterprise is deficient, the deficiency is a harmless error under Fed. R. Bankr.P. 9005 [FN4] that can be remedied by the Court so long as no party is harmed. Moreover, he asserts that because the charter of the Enterprise contains a clause permitting the Enterprise to sue or be sued in either the Ute Mountain Tribal Court or the United States District Court, the Enterprise has waived whatever immunity it has. [FN5] Oral argument on the Enterprise's motion was held March 16, 2004.

FN1. Unless otherwise noted, all subsequent statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq.

FN2. Dkt. 7 and 8.

FN3. See *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); Indian Reorganization Act, 25 U.S.C. § § 476 and 477.

FN4. Rule 9005 makes Fed.R.Civ.P. 61 applicable in bankruptcy cases.

FN5. The trustee also emphasizes that he has not named the Tribe as a party defendant; rather, his cause of action is asserted against the Enterprise, which he claims is a separate and distinct entity.

*Factual Background*

In his complaint, [FN6] the trustee alleges that the debtor Bennett Trading, Inc. filed bankruptcy on December 27, 2001. For his jurisdictional allegations, the trustee asserts that the adversary proceeding is a core proceeding and that the Court has jurisdiction pursuant to 28 U.S.C. § 157. The trustee further alleges that the Enterprise received payments totaling $121,276.03 from the debtor and that these payments are a preferential transfer under 11 U.S.C. § 547 requiring their return to the bankruptcy estate. These are the only substantive allegations of the trustee's complaint and there are no attachments to the complaint.

FN6. The adversary complaint was filed October 15, 2003. *See* Dkt. 1.

Motion to Dismiss Standards

The Enterprise's attack on the sufficiency of service of process is a challenge to this Court's exercise of personal jurisdiction over the Enterprise under Fed.R.Civ.P. 12(b)(2) and (5). The trustee bears the burden of establishing personal jurisdiction and validity of service of process on the Enterprise. [FN7]

FN7. *F.D.I.C. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998).

The Enterprise's assertion of tribal sovereign

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  Page 2
Not Reported in B.R., 2004 WL 2334316 (Bankr.D.Kan.)
**(Cite as: 2004 WL 2334316 (Bankr.D.Kan.))**

immunity is a challenge to this Court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The trustee, as the party invoking federal jurisdiction, also bears the burden of establishing subject matter jurisdiction. [FN8] While the Enterprise's sovereign immunity claim does not go to the sufficiency of the facial allegations of the complaint, [FN9] the Enterprise's claim does challenge the facts upon which this Court's subject matter jurisdiction is based. [FN10] In this instance, the court is permitted to consider matters outside the pleadings to resolve disputed jurisdictional facts, including conducting a limited evidentiary hearing, without converting the Rule 12(b)(1) motion to dismiss to a motion for summary judgment. [FN11]

> FN8. _Sac & Fox Nation of Oklahoma v. Cuomo_, 193 F.3d 1162, 1165 (10th Cir.1999).
>
> FN9. Here, the trustee's complaint clearly alleges that this is a core proceeding and that subject matter jurisdiction is based upon this being a preference action under § 547 of the Bankruptcy Code.
>
> FN10. _See Holt v. United States_, 46 F.3d 1000, 1002-03 (10th Cir.1995), recognizing two forms of challenges to the court's subject matter jurisdiction. _See also, United Tribe of Shawnee Indians v. United States_, 253 F.3d 543, 547 (10th Cir.2001).
>
> FN11. _Id._ at 1003. _See also, Winnebago Tribe of Nebr. v. Kline_, 297 F.Supp.2d 1291, 1298 (D.Kan.2004).

Facts Pertaining to Service of Process

With respect to service, the record indicates that the trustee attempted to serve the Enterprise by mailing a summons and complaint addressed to the Enterprise at a post office box without reference to a person in charge. [FN12] The trustee commented in argument that he had engaged in conversations with the tribal counsel who was told the summons was forthcoming. Even if the record properly before the Court supported that, nothing in the record suggests that the Enterprise waived service of process in this case.

> FN12. _See_ Dkt. 3.

Facts Pertaining to Sovereign Immunity

*2 In support of its sovereign immunity defense, the Enterprise has attached to its motion to dismiss, the affidavit of general counsel for the Ute Mountain Ute Tribe which seeks to authenticate attached copies of the Ute Mountain Tribe Constitution and By-laws, a resolution of the Ute Mountain Tribal Council regarding the Enterprise, and the charter of the Enterprise. [FN13] The affidavit and attached documentation show the following.

> FN13. The affidavit also contains a statement that no blanket waiver of tribal immunity has been made, nor is it the policy of the Ute Mountain Tribe to waive such immunity without a resolution of the Tribal Council.

The Ute Mountain Tribe ("Tribe") adopted its Constitution and By-laws on May 8, 1940 and, pursuant to 25 U.S.C. § 476, the Secretary of the Interior approved the Constitution on June 6, 1940. Under the Constitution, as amended, the governing body of the Tribe is the Tribal Council which consists of seven members elected by various constituencies on the Ute Mountain Reservation. Under Article V of the Tribe Constitution, the Tribal Council is empowered to select subordinate boards and officials and to manage the tribal herds.

The Tribal Council enacted a resolution on February 20, 1987 creating the Ute Mountain Farm and Ranch Enterprise. [FN14] The resolution states that the purposes of the Enterprise are to further the long term development of stability of the Tribe and maximize employment and revenue to the Tribe and its members.

> FN14. Nowhere in the language of this resolution or the Enterprise charter is the Enterprise referred to as an "agency" of the Tribe.

The charter of the Enterprise provides that its purposes are to create a "Tribally owned farm and ranch" to develop the "natural and human resources" of the Tribe and to create substantial revenue and full employment to tribal members. Under the charter, the Enterprise is a separate and distinct entity from the Tribe; however, the Enterprise's Board of Directors shall consist of the executive committee of the Tribal Council. The Enterprise charter provides in paragraph 13 that the Enterprise may "sue and be sued in the Ute Mountain Tribal Court and/or United States Federal District Court." It also states that the "power" to sue or be sued is "limited to the separate and distinct assets of the Enterprise." Enterprise's counsel

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00582-KAJ    Document 15-2    Filed 11/23/2005    Page 13 of 19

Not Reported in B.R.                                                                                                Page 3
Not Reported in B.R., 2004 WL 2334316 (Bankr.D.Kan.)
(Cite as: 2004 WL 2334316 (Bankr.D.Kan.))

informed the Court at oral argument that there are no such separate assets; this comment, however, is without basis in the record. Finally, the Enterprise charter provides that an Enterprise Manager, hired by the Board of Directors, shall be the principal officer of the Enterprise.

While 25 U.S.C. § 477 provides for the chartering of tribal enterprises separate and apart from constitutional tribal entities, subject to the approval of the Secretary of Interior, there is no record before this Court concerning whether the Enterprise is a § 477 entity.

*Analysis*

*Sufficiency of Service of Process--Fed. R. Civ. P. 12(b)(2) and (5)*

The trustee has failed to properly serve the Enterprise. To the extent that Fed. R. Bankr.P. 7004 authorizes mail service on a sovereign Indian nation or its agencies or enterprises, service upon an officer or agent authorized to accept same would seem necessary. [FN15] Mail service on a "state or municipal corporation or other governmental organization thereof subject to suit" must be mailed to the person or office designated by state law and, in the absence of such designation, upon the chief executive officer of the entity. [FN16] Service on a federal governmental entity is made by mailing the summons and complaint to the attention of an officer of the agency, if it is a corporation, and to the civil process clerk of the United States Attorney or to the United States Attorney General. [FN17] Similarly, mail service on a domestic or foreign corporation is made by mailing a copy of the summons and complaint to an officer or managing agent or a designated service agent. [FN18] The trustee made no attempt to serve the Enterprise by any of these methods.

> FN15. The Court expresses no opinion whether Rule 7004 permits service by mail on the reservation of a federally recognized Indian tribe.
>
> FN16. Fed. R. Bankr.P. 7004(b)(6).
>
> FN17. Fed. R. Bankr.P. 7004(b)(5).
>
> FN18. Fed. R. Bankr.P. 7004(b)(3).

*3 The trustee's reliance on Fed. R. Bankr.P. 9005, and by application, Fed.R.Civ.P. 61, to save the defect in service is unconvincing. This is the "harmless error rule." The trustee cites no case holding that the harmless error analysis is applicable to a claim of insufficient service of process. This rule states that when appropriate, the court may cure an omission which does not affect substantial rights. Inadequate service is not harmless error. Proper service is at the core of the Court's jurisdiction over the served party and is "substantial." [FN19] Rule 9005 does not apply here.

> FN19. See Turney v. F.D.I.C., 18 F.3d 865 (10th Cir.1994) (In bankruptcy proceeding both debtors and creditors have constitutional right to be heard on their claims and denial of that right is denial of due process which is never harmless error); United States v. Mendez-Lopez, 338 F.3d 1153 (10th Cir.2003) (In a criminal felony case, the magistrate judge exceeds jurisdiction by selecting jury and harmless error analysis does not apply; it is basic law that defendant's right to have all critical stages of criminal trial be conducted by a person with jurisdiction to preside).

However, Fed.R.Civ.P. 4(m), made applicable in adversary proceedings by Fed. R. Bankr.P. 7004(a), but not mentioned by the trustee, does provide a basis for relief, even where the statute of limitations has run on the trustee's cause of action. Under Rule 4(m), the trustee had 120 days from the filing of the adversary complaint to obtain service on the Enterprise. More specifically, however, Rule 4(m) permits a court to extend the 120 day deadline for service:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion *or on its own initiative* after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant *or direct that service be effected within a specified time;* provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

The majority of the courts that have interpreted Rule 4(m), as amended in 1993, have concluded that a court now has both discretionary power and a mandatory obligation to enlarge the 120 days service requirement. Upon a showing of good cause by the plaintiff, the court is *required* to extend the time for service. Absent a showing of good cause, the court has the discretion to enlarge the deadline to obtain service. [FN20] The Tenth Circuit recognizes this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2004 WL 2334316 (Bankr.D.Kan.)
(Cite as: 2004 WL 2334316 (Bankr.D.Kan.))

Page 4

discretionary power to enlarge the 120 day deadline, without a showing of good cause. [FN21] The trustee neither advocates nor has shown good cause in the limited record before this Court that would require the Court to extend the 120-day deadline. [FN22] This leaves the question of whether the Court should exercise its discretion and enlarge the time for service on its own initiative.

> FN20. See *In re Lopez*, 292 B.R. 570 (E.D.Mich.2003); *In re Harnischfeger Industries, Inc.*, 288 B.R. 79 (Bankr.D.Del.2003); *In re Bertain*, 215 B.R. 438 (9th Cir.BAP1997); *Petrucelli v. Bohringer & Ratzinger, GMBH*, 46 F.3d 1298 (3rd Cir.1995); *Thompson v. Brown*, 91 F.3d 20 (5th Cir.1996); *Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882 (8th Cir.1996).

> FN21. See *Espinoza v. United States*, 52 F.3d 838 (10th Cir.1995).

> FN22. The trustee did concede at oral argument, however, that no other attempts at service have been made.

The Advisory Committee notes to the 1993 amendment to Rule 4(m) state:
> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.... *Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.* (Emphasis added.)

*4 In *Espinoza, supra,* the Tenth Circuit focused in large part upon the fact that if dismissed without prejudice, a re-filed action would be time-barred. [FN23] According to the Court's calculations, the trustee is now approximately 50 days past the 120 day time limit and the statute of limitations has run on the preference action, [FN24] thus making a dismissal here effectively with prejudice. Pursuant to Fed.R.Civ.P. 4(m), the Court will exercise its discretion and extend the trustee's time to properly serve the Enterprise as set out below.

> FN23. *Espinoza v. United States*, 52 F.3d 838 (10th Cir.1995) (Factors to be considered in determining whether permissive extension of time to effect service was warranted included limitations period governing plaintiff's claim and fact that plaintiff was proceeding pro se). See also, *In re Harnischfeger Industries, Inc.,* supra at 87 where the court concluded that the following factors weighed in favor of a discretionary extension of time: preference action would be time-barred by 2 year statute of limitations, plaintiff immediately attempted service (albeit ineffectively) upon filing of the complaint, no prejudice to defendant in allowing additional time for service, and defendant had notice of adversary complaint through its attorney even though service on the attorney was ineffective.

> FN24. By the Court's calculations, the two year limitations period expired December 27, 2003. See § 546(a)(1)(A).

*Sovereign Immunity--Fed. R. Civ. P. 12(b)(1)*

Assuming that appropriate service of process is obtained, this Court will still be faced with determining whether the Enterprise enjoys sovereign immunity from the jurisdiction of the Bankruptcy Court with respect to this matter. Analysis of that issue is less than straightforward but starts with the general legal proposition that Indian Tribes are sovereign immune from suit unless their immunity has been abrogated by federal statute or the Tribe has expressly waived it. [FN25] The trustee does not assert that Congress has abrogated tribal immunity with reference to his preference cause of action. While it might be argued that the Bankruptcy Code's § 106(a) abrogation of sovereign immunity of a "governmental unit" applies to Indian tribes, the Tenth Circuit Bankruptcy Appellate Panel has concluded that Indian tribes are not "governmental units" as they are defined in § 101(27). [FN26] The Court notes that the Ninth Circuit has recently held to the contrary and that Judge McFeeley's persuasive dissent in *Mayes* is among the authorities relied upon in that case. [FN27] Nevertheless, this Court is persuaded by the majority's opinion in *Mayes* as well as the reasoning in another Tenth Circuit BAP case, *In re Straight,* [FN28] that § 106(a) may be altogether unconstitutional. The trustee finds no succor in § 106(a).

> FN25. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1978).

FN26. See In re Mayes, 294 B.R. 145, 148 n. 10 (10th Cir.BAP2003) (stating that Indian tribes are probably not "domestic governments" within the meaning of 11 U.S.C. § 101(27), although recognizing cases to the contrary).

FN27. See Krystal Energy Company v. Navajo Nation, 357 F.3d 1055 (9th Cir.2004).

FN28. Straight v. Wyoming Dep't of Transp. (In re Straight), 248 B.R. 403 (10th Cir.BAP2000).

Instead, the trustee relies exclusively upon the presence of a "sue and be sued" clause in the Enterprise's charter as an express waiver of tribal immunity. The Enterprise, in turn, suggests that the clause is merely "boilerplate," meaningless, and, in any event, not an express waiver of immunity. The Enterprise points to the Supreme Court's decision in Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc. [FN29] where it was held that a tribe did not waive sovereign immunity from suit in state court by executing a promissory note. It uses Kiowa as the basis for a rule that a tribe does not waive immunity when it participates in commerce. Unlike the instant case, Kiowa deals with a consensual contract, not a federal statutory cause of action and there is no mention in Kiowa of the presence or absence of a sue and be sued clause in the tribe's charter.

FN29. 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).

The Enterprise presents a number of cases from the Tenth Circuit and other circuits dealing with the effect of sue and be sued clauses found in tribal constitutions, charters, ordinances and resolutions. To say the least, the law is murky. Tenth Circuit law on this point is sparse, but appears to set up a "constitutional/corporate" dichotomy as follows. The presence of a sue and be sued clause does not waive a tribe's sovereign immunity when it is being sued for conduct undertaken in its constitutional or governmental capacity. However, where the challenged conduct of a tribe or tribal entity is undertaken in its corporate capacity, a sue and be sued clause does operate as a waiver of sovereign immunity. The Court reaches this conclusion by reviewing a series of five cases starting with Merrion v. Jicarilla Apache Tribe. [FN30]

FN30. 617 F.2d 537 (10th Cir.1980).

*5 In Merrion, a tribe enacted an oil severance tax ordinance levying tax on oil drilled on Indian lands. The ordinance contained an express consent to suit in the United States District Court. The Tenth Circuit concluded this apparent express waiver of immunity from federal jurisdiction was enforceable. In Seneca-Cayuga Tribe v. State ex rel. Thompson, [FN31] the Tenth Circuit held that the presence of a sue and be sued clause did not necessarily waive tribal sovereign immunity from suits relating to tribal political activity. In Kenai Oil & Gas, Inc. v. Dept. of Interior of U.S., [FN32] the Circuit stated in a footnote that it lacked evidence whether the plaintiff had been dealing with the tribal corporation or the tribal government, suggesting that the government might well be immune. In Ramey Const. v. Apace Tribe of Mescalero Reservation, [FN33] the presence of a sue and be sued clause was insufficient to waive immunity where the plaintiff dealt with the tribe as a constitutional and not a corporate entity established under 25 USC § 477.

FN31. 874 F.2d 709, 715 n. 9 (10th Cir.1989).

FN32. 671 F.2d 383, 384 n. 1 (10th Cir.1982).

FN33. 673 F.2d 315, 320 (10th Cir.1982) (Trial court found that Ramey contracted and dealt only with the Mescalero Apace Tribe as a constitutional entity, and not with the Mescalero Apace Tribe, Inc., the tribal corporate entity and therefore the sue and be sued clause in the corporate charter did not effect a waiver of immunity of the Tribe).

This line of cases culminates in Ute Distribution Corp. v. Ute Indian Tribe, [FN34] issued after Kiowa, in which certain half-blood members of the Ute tribe (apparently a different organization than that before us today) sued the Tribe concerning access to water rights. [FN35] Recognizing that the immunity of Indian tribes is subject to the superior and plenary control of Congress, the court held that a waiver of sovereign immunity must be unequivocally expressed, as required in Santa Clara Pueblo, but that the source of expression may be by statute, by overriding national interest, or by a statement found in a tribal charter. Citing to Seneca-Cayuga, the panel held that any waiver provided by a sue and be sued clause was limited to the corporate activities of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 2004 WL 2334316 (Bankr.D.Kan.)
**(Cite as: 2004 WL 2334316 (Bankr.D.Kan.))**

Page 6

tribe and did not extend to the actions of the tribe as a political or governing body. [FN36] Because *Kiowa* is factually distinguishable from the instant case (and from *Ute Distribution* ), this Court concludes that *Ute Distribution* is the controlling authority on this question.

> FN34. 149 F.3d 1260 (10th Cir.1998).

> FN35. *Ute Distribution* was issued in July of 1998. *Kiowa* was decided in May of that same year.

> FN36. 149 F.3d at 1268.

The legal issue before this Court then boils down to whether the trustee's action against the Enterprise arises out of the Enterprise's corporate activities or the Tribe's political activities. The record on that question is virtually non-existent. The Court could *assume* that the payments sought to be recovered were for grain or produce of the Enterprise, but not even the complaint suggests that. As noted previously, in considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the Court may consider matters outside the pleadings. [FN37] The only matters available today are the pleadings, the affidavit of tribal counsel, and the Tribe and Enterprise documents. While the trustee has countered with the sue and be sued clause in the Enterprise's charter, he has brought the Court no evidence upon which to base any conclusions about the nature of the transactions leading to the payments, whether the Enterprise is a § 477 entity, or whether the transactions pertain to corporate or constitutional activity. The answers to these questions are necessary predicates to a determination whether this Court has subject matter jurisdiction of this action.

> FN37. *See* Note 11, *supra* at p. 3.

*6 Therefore, the Enterprise's motion is DENIED WITHOUT PREJUDICE. The trustee shall make proper service of process on the Enterprise within 30 days of the entry of this order. The Enterprise shall have 30 days after such service to answer or, in the alternative, to renew its motion to dismiss. If the motion to dismiss is renewed, the trustee will be required to demonstrate that this Court has jurisdiction of this matter. The issues of the nature of the Enterprise, whether it is a § 477 entity, and whether it was acting in its corporate or governmental capacity when it received the payments the trustee seeks to recover, will be critical to that determination. If the Enterprise decides to answer the complaint rather than pursue a renewed motion to dismiss, the Clerk shall set the matter for a prompt scheduling conference and the parties shall comply with Fed.R.Civ.P. 26 accordingly.

Not Reported in B.R., 2004 WL 2334316 (Bankr.D.Kan.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in B.R.  Page 1
Not Reported in B.R., 1994 WL 502024 (Bankr.N.D.Ohio)
(Cite as: 1994 WL 502024 (Bankr.N.D.Ohio))

H
Only the Westlaw citation is currently available.

United States Bankruptcy Court, N.D. Ohio.
In re ARTESIAN INDUSTRIES, INC., Debtor.
Josiah L. MASON, Trustee, Plaintiff,
v.
STAR BANK, NATIONAL ASSOCIATION, et al.,
Defendants.
**Bankruptcy No. 92-62018.**
**Adv. No. 93-6146.**

Aug. 26, 1994.

William W. Walker, Jr., Roetzel & Andress, Akron, OH, for Josiah L. Mason, trustee.

Steven D. Lerner, Taft, Stettinius & Hollister, Cincinnati, OH, for Star Bank.

Russ Kendig, Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Canton, OH, for OBWC.

MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

*1 Before the court is a motion filed by defendant Ohio Bureau of Workers' Compensation (the OBWC) seeking relief from judgment. The plaintiff, Josiah L. Mason, the Chapter 7 trustee (Trustee) and defendant Star Bank, National Association (Star Bank) filed a joint objection to the motion to which the OBWC has responded. Following a hearing the court took the matter under advisement.

FACTS

The facts underlying this matter are few and not seriously in dispute. The Trustee filed his complaint initiating this adversary proceeding on May 12, 1993, with the caption reading as follows:
  COMPLAINT: TO DETERMINE VALIDITY, PRIORITY AND EXTENT OF LIENS AND ENCUMBRANCES.
The Trustee's prayer for relief requests:
  A. That the Court determine whether and to what extent creditors holding Receivership Claims are entitled to priority in payment out of the Proceeds, and out of the other assets of Debtor's estate in bankruptcy.
  B. That each and every Defendant in this action assert any lien, claim, or encumbrance which such Defendant may have or claim to have in the Proceeds, or in any other asset of Debtor's estate in bankruptcy, by timely answer or other proper response and that any Defendant who fails to assert any such lien, claim, or encumbrance which such Defendant may have or claim to have in the Proceeds, or in any other asset of the Debtor's estate, by timely answer or other proper response, be forever barred from claiming any interest whatsoever in the Proceeds or in any other asset of the Debtor's estate;
....

As evidenced by the certificate of service, the complaint was served upon the OBWC by regular first class, postage prepaid mail and addressed to:
  OHIO BUREAU OF WORKERS' COMPENSATION
  246 N. High St.
  Columbus, OH 43215
(OBWC Ex. B). Service was not designated as made by personal service, residence service, publication, or under state law. (*Id.*)

When the complaint was received by the OBWC, the single individual responsible for complaints in bankruptcy cases, attorney Larry Rhodebeck (Rhodebeck), read only the caption (Rhodebeck Dep. at 51-52), his practice when the caption indicates that the OBWC has no interest in the matter. (*Id.* at 35-36). Believing that the complaint involved only liens and encumbrances, of which the OBWC had none against the debtor's property, Rhodebeck took no further action on the matter. (Rhodebeck Aff. at 2). On December 16, 1993, a default judgment was entered against the OBWC and other defendants for their failure to answer, plead, or otherwise timely respond to the Trustee's complaint.

On October 20, 1993, the court rendered its decision on various parties' motions for summary judgment and on November 1, 1993, Star Bank filed a motion to reconsider that decision. The court issued its decision on Star Bank's motion to reconsider on January 28, 1994. The Trustee subsequently filed a motion to alter or amend the January 28 decision, which motion has been held in abeyance at the parties' request since its filing on February 9, 1994, because of ongoing settlement efforts.

*2 The default judgment was sent to the OBWC at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
Not Reported in B.R., 1994 WL 502024 (Bankr.N.D.Ohio)  
**(Cite as: 1994 WL 502024 (Bankr.N.D.Ohio))**

Page 2

the above address but Rhodebeck could not recall receiving it. (Rhodebeck Dep. at 60-61). The matter was referred to the Ohio Attorney General some time in January 1994 at which time Rhodebeck still was unaware that the complaint involved more than merely liens and encumbrances. (*Id.* at 63-65). A special receivership proof of claim procedure was set up by the Trustee, with the court's approval, and on February 7, 1994, and February 14, 1994, the OBWC filed timely proofs of claim. By that time Rhodebeck and the OBWC were aware of the scope of the default judgment entered on December 16, 1993. (*Id.* at 69-71). On March 9, 1994, the Trustee objected to the OBWC's proofs of claim because, inter alia, they were barred by the default judgment entered on December 16, 1993, and a hearing on the objection was set for May 5, 1994. The Trustee's counsel, and counsel assigned to the case by the Ohio Attorney General's office, had been in communication with respect to the OBWC's claims and had agreed to attempt to resolve the entire matter in the context of the claims allowance procedure. (Kendig Aff. at 2).

## DISCUSSION

The court has jurisdiction in this adversary proceeding by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

The OBWC moves for relief from the default judgment pursuant to Fed.R.Civ.P. 55(c), which is made applicable to adversary proceedings in bankruptcy by Fed.R.Bankr.P. 7055. Rule 55(c) states:

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Because a default judgment has been entered against the OBWC in this case it must seek relief under Fed.R.Civ.P. 60(b). Rule 60 is made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 9024. Relief may be granted under Rule 60(b) for:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic); (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

The OBWC argues that relief from the default judgment is warranted under either Rule 60(b)(1) for excusable neglect, 60(b)(4) because the judgment is void, or 60(b)(6) for other reasons justifying relief. The court will address the branches of the OBWC's motion in reverse order.

*3 As a preliminary matter, the Trustee and Star Bank argue that the OBWC's motion is not timely as required by Rule 60(b). Rule 60(b) mandates that motions requesting relief from judgment be brought "within a reasonable time." What constitutes a reasonable time is dependent upon the circumstances of the case and is within the discretion of the court. *Steinhoff v. Harris,* 698, F.2d 270, 272-73 (6th Cir.1983) (court abused its discretion by permitting Rule 60(b) motion that was filed seventy-seven days after judgment had been entered); *Yannow v. Weyerhaeuser S.S.,* 274 F.2d 274, 280-81 (9th Cir.1958), cert. denied, 362 U.S. 919 4 L. ed.2d 739 (1960), (holding that eleven month delay in bringing Rule 60(b) motion based on jurisdictional issue barred relief); 7 James W. Moore et al., *Moore's Federal Practice* ¶ ¶ 60.22[4], 60.24 [4] (2d ed.1994).

Here, the default judgment was entered on December 16, 1993, and the OBWC moved for relief over five months later, on May 19, 1994. Sometime during that period the OBWC became aware of the import of the December 16, 1993, default judgment. The OBWC's attorney understood that the effect of the default judgment was to be resolved in the context of the claims allowance procedure. The OBWC filed its claims in February 1994, the Trustee objected to those claims (asserting the default judgment as a defense) on March 9, 1994, a hearing on the Trustee's objection was scheduled on May 5, 1994, and the instant motion was filed on May 19, 1994. On these facts the court does not conclude that the OBWC's motion is untimely.

The Trustee and Star Bank assert that they have been prejudiced to the extent that motions have been resolved in this proceeding since the entry of the default judgment and the time and expense incurred in discovery and settlement negotiations over the relevant period may be wasted should the OBWC be granted the relief it seeks. No undue prejudice will

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
Not Reported in B.R., 1994 WL 502024 (Bankr.N.D.Ohio)
(Cite as: 1994 WL 502024 (Bankr.N.D.Ohio))

Page 3

occur should the court grant the OBWC's motion. Only one motion has been decided by the court in the interim, that being Star Bank's motion for reconsideration, and while the OBWC's claim may be an additional factor in the context of settlement negotiations, its inclusion will not negate all that has transpired over the five month period in question. In short, the court finds the OBWC's motion for relief from judgment to be timely filed.

The Trustee and Star Bank correctly point out that prior to obtaining relief under Rule 60(b)(6) it must be found that the motion cannot more appropriately be categorized under another subsection and that extraordinary circumstances exist which warrant relief. *Olle v. Henry & Wright Corporation,* 910 F.2d 357, 365 (6th Cir.1990); *In re Salem Mortg. Company,* 791 F.2d 456, 459 (6th Cir.1986); *Smith v. Secretary of Health and Human Services,* 776 F.2d 1330, 1332-33 (6th Cir.1985). One of the primary arguments for relief asserted by the OBWC is that service of the summons and complaint was technically defective thereby rendering the judgment void. Thus, the OBWC cannot obtain relief under Rule 60(b)(6) because the OBWC's motion is clearly within the scope of Rule 60(b)(4).

*4 One of the bases for finding a judgment void is for lack of jurisdiction over the parties. *Moore's Federal Practice* at ¶ 60.25[2], p. 60-232 and fn. 51. On this point, the OBWC's argument is that service of the complaint was insufficient for jurisdiction over it to exist. Service of a summons and complaint in adversary proceedings in bankruptcy is controlled by Fed.R.Bankr.P. 7004 which provides in pertinent part:
(a) Rule 4(a), (b), (c)(2)(C)(i), (d), (e), and (g)-(j) FR Civ P applies in adversary proceedings....
(b) In addition to the methods of service authorized by Rule 4(c)(2)(C)(i) and (d) FR Civ P, service may be made within the United States by first class mail postage prepaid as follows:
....
(6) Upon a state or municipal corporation or other governmental organization thereof subject to suit, by mailing a copy of the summons and complaint to the person or office upon whom process is prescribed to be served by the law of the state in which service is made when an action is brought against such a defendant in the courts of general jurisdiction of that state, or in the absence of the designation of any such person or office by state law, then to the chief executive officer.....

It is clear from the certificate of service that the Trustee attempted service by first class mail pursuant to Rule 7004(b)(6) and not any other available option. This provision does not operate to permit service pursuant to state law, as is provided for under Fed.R.Civ.P. 4(c)(2)(C)(i), which is made applicable to adversary proceedings in bankruptcy by Rule 7004(a); [FN1] rather, it merely defers to state law with respect to who is served. Therefore, it is not the state but the federal procedural rule which is at issue and, contrary to the parties' arguments, the court believes that under the *Erie* doctrine, federal law controls whether the Trustee complied with the relevant service procedures. See 1A Part 2 *Moore's Federal Practice* ¶ 0.306 [5].

Ohio R.Civ.P. 4.2(10) provides that when service is to be made upon the state or its agencies, it must be made upon "the *officer* responsible for the administration of the department, office or institution or by serving the *attorney general* of this state." (emphasis added.) It is admitted that the Trustee did not send a copy of the summons and complaint to any of the individuals or offices designated in Ohio Rule 4.2(10). Thus, the issue is the effectiveness of the Trustee's technically defective service of his summons and complaint on the OBWC.

There is a line of cases which hold that minor errors in serving a summons and complaint do not render service ineffective. See *In re Moreck,* 34 B.R. 119 (Bankr.M.D.Pa.1983) (Employing former Bankruptcy Rule 704 and specifically former Rule 704(h) [FN2] which permitted minor errors if no prejudice occurred); *Jahan Co. v. Dakota Indus., Inc.,* 27 B.R. 575, 580-81 (D.N.J.1983), aff'd, 725 F.2d 668 (3d Cir.1983) (minor error in service allowed under former Rule 704(h)); *In re Schack Glass Indus., Inc.,* 20 B.R. 967, 970-71 (Bankr.S.D.N.Y.1982) (also relying on former Rule 704(h)). More recent cases which apply Rule 7004 have required more strict adherence to the language of the rule. *In re Schoon,* 153 B.R. 48 (Bankr.N.D.Cal.1993); *In re Braden,* 142 B.R. 317 (Bankr.E.D.Ark.1992); *In re DaShiell,* 124 B.R. 242 (Bankr.N.D.Ohio 1991). The court declines to employ the reasoning found in the former line of cases, in part because there is no provision in Rule 7004 analogous to former Rule 704(h).

*5 The Trustee and Star Bank refer the court to the *DaShiell* opinion which states that "[w]hen parties have received actual notice, the standards for service on individuals and corporations are to be liberally construed." *DaShiell,* 124 B.R. at 248. The court is not persuaded by the case support in *DaShiell* for that